SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone:  (949) 459-2124
Facsimile:  (949) 459-2123

MICHAEL J. ASCHENBRENER (maschenbrener@edelson.com) (*pro hac vice*)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THOMAS ROBINS, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPOKEO, INC., a California corporation,<br><br>Defendant. | ) Case No. 10-CV-5306 ODW (AGRx)<br>)<br>) **PLAINTIFF'S OPPOSITION TO**<br>) **DEFENDANT'S MOTION TO**<br>) **DISMISS**<br>)<br>)<br>) Judge Otis D. Wright II<br>)<br>) Date:  Monday, January 31, 2011<br>) Time:  1:30 p.m.<br>) Location:  Courtroom 11<br>) Action Filed:  July 20, 2010<br>)<br>)<br>)<br>) |

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

      A.   Spokeo.com ................................................................................ 2

      B.   Plaintiff's Claims ...................................................................... 3

III.  ARGUMENT ........................................................................................ 4

      A.   Spokeo is a credit reporting agency and disseminates
           credit reports. ........................................................................... 5

           1.   Spokeo meets the statutory definition of a "credit reporting
                agency." ........................................................................... 5

           2.   Spokeo's reports meet the statutory definition of a "credit
                report." ........................................................................... 6

           3.   Spokeo is not a search engine or a community forum. .............. 8

           4.   Spokeo cannot disclaim its obligations under FCRA. ................. 9

      B.   Spokeo is not Immune Under the Communications Decency Act
           Because it is an Content Provider, Not a Service Provider. ............. 10

      C.   Plaintiff has Article III Standing. ........................................ 13

           1.   Plaintiff has Article III standing by sufficiently stating a claim
                under FCRA. ........................................................................... 13

           2.   Plaintiff does not need to claim actual damages to have Article
                III standing under FCRA. ..................................................... 14

           3.   Plaintiff's allegations related to the dissemination of inaccurate
                personal and financial information are sufficient to establish
                Article III standing. .............................................................. 15

      D.   Plaintiff has Sufficiently Stated a Claim Under the UCL. .............. 16

IV.   CONCLUSION ..................................................................................... 17

## UNITED STATES SUPREME COURT CASES

*Doe v. Chao*, 540 U.S. 614 (2004) ................................................................. 16

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................ 13, 14

## UNITED STATES APPELLATE COURT CASES

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ..............................9-10

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ............ 15

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ........................................... 11

*Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.,* 206 F.3d 980
   (10th Cir. 2000) ......................................................................................... 13

*Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264 (9th Cir. 1990) ..... 6, 7

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ........................................ 10

*Dowell v. Wells Fargo Bank, NA*, 517 F.3d 1024 (8th Cir. 2008) .............. 14

*Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010).................. 14

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157
   (9th Cir. 2008) (en banc)...................................................................... 11, 12

*FTC v. Accusearch Inc.*, 570 F. 3d 1187 (10th Cir. 2009) ....................... 11, 12

*Fulfillment Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614
   (9th Cir. 2008)............................................................................................ 13

*In re Carter*, 553 F.3d 979 (6th Cir. 2009)................................................... 14

*Krottner v. Starbucks Corp.*, --- F.3d ----, 2010 WL 5141255 (9th Cir. 2010).... 15, 16

*McCready v. eBay, Inc.*, 453 F. 3d 882 (7th Cir. 2006) ............................... 8, 9

*Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129 (9th Cir. 1982) ................... 7

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)................... 15

*Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002).......... 14

*Perfect 10, Inc. v. Amazon. com, Inc.*, 487 F. 3d 701 (9th Cir. 2007) ......... 8

## UNITED STATES DISTRICT COURT CASES

*Aeschbacher v. California Pizza Kitchen, Inc*., 2007 WL 1500853 (C.D. Cal. Apr. 3, 2007) ........................................................................................................ 15

*Greenway v. Info. Dynamics, Ltd*., 399 F. Supp. 1092 (D. Ariz. 1974) *aff'd,* 524 F.2d 1145 (9th Cir. 1975) .................................................................................. 6

*Hernandez v. Chase Bank USA, N.A*., 429 F. Supp. 2d 983 (N.D. Ill. 2006) ............ 15

*Hy Cite Corp. v. badbusinessbureau.com, L.L.C.,* 418 F. Supp. 2d 1142 (D. Ariz. 2005) ........................................................................................................... 12

*Perfect 10, Inc. v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006) ...................... 8

*Perfect 10, Inc. v. Google, Inc.*, 2008 WL 4217837 (C.D. Cal. 2008) ...................... 10

*Pirian v. In-N-Out Burgers*, 2007 WL 1040864 (C.D. Cal. Apr. 5, 2007) ............... 15

*Swift v Zynga Game Network, Inc.* 2010 WL 4569889 (N.D. Cal., Nov. 3, 2010) .... 10

## STATUTES

Fair Credit Reporting Act, 15 U.S.C. § 1681 ............................................................... 1

15 U.S.C. § 1681a(f) ................................................................................................. 5, 9

15 U.S.C.A. § 1681a(d) ............................................................................................ 6, 7

15 U.S.C. § 1681n .................................................................................................... 14

15 U.S.C. § 1681o .................................................................................................... 14

47 U.S.C. § 230(c) ................................................................................................... 10

47 U.S.C. § 230(f)(2) ............................................................................................... 10

47 U.S.C. § 230(f)(3) ............................................................................................... 11

Communications Decency Act, 47 U.S.C. § 230 ......................................................... 1

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ......................................... 1

# **<u>OTHER AUTHORITIES</u>**

http://www.nbcnewyork.com/station/as-seen-on/New-Way-To-Spy-On-Your-

Friends-113051299.html (last visited on January 10, 2010.)................................. 13

## I.    **INTRODUCTION**

In its Motion to Dismiss, Defendant Spokeo, Inc. accuses Plaintiff Thomas Robins of attempting to "fit a square peg into a round hole."  Nothing could be further from the truth.  Defendant is a credit reporting agency under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681 *et seq*.) because it furnishes consumer reports bearing on consumers' sensitive financial and personal information.  Defendant's arguments ignore two salient facts: (1) it offered "Credit Estimates," "Wealth Level" determinations, and myriad other financial and personal information pertaining to consumers' mortgages, investments, home value, family life, and personal interests; and (2) it marketed its consumer reports to HR recruiters and employers for the purpose of evaluating potential hires.  These two actions together make Defendant a credit reporting agency.

Defendant's remaining grounds for dismissal are equally unsupportable.  Plaintiff has Article III standing solely on the basis that he sufficiently stated a claim under FCRA; moreover, Plaintiff also has standing according to recent Ninth Circuit precedent based on his alleged concern over the dissemination of inaccurate information and the affect it has and will continue to have on his ability to secure employment.

Moreover, in an ineffective attempt to entirely shield itself from liability, Defendant raised the affirmative defense of total immunity under the Communications Decency Act ("CDA") (47 U.S.C. § 230). Unfortunately, the well developed case law surrounding CDA immunity does not fall in Defendant's favor, but rather, clearly demonstrates that it is a "information content provider" that creates its own independent content, and in doing so, sheds all protections provided by the CDA.

Finally, Plaintiff has sufficiently stated a claim under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200) by alleging a violation

1  of FCRA and alleging his inability to find gainful employment as a result of

2  Defendant's dissemination of inaccurate information.  At the pleading stage, these

3  allegations are more than sufficient to support standing under a UCL claim.

4    Overall, Defendant's Motion to Dismiss is without merit, and Plaintiff requests

5  that the Court deny it in full.

6  ## II.  FACTUAL BACKGROUND

7    ### A.  Spokeo.com

8    Defendant is the operator of a website located at www.spokeo.com, which

9  offers a variety of information on millions of individuals.  (Plaintiff's Complaint

10 (Dkt. No. 1), ¶ 2.)  Defendant's website is supported by software that allows it to

11 quickly collect, process and organize consumer data from a wide range of sources,

12 and then display conclusions and predications based on inferences from that data.

13 (Compl. ¶¶ 10, 15.)

14   According to Defendant, millions of users search its website for consumer

15 information each day.  (Compl. ¶ 14.)  When a user requests information regarding a

16 particular consumer, Defendant immediately displays numerous pieces of

17 information about that consumer that bear on his or her financial well being and

18 personal reputation and character, including an address, phone number, employment

19 information, and descriptors such as "seeks opportunity," "cares about healthy

20 living," and "loves to read."  (Compl. ¶ 14); *see also* Spokeo's "Basic Profile,"

21 "Lifestyle & Interests," "Household," "Neighborhood," and "Example Search"

22 Pages, true and accurate copies of which are attached as Exhibits C, F, G, H, and I to

23 Plaintiff's Request for Judicial Notice ("RJN").

24   In addition to the extensive demographic information Spokeo provides, its

25 reports contain colorized charts of a consumer's "Economic Health" (formerly titled

26 "Credit Estimate") and "Wealth Level," which range from "low" to "high," as well as

27

28

information on a consumer's investments and mortgage.  (Compl. ¶ 15); *see also* Spokeo's "Wealth" pages, true and accurate copies of which are attached as Exhibits D & E to Plaintiff's RJN.   Spokeo is responsible for designing, creating, and populating the value ("high" or "low") of these charts.  (Compl. ¶ 15); *see generally* Complaint filed by the Center for Technology & Democracy ("CDT Complaint"), *In the Matter of Spokeo, Inc.*, Federal Trade Commission (File No. P002501) (June 30, 2010), a true and correct copy is attached as Exhibit A to Plaintiff's RJN.  Defendant does not, however, disclose where it obtains this economic information.  (Compl. ¶ 15.)  Defendant's consumer profiles also contain information on how long a person has lived at a particular address, the value of the property, and individual property attributes bearing on a home's value. (Compl. ¶ 16.)  At Defendant's own admission, a significant portion of the information that it reports is wholly inaccurate. (Compl. ¶¶ 17-18.)  Compounding the inaccuracies in its reports, Spokeo has failed to develop an effective system to allow consumers to remove inaccurate information from their individual reports, or remove the reports from Defendant's website altogether.  (Compl. ¶ 18.)

Regardless of known inaccuracies, Spokeo has marketed its services directly to employers, human resource professionals, law enforcement agencies, persons and entities performing background checks, and publishes individual consumer "economic health" and "credit estimate" assessments.  (Compl. ¶ 13); *see also* Spokeo's "Recruiting" Page, a true and accurate copy of which is attached as Exhibit B to Plaintiff's RJN.

**B.    Plaintiff's Claims**

Plaintiff alleges that Spokeo.com maintains an inaccurate consumer report about him on its website and that Defendant has violated his rights under FCRA.  (Compl. ¶¶ 20-24).  While the consumer report that Spokeo has compiled about Plaintiff correctly describes some basic information, a significant portion of the

information is incorrect, including his employment status, his marriage status, his age, his educational background, whether he has children, his "economic health," his "wealth level," and on top of that, the profile contained a picture of someone else. (Compl. ¶ 21).  Additionally, Plaintiff alleged that he has no way of verifying the "economic health" rating that Defendant ascribes to him, and further denies that his "wealth level" is accurately described on Spokeo.com.  (Compl. ¶ 22.)  Plaintiff alleges that he is concerned that the inaccuracies in his report will affect his ability to obtain credit, employment, insurance, and the like.  (Compl. ¶ 23.)

## III.   **ARGUMENT**

Defendant presents four grounds for dismissal,[1] all of which fail for interrelated reasons: (1) Spokeo is a credit reporting agency because it collects and disseminates credit related information as defined by FCRA; (2) it is not immune under the CDA because it creates and develops content appearing on its website; (3) Plaintiff has Article III standing because he sufficiently alleged a violation of FCRA; and (4) Plaintiff sufficiently stated a claim under the UCL by alleging a violation of FCRA and his inability to secure employment.  Because all of Spokeo's arguments fail, the Court should deny Defendant's Motion to Dismiss in its entirety.

---

[1] Defendant filed its Motion to Dismiss on November 3, 2010, along with a Request for Judicial Notice. (Dkt. No. 22-2).  Defendant's Request seeks judicial notice of two website URLs and three screen captures of Defendant's website.  Defendant fails in its request and its supporting declaration to indicate whether the websites and screen captures relate to or represent how the website looked during the operative time period for Plaintiff's claims.  Presumably the screen captures and websites reflect how Defendant's website appeared at the time Defendant filed its motion, and not as it appeared during the time period giving rise to Plaintiff's claims.  Thus, Plaintiff and the Court have no way to determine the opertative time period or relevancy of the items for which Defendant seeks judicial notice.

**A.**  **Spokeo is a Credit Reporting Agency and Disseminates Credit Reports.**

**1.**  ***Spokeo meets the statutory definition of a "credit reporting agency."***

Defendant asserts, without material support, that it is not a credit reporting agency as defined by FCRA.  (Defendant's Motion To Dismiss ("MTD") (Dkt. No. 22), 8).  Spokeo is a credit reporting agency because it collects, evaluates and analyzes consumer credit information and markets it to third parties for a fee via the Internet.  (Compl. ¶¶ 13-15, 37, 40, 44).  Under FCRA, a "consumer reporting agency" is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Here, Defendant collects volumes of information from unnamed public and private sources that it then transforms, converts and draws conclusions from pertaining to a consumer's wealth, credit, lifestyle, home, education, political persuasion, and personal characteristics. (Compl. ¶¶ 10-11, 14-16, 40.)  In arguing that it is not a credit reporting agency, Defendant outright ignores two core aspects of its own business.  First, during the operative time period for Plaintiff's Complaint, Defendant provided information through its "Wealth" section titled "Credit Estimate" and "Wealth Level," including information relating to a consumer's "Mortgage Value," Estimated Income," and "Investments." (Compl. ¶¶ 15, 40); *see also* CDT Complaint (Exhibit A), ¶¶ 18-19); Spokeo's "Wealth" Pages (Exhibits D & E.) Second, Defendant has regularly advertised that it "is a great tool to learn more about prospective employers and employees" for HR recruiters and businesses to evaluate

"potential hires." (Compl. ¶ 13); *see also* CDT Complaint (Exhibit A), ¶¶ 13-15); *see also* Spokeo's "Recruiting" Page (Exhibit B).  This included presenting a large banner on its website stating: "Want to see your candidates' profiles on MySpace and LinkedIn?  23% of recruiters already research social networks.  Spokeo goes a step beyond and automates candidate research across 43 social networks.  Try Business Edition." *See* "Recruiting" Page (Exhibit B); CDT Complaint, ¶¶ 13-15;

### 2.   *Spokeo's reports meet the statutory definition of a "credit report."*

Moreover, contrary to Defendant's assertions, the product that Spokeo sells is a "consumer report" as defined under FCRA.  "Consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's [1] credit worthiness, [2] credit standing, [3] credit capacity, [4] character, [5] general reputation, [6] personal characteristics, or [7] mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C.A. § 1681a(d).  The plain language of section 1681a(d) reveals that a report will be construed as a "consumer report" if the business providing the information "expects the user to use the report for a purpose permissible under the FCRA, without regard to the ultimate purpose to which the report is actually put." *Comeaux v. Brown & Williamson Tobacco Co*., 915 F.2d 1264, 1273-74 (9th Cir. 1990).  As affirmed by the Ninth Circuit, when an entity

> disseminates information bearing on any of the seven characteristics of a consumer listed in § 1681a(d) to a third party, and the agency knows or expects that it will be used 'in connection with a business transaction involving the consumer,' then that information is a 'consumer report' and its originator is a 'consumer reporting agency.'

*Greenway v. Info. Dynamics, Ltd*., 399 F. Supp. 1092, 1095 (D. Ariz. 1974) *aff'd*, 524

F.2d 1145 (9th Cir. 1975).  As demonstrated in the chart below, the information widely disseminated by Spokeo bears on all seven factors listed in § 1681a(d).  *See* Plaintiff's RJN, Exhibits A-I.

| Category of Information Provided by Spokeo | Characteristics Listed in §1681a(d) |
| --- | --- |
| Credit Estimate, Wealth, Economic Health, Investments, Mortgage Value, Home Value, Median Income, Occupation | Credit worthiness, credit capacity, mode of living |
| Lifestyle, Interests, Relationship, Hobbies, Education, Neighborhood, Household Amenities, | Character, general reputation, personal characteristics, mode of living |
| Ethnicity, Religion, Political Party | Character, general reputation |

Moreover, Defendant's focus on its own "intention" is likewise misplaced. (MTD, 10).  Not only do Spokeo's reports contain information traditionally associated with a "consumer report" under FCRA (*e.g.*, Credit Estimate and Wealth Level), but Spokeo also marketed its reports to employers for the purpose of evaluating potential hires, which is a specifically enumerated purpose under FCRA. (Compl. ¶¶ 13-15.)  *See also* Spokeo's "Recruiting" Page (Exhibit B) and "Wealth" pages (Exhibit D & E.)  The combination of those two actions undercuts any basis Defendant has to claim that it did not intend to provide its services for FCRA purposes, let alone that it did not expect it to be used for such purposes.[2]  *Comeaux,*

---

[2] Defendant's citation to *Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129, 133 (9th Cir. 1982) to support an intent requirement misconstrues the Ninth Circuit's holding.  The court there stated, in *dicta*, "we do not believe that the mere fact that a report could be used as a consumer report is

915 F.2d at 1273-74.

### 3.     *Spokeo is not a search engine or a community forum.*

Spokeo indentifies itself as a "search engine."  (MTD, 12).  Yet, the manner in which Spokeo presents information about consumers specifically sets it apart from search engines such as Google or Yahoo.  When a consumer searches for himself or herself on Google, Google does not draw conclusions from the data it returns.[3]  Rather, it simply displays a responsive list of websites without any editorial comment or additional content.  By contrast, Spokeo provides a variety of data categories, conclusions, predictions and factual assertions about a consumer's supposed wealth and lifestyle in its data results—specifically conclusions that *do not appear* in the public or private data sources that Spokeo draws from.  (Compl. ¶¶ 2, 13-15); see also Spokeo's "Basic Profile," "Wealth," "Lifestyle & Interests," and "Household" Pages (Exhibits C, D, E, F, and G.)

Similarly, Defendant's attempt to compare itself to the "feedback profiles" at issue in *McCready v. eBay, Inc*. is unavailing as Spokeo's services and website bear no resemblance to eBay's Feedback Forum.  (MTD, 13). 453 F. 3d 882, 889 (7th Cir. 2006).  In *McCready*, the court noted that eBay does not "exert any control over what is said in the Forum, which contains mere opinions of people not in eBay's employ."

---

enough to make it one.  More is required; however, we reserve the question of just what additional showing is required until a case properly presents the issue." *Mende*, 670 F.2d at 133. The court's ruling therefore did not require a showing of intent as stated by Defendant.

[3] *See Perfect 10, Inc. v. Amazon. com, Inc*., 487 F. 3d 701, 711 (9th Cir. 2007) (noting that

> Google operates a search engine, a software program that automatically accesses thousands of websites (collections of webpages) and indexes them within a database stored on Google's computers. When a Google user accesses the Google website and types in a search query, Google's software searches its database for websites responsive to that search query. Google then sends relevant information from its index of websites to the user's computer.)

*See also Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 832 (C.D. Cal. 2006) ("Google's basic web search . . . receives a text search string and returns a list of textual results relevant to that query.")

*Id.* at 889.   By contrast, Spokeo creates and publishes conclusions and factual assertions about individuals pertaining to "consumer credit information and other information." (Compl. ¶¶ 2, 15); 15 U.S.C. § 1681a(f).  By creating much of the content itself, and not simply hosting a forum in which the content is posted or discussed, Spokeo discredits any similarities between itself and eBay's forums. Therefore, *McCready* does little more than illuminate why Spokeo, unlike eBay, is a credit reporting agency.

### 4. *Spokeo cannot disclaim its obligations under FCRA.*

Finally, Spokeo attempts to shrug off its status as a credit reporting agency that issues consumer reports by discreetly pointing out that its data is not 100% accurate and should not be used as a factor in establishing a consumer's eligibility for credit, insurance, employment purpose or for any other purpose authorized under FCRA. (MTD, 11-12).  This disclaimer is irrelevant for two reasons: (1) Spokeo has taken multiple steps to market its consumer reports for precisely the purposes listed in its disclaimer (*e.g.* employment) (Compl. ¶ 13); (Spokeo's "Recruiting" Page (Exhibit B); and (2) a credit reporting agency cannot simply place a difficult to read disclaimer on the bottom of its website and forgo all the requirements placed on consumer reporting agency by Congress.  If this were true, TransUnion or Experian, undoubtedly credit reporting agencies under FCRA, could simply place similar language on their websites and magically shed their credit reporting agency status. Spokeo's classification as a credit reporting agency cannot be based simply on its own self description; rather, the FCRA determines whether a company is a credit reporting agency, and Spokeo fails to demonstrate that it is not a credit reporting agency in the business of selling credit reports.

Therefore, Plaintiff has sufficiently stated a claim under FCRA and Defendant's motion to dismiss should be denied.

**B.      Spokeo is not Immune Under the Communications Decency Act Because it is a Content Provider, Not a Service Provider.**

Defendant argues that the Communications Decency Act ("CDA"), 47 U.S.C. § 230 bars Plaintiff's claims because it is immune as an interactive computer service provider.  (MTD, 14).  At the outset, this argument is improper to raise in a motion to dismiss.  The Ninth Circuit has clarified that CDA § 230 immunity "is an affirmative defense and district courts are to treat it as such.  *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1109 (9th Cir. 2009). As an affirmative defense, CDA § 230 cannot be used as a basis for dismissal under Rule 12(b)(6); the "assertion of an affirmative defense does not mean that the plaintiff has failed to state a claim, and therefore does not by itself justify dismissal under Rule 12(b)(6)."[4]  *Id*. However, regardless of the timing of Defendant's argument, Defendant is not immune because Defendant is an information content provider under the CDA, not an interactive computer service provider.

Section 230 of the CDA immunizes providers of interactive computer services[5] against liability arising from content created by third parties: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). This grant of immunity applies only if the interactive computer service provider is

---

[4] *See also Swift v Zynga Game Network, Inc*. 2010 WL 4569889, *6 (N.D. Cal., Nov. 3, 2010) ("Given the limited nature of a Rule 12(b)(6) challenge, the Court cannot determine, at this stage, whether Adknowledge is entitled to CDA immunity. It would be improper to resolve this issue on the pleadings and the limited record presented."); *Perfect 10, Inc. v. Google, Inc*., 2008 WL 4217837, *8 (C.D. Cal. 2008) ("preemption under the CDA is an affirmative defense that is not proper to raise in a Rule 12(b)(6) motion") (citing *Doe v. GTE Corp*., 347 F.3d 655, 657 (7th Cir. 2003) (immunity under 47 U.S.C. § 230 (c) is an affirmative defense that a plaintiff is not required to plead around)).

[5] Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2)

not also an "information content provider," which is defined as an entity that is "responsible, in whole or in part, for the creation or development of" content.  47 U.S.C. § 230(f)(3); *see Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162-64 (9th Cir. 2008) (en banc) ("*Roommates.com*.")  In *Roommates.com*, the Ninth Circuit went to great lengths to define the terminology underlying § 230(f)(3), finding "we interpret the term 'development' as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Id*.

In *FTC v. Accusearch*, decided by the Tenth Circuit in 2009, the court determined that the defendant was an information content provider based on similar facts and thus not immune from liability under the CDA.  *FTC v. Accusearch Inc*., 570 F. 3d 1187, 1200 (10th Cir. 2009).  The defendant's website there allowed a consumer to search "information generally contained in government records, such as 'court dockets,' 'sex offender records,' and 'Tax . . . Liens.' . . . [and other] intimate personal information, such as 'Romantic Preferences,' 'Personality traits,' and 'Rumors.'" *Accusearch*, 570 F. 3d at 1191.  The court there also examined the term "develop," finding that the "dictionary definitions for develop correspondingly revolve around the act of drawing something out, making it 'visible,' 'active,' or 'usable.'" *Id*. at 1198.  In the view of the court, it was responsible for the development of the information appearing on its website because it "knowingly sought to transform virtually unknown information into a publicly available commodity." *Id*. at 1199.  *See also Roommates.com,* 521 F.3d at 1165 citing *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003) ("the party responsible for putting information online may be subject to liability, even if the information originated with a user.")

In the present case, Defendant developed content from a variety of sources by posting it online and making it both "visible" and for sale.  (Compl. ¶¶ 1-2, 10-13.)

*See Roommates.com,* 521 F.3d at 1171 ("Providing immunity every time a website uses data initially obtained from third parties would eviscerate the exception to section 230 for 'develop[ing]' unlawful content 'in whole or in part.'")  In fact, the specifics presented here are far from a close case.  Defendant is actively developing and creating original content that is at the center of Defendant's FCRA violations.  (Compl. ¶¶ 13, 40); *see also* Spokeo's "Wealth" Pages (Exhibits D & E.)  Defendant collects various types of personal information from unidentified sources, much of which is not online anywhere else, organizes it, and draws conclusions from the information as a whole.  (Compl. ¶¶ 1-2, 13-15).  Most notably, Spokeo creates and presents charts depicting a consumer's "Credit Estimate" and "Wealth" as graphics specifically created by Spokeo.  (Compl. ¶¶ 15, 40);  *see also* Spokeo's "Wealth" Pages (Exhibits D & E.)

Defendant's creation of the content at issue here goes far beyond the content creation deemed sufficient in *Hy Cite Corp. v. badbusinessbureau.com, L.L.C.,* 418 F. Supp. 2d 1142, 1145 (D. Ariz. 2005).  There, the defendant argued that its content was created by third party users, but the court rejected this argument stating that it ignored the plaintiff's allegations that "wrongful content appears on the Rip-off Report website in editorial comments created by Defendants and titles to Rip-off Reports, which Defendants allegedly provide."  *Id.* at 1149. The court concluded that because the plaintiff alleged that the defendants "produce original content contained in the Rip-off Reports," those allegations arguably could support a finding that the defendants were "responsible . . . for the creation or development of information" provided by third parties.  *Id.*

Here, because Defendant fails to identify all the sources of its information, Spokeo cannot even attempt to point to third party user who provided that credit or wealth information.  (Compl. ¶¶ 11, 15).  Therefore, unlike *Roommates.com,* 521 F.3d at 1161 (potential renter's provided information), *Accusearch Inc*., 570 F. 3d at

1  1191 (third-party researchers provided the information), or *Ben Ezra, Weinstein, &*
2  *Co., Inc. v. Am. Online Inc.,* 206 F.3d 980, 983 (10th Cir. 2000) (third-party stock
3  quote company provided information), Spokeo cannot point to the origin or basis for
4  displaying sensitive information and conclusions about individual consumers'
5  financial health.[6]  This information, as presented, *is its own design and creation*,
6  based on its own evaluation of consumer data.  Spokeo fails to demonstrate any point
7  to the contrary.  Accordingly, Spokeo is an information content provider and enjoys
8  no immunity under the CDA.[7]

9      **C.**   **Plaintiff has Article III Standing.**

10         **1.**   ***Plaintiff has Article III standing by sufficiently stating a claim***
11            ***under FCRA.***

12      Defendant's Article III standing argument is without merit and looks past well-
13 established law finding injury-in-fact fulfilled where a plaintiff alleges a statutory
14 violation.  (MTD, 17).  "The injury required by Article III can exist solely by virtue
15 of 'statutes creating legal rights, the invasion of which creates standing.'"  *Fulfillment*
16 *Services Inc. v. United Parcel Serv., Inc.,* 528 F.3d 614, 618-19 (9th Cir. 2008)
17 quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975).  Therefore, the essential standing
18 question is whether the "constitutional or statutory provision on which the claim rests
19 properly can be understood as granting persons in the plaintiff's position a right to

---

20
21  [6] In fact, in a statement made by Defendant to NBC News New York on January 6, 2010, Spokeo
22  stated that it does not possess any of the information necessary to actually make the credit or wealth
    evaluation presented on its website.  Spokeo specifically clarified that it "[d]oes not possess social
23  security numbers, driver's license numbers, bank accounts or other private financial information
    such as credit scores."  *See* http://www.nbcnewyork.com/station/as-seen-on/New-Way-To-Spy-On-
    Your-Friends-113051299.html (last visited on January 10, 2010.)

24  [7] As it did in its argument under FCRA, Defendant's CDA immunity argument heavily relies on its
25  claim that it is a "search engine," like Google or Yahoo, and therefore "passively displays content
    that is created by third parties" and is an "interactive computer service" with CDA immunity.
26  (MTD, 14).  As described above, Defendant does not fit into either of these categories because it
    actively collects information, draws conclusions, and makes affirmative assertions on its website
27  based on that information.  (Compl. ¶ 15).  *See also* Section III(A)(3) *supra*.

28

1   judicial relief." *Warth*, 422 U.S. at 500.  *See also Edwards v. First American Corp.*,

2   610 F.3d 514, 517 (9th Cir. 2010); *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009)

3   ("Congress no doubt has the power to create new legal rights, and it generally has the

4   authority to create a right of action whose only injury-in-fact involves the violation of

5   that statutory right.")

6        Here, FCRA creates a set of individual rights and a private right of action by

7   which to vindicate those rights. *Nelson v. Chase Manhattan Mortgage Corp.*, 282

8   F.3d 1057, 1059 (9th Cir. 2002) citing 15 U.S.C. § 1681n & 15 U.S.C. § 1681o.

9   Therefore, Plaintiff's allegations that Defendant violated his rights protected under

10  FCRA are sufficient for Article III standing.

11            ## 2.   *Plaintiff does not need to claim actual damages to have Article*

12                 *III standing under FCRA.*

13       Defendant's attempt to demonstrate Plaintiff's lack of standing based on the

14  issue of actual damages is unavailing.  (MTD, 19).  As its only point of support,

15  Defendant cites to the Eighth Circuit's ruling in *Dowell v. Wells Fargo Bank, NA*,

16  which provides nothing more than dicta on the subject of actual damages under

17  FCRA.  517 F.3d 1024, 1026 (8th Cir. 2008).  The court there found that FCRA

18  "clearly provides that an award of statutory damages is available as an alternative to

19  an award of actual damages."  *Id*.  Consequently, Defendant presents no case law

20  demonstrating the necessity of pleading actual damages.

21       On the contrary, as pointed out by Defendant (MTD, 20), a well established

22  line of cases from the Seventh Circuit has taken up that precise issue of statutory

23  construction and firmly held that

24        the plain text of the statute states that a plaintiff may recover actual
        damages or statutory damages. . . FCRA suits are amenable to class
25        treatment [] because: individual losses, if any, are likely to be small-a
        modest concern about privacy, a slight chance that information would leak
26        out and lead to identity theft. That actual loss is small and hard to quantify
        is why statutes such as [FCRA] provide for modest damages without proof
27        of injury.

28

*Hernandez v. Chase Bank USA, N.A.*, 429 F. Supp. 2d 983, 989 (N.D. Ill. 2006) citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).  The Ninth Circuit and the Central District of California have positively cited this line of cases. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (FCRA's statutory damages provision "allows a consumer to recover damages between $100 and $1,000 for each willful violation of FACTA without having to prove actual damages"); *Pirian v. In-N-Out Burgers*, 2007 WL 1040864, *4 (C.D. Cal. Apr. 5, 2007) ("FCRA explicitly provides for statutory damages even in the absence of actual damages"); *Aeschbacher v. California Pizza Kitchen, Inc.*, 2007 WL 1500853, *3 (C.D. Cal. Apr. 3, 2007).  Therefore, Plaintiff need not allege actual damages to state a claim under FCRA and thereby have standing.

### 3.    Plaintiff's allegations related to the dissemination of inaccurate personal and financial information are sufficient to establish Article III standing.

Finally, in contrast to Defendant's position, Plaintiff's allegation that he is "concerned that the inaccuracies [in] his report will affect his ability to obtain credit, employment, [and] insurance" is sufficient to provide standing.[8]  (MTD, 18) (Compl. ¶ 22).  Defendant's argument fails in light of a recent Ninth Circuit ruling in *Krottner v. Starbucks Corp.*, --- F.3d ----, 2010 WL 5141255, *4 (9th Cir. 2010). That case dealt with Article III standing in the context of a stolen laptop containing employees' personal information.  *Id*. In ruling on whether the named plaintiffs had pleaded injury-in-fact, the court found that a plaintiff's allegation of "generalized anxiety and stress" stemming from concern over his stolen information was sufficient to confer

---

[8] The inaccuracies in Plaintiff's report included, among other things, his employment status, his marriage status, his age, he educational background, whether he has children, his "economic health," his "wealth level," and on top of that, the profile contained a picture of someone else. (Compl. ¶ 21).

standing.  *Krottner*, --- F.3d ----, 2010 WL 5141255, *2.  *See also Doe v. Chao*, 540 U.S. 614, 617-18 (2004) (plaintiff who allegedly "was 'torn . . . all to pieces' and 'was greatly concerned and worried' because of the disclosure of his Social Security number and its potentially 'devastating' consequences" . . . had standing under Article III.)  Most notably, the *Krottner* court examined whether an increased risk of identity theft constituted injury-in-fact, and found that the plaintiffs had a "credible threat of real and immediate harm stemming from the theft of a laptop," which was not hypothetical because the laptop had in fact been stolen.  *Krottner*, --- F.3d ---, 2010 WL 5141255, *4.

Here, inaccurate information and conclusions bearing on Plaintiff's credit, wealth, and reputation have already been widely disseminated to the public and Spokeo's paying customers over the Internet.  (Compl. ¶¶ 20-24).  Plaintiff is not speculating or alleging a fear based on the possible release and publication of such information; rather, he is reacting to a real and immediate threat.  Therefore, at the pleading stage, Plaintiff has sufficiently pleaded injury-in-fact sufficient to fulfill the requirements of Article III standing.

Thus, Spokeo's assertions that Plaintiff lacks standing have no basis in law and ignores the fact that Plaintiff has sufficiently stated a claim under FCRA, which does not require that he claim actual damages, and in addition has alleged sufficient claims to state an injury-in-fact.

### D.  Plaintiff has Sufficiently Stated a Claim Under the UCL.

Defendant argues that Plaintiff has failed to state a claim under the UCL because he has not stated a claim under FCRA and additionally lacks independent standing.  Defendant's arguments fail on both grounds.

As stated above, Plaintiff has sufficiently stated a claim under FCRA, in that Spokeo is a credit reporting agency and issues credit reports through its website.  As alleged, it has violated FCRA by failing to make all the required disclosures ensuring

the accuracy of the financial and personal information it disseminates and sells. Therefore, Plaintiff has properly stated a claim for violation of the UCL under the unlawful prong.

Additionally, Plaintiff has stated an injury-in-fact and loss of money by alleging that he was unable to find employment during the time period in which Defendant disseminated and sold his financial and personal information and marketed it to HR professionals and employers.  (Compl. ¶¶ 13, 24.)  Accordingly, Plaintiff meets the injury-in-fact and loss of money requirement of the UCL by having pled lost income resulting from his continued unemployment.  As such, Plaintiff has, at the pleading stage, sufficiently alleged injury-in-fact and the loss of money under the UCL.

**IV.    <u>CONCLUSION</u>**

Based on the foregoing, Plaintiff Thomas Robins respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.


Dated:  January 10, 2011                    EDELSON  MCGUIRE, LLC


                                                 /s/  Michael J. Aschenbrener
                                                MICHAEL J. ASCHENBRENER

1

## **CERTIFICATE OF SERVICE**

2

3      I, Michael J. Aschenbrener, an attorney, certify that on January 10, 2011, I
served the above and foregoing ***Plaintiff's Opposition to Defendant's Motion to***
4  ***Dismiss***, by causing true and accurate copies of such paper to be filed and transmitted
to counsel of record via the Court's CM/ECF electronic filing system.

5

6

7                                        s/ Michael J. Aschenbrener
                                         Michael J. Aschenbrener
8                                        EDELSON MCGUIRE LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28