SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Fax: (949) 459-2123

MICHAEL J. ASCHENBRENER (maschenbrener@edelson.com) *admitted pro hac vice*
BRADLEY M. BAGLIEN (bbaglien@edelson.com) *pro hac vice application forthcoming*
CHRISTOPER L. DORE (cdore@edelson.com) *admitted pro hac vice*
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS ROBINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPOKEO, INC., a California corporation,<br><br>Defendant. | Case No. 2:10-cv-5306-ODW-AGR<br><br>**COMPLAINT FOR:**<br><br>**1. Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e**<br>**2. Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b**<br>**3. Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681j**<br>**4. Violation of Cal. Bus. & Prof. Code § 17200 et seq.**<br><br>DEMAND FOR JURY TRIAL<br><br>**CLASS ACTION** |

1    Plaintiff, by his attorneys, upon personal knowledge as to himself and his own acts

2    and upon information and belief as to all other matters, alleges as follows:

3                              **NATURE OF THE ACTION**

4        1.    Plaintiff Thomas Robins brings this class action complaint against Defendant

5    Spokeo, Inc. ("Spokeo") for Defendant's collection, creation, and dissemination of consumer

6    reports in violation of the Fair Credit Reporting Act ("FCRA") and other applicable laws.

7        2.    Spokeo operates an eponymously named website—Spokeo.com—which

8    allows users to search for consumers by name, email address, or phone number.  In response

9    to a free query, Spokeo provides an in-depth consumer report that displays, among other

10   things, an individual consumer's address, phone number, marital status, approximate age,

11   occupation, approximate household value, hobbies, economic health (previously entitled

12   "credit estimate"), and wealth level.  Spokeo provides even more extensive information to

13   paid subscribers.

14       3.    The information contained in Spokeo's consumer reports includes aggregated

15   data collected from a wide range of sources as well as original descriptors, charts, and other

16   content created by Spokeo.

17       4.    Despite Spokeo's practices of compiling, creating and selling consumer

18   reports as described above, the company publicly maintains that it is not a consumer

19   reporting agency.

20       5.    As a result, Spokeo has been unlawfully operating and profiting as a consumer

21   reporting agency since its inception.

22                                  **PARTIES**

23       5.    Plaintiff Thomas Robins is a resident of Vienna, Virginia.

24       6.    Defendant Spokeo, Inc. is a California corporation with its headquarters and

25   principal place of business at 556 S. Fair Oaks Avenue, Suite 101-179, Pasadena, California

26   91105.  Defendant does business throughout the State of California and the nation.

27

28

1

**JURISDICTION AND VENUE**

2       8.    This Court has jurisdiction over the subject matter of this action pursuant to

3 28 U.S.C. § 1331.

4       9.    Personal jurisdiction and venue are proper because Spokeo is a corporation

5 headquartered in Los Angeles County and/or because the improper conduct alleged herein

6 occurred in, was directed from, and/or emanated or exported from California.

7

**FACTUAL BACKGROUND**

8 **Defendant's Process for Generating Consumer Reports**

9       10.    Spokeo developed and operates software that allows the company to quickly

10 aggregate data about consumers from a wide range of sources and then organize and display

11 that information to users in an online format.

12       11.    Some of the known sources that Spokeo uses to gather information include:

13 phone books, real estate listings, government records, and social networking websites.

14 However, the company has not publicly disclosed the full list of sources it uses to generate

15 reports about consumers, including the sources it uses to calculate an individual's economic

16 health (previously entitled "credit estimate") and wealth level.

17       12.    While some of Defendant's information stems from third party sources,

18 Defendant exerts total control over its website, meaning, it is in total control of what appears

19 there, and materially contributes to creating the content.  In other words, Defendant does not

20 simply host a forum for third parties to add content, but instead created a website to host its

21 own content.

22       13.    Unlike a search engine such as Google or Yahoo, when Defendant returns a

23 search result, it draws conclusions, makes predictions, and otherwise makes factual assertions

24 about the data it returns bearing on a consumer's financial well being and lifestyle choices—

25 conclusions that do not appear in the public or private data that Defendant's search result

26 draws from.

27

28

14.     Despite the breadth of information it provides about individual consumers, Spokeo attempts to disclaim the use of its services as a method for establishing a consumer's eligibility for credit, employment, or insurance, and further disclaims the use of its reports for any purpose covered by the FCRA.

15.     Nevertheless, Spokeo has marketed its services to human resource professionals, law enforcement agencies, persons and entities performing background checks, and publishes individual consumer "economic health" assessments (until recently, Defendant described those assessments as "credit estimates").

**The Information Defendant Reports**

16.     According to Defendant, millions of users search its website for consumer information each day.  When a user requests information regarding a particular consumer, Defendant immediately displays numerous pieces of information about that consumer, including the names of their siblings and parents, their address, phone number, marital status, age, employment information, education, ethnicity, items sought from websites such as Amazon.com, and music listened to on websites such as Pandora.com.

17.     From this information, whether correctly or incorrectly indentified with the right consumer, Spokeo creates a list of descriptors for that profile such as "seeks opportunity," "is self-driven," "cares about healthy living," "loves to read," "enjoys home decorating," "enjoys shopping," "loves to travel, and many more.  (*See* Exhibit A, attached hereto).  These descriptors are based on Defendant's own evaluation and analysis of the aggregated data and are not drawn from third parties.

18.     In addition to the extensive demographic information Spokeo provides, Spokeo collects economic information and creates colorized charts depicting the consumer's "economic health" (formerly "credit estimate") and "wealth level."  The credit estimate/economic health chart originally rated a person from "low" to "high," and now appears with such categories as "below average," "average" and "very strong."  Providing

1   even more economic detail, the "wealth" chart places an individual consumer in a specific
2   percentile as compared to other consumers (e.g. "Bottom 40%" or "Top 10%").  (*See* Exhibit
3   B, attached hereto).  Defendant does not, however, disclose where it obtains this economic
4   information.

5        19.    Defendant's "economic health" (formerly "credit estimate") and "wealth
6   level" depictions represent original content created by Spokeo that is not independently
7   available from sources other than Defendant.  Rather, these financial determinations are the
8   result of independent evaluations by Defendant of data that it collects.

9        20.    Further, until recently, Defendant offered information relating to a consumer's
10  "mortgage value,"  "estimated income," and "investments."  (*See* Exhibit C, attached hereto).

11       21.    Spokeo's reports even provide users with an image of the consumer's
12  purported home address, complete with a corresponding map of his or her neighborhood.
13  The address and neighborhood maps are accompanied by information about how long the
14  consumer has lived at the particular address, the value of the property, and individual
15  property attributes like the existence of fireplaces or swimming pools.  (*See* Exhibit D,
16  attached hereto).

17       22.    Although Defendant provides extensive data about consumers, a significant
18  portion of the information that it reports is wholly inaccurate.  In fact, the inaccuracies in
19  Spokeo's reports have been the source of much consternation for consumers upset about
20  public mischaracterizations of their employment history, economic background, household
21  value, and the like.[1]

22       23.    Compounding the inaccuracies in its reports, Spokeo has failed to develop an
23  effective system to allow consumers to remove inaccurate information from their individual
24  reports, or remove the reports from Defendant's website altogether.  In May 2009,

25  _____

26  [1]      *See, e.g.,* Spokeo: Meredith Yeomans, Privacy Concerns Over People Search Database Spokeo.com,
    AZFAMILY.COM, June 1, 2010, http://www.azfamily.com/news/consumer/Privacy-concerns-over-people-
27  search-database-Spokeocom-95374649.html (last accessed February 15, 2011).

28

1    Defendant's founder—Harrison Tang—gave a statement regarding purported inaccuracies in

2    Defendant's consumer reports.  According to Tang, "We know there are a lot of things we

3    need to improve. There are algorithms we can do that we haven't had time to improve the

4    inaccuracies. There's a lot of holes. We know that and we admit that."[2]

5           24.    Indeed, while Defendant purports to allow individuals to remove their Spokeo

6    listings, Spokeo intentionally limits removal requests based on unspecified or nonexistent

7    criteria.  Specifically, Spokeo.com frequently responds to individuals who attempt to remove

8    information that: "In order to prevent abuse, we must limit the frequency of privacy requests.

9    Please try again tomorrow.  Government officials please your @.gov email address for

10   priority processing."  (*See* Exhibit E, attached hereto).

11          25.    Perhaps most telling, Mr. Tang has removed all reports regarding himself

12   from Defendant's website.[3]

13   **Defendant's Marketing of its Consumer Reports**

14          26.    While Spokeo disclaims the use of its services for any purposes covered under

15   the FCRA, it has actively marketed it services to employers for the purpose of evaluating

16   potential employees.

17          27.    In support of its "Business Edition" subscriber service, Spokeo advertised that

18   its service provided increased access to candidates' social networking profiles by

19   'automat[ing] candidate research across 43 social networks."  (*See* Exhibit F, attached

20   hereto).

21          28.    Additionally, Defendant placed a list of "Ten Great Uses for Spokeo People

22   Search" on its blog, which included: "want to know more about prospective, or current

23   business associates?  Let Spokeo free people search lead the way" and "looking to hire

24   _____

25   [2]      Spokeo Web site raising privacy concerns, http://www.ohio.com/business/93220444.html?mobile=true
     (last accessed February 16, 2011)

26   [3]      You won't find Spokeo founder included on his 'people search' site,

27        http://articles.latimes.com/2010/jun/08/business/la-fiw-lazarus-20100608 (last accessed, February 14,
     2011).

28

1    someone, or maybe work for a company? Spokeo free people search is a great research tool
2    to learn more about prospective employers and employees." (*See* FTC Complaint Against
3    Spokeo, Inc., attached hereto as Exhibit G).  Since it was originally posted, Defendant has
4    modified this blog post to remove any reference to researching potential employees.

5         29.    The purpose of Defendant's marketing is to encourage HR professionals and
6    potential employers to view Spokeo reports on potential employees, including information
7    relating to credit worthiness, credit capacity, mode of living, personal characteristics, and
8    general reputation and character.

9    **FACTS RELATING TO PLAINTIFF**

10         30.    Spokeo maintains an inaccurate consumer report about Plaintiff Robins on its
11    website.

12         31.    The consumer report that Spokeo has compiled about Plaintiff Robins
13    correctly describes his basic identifying information such as address, neighborhood, and
14    siblings' names; however, for an extensive period of time most of the other information was
15    incorrect.  For example, a picture Defendant purported to be an image of Robins was not in
16    fact Plaintiff, the profile incorrectly stated he was in his 50s, that he was married, that he was
17    employed in a professional or technical field, and that he has children.

18         32.    While some changes have been made to Plaintiff's profile, it continues to
19    represent that he has a graduate degree, that his economic health is "Very Strong," and that
20    his wealth level in is the "Top 10%."

21         33.    Plaintiff has no way of verifying the "economic health" rating Defendant
22    ascribes to him, and denies that his "wealth level" is accurately described.

23         34.    Defendant's inaccurate report is particularly harmful to Plaintiff in light of the
24    fact that he is currently out of work and seeking employment.  In fact, Mr. Robins has been
25    actively seeking employment throughout the time that Spokeo has displayed inaccurate
26    consumer reporting information about him and he has yet to find employment.

27

28

1    35.    Defendant has caused Plaintiff actual and/or imminent harm by creating,

2    displaying, and marketing inaccurate consumer reporting information about Plaintiff.

3    Specifically, and in light of the fact that Plaintiff remains unemployed, Defendant has caused

4    actual harm to Plaintiff's employment prospects.  This harm is also imminent and ongoing.

5    36.    Because Plaintiff is unemployed, he has lost and continues to lose money.

6    37.    Additionally, Plaintiff has suffered actual harm in the form of anxiety, stress,

7    concern, and/or worry about his diminished employment prospects.

8    **CLASS ALLEGATIONS**

9    38.    Plaintiff Robins brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and

10   23(b)(3) on behalf of himself and a class of similarly situated individuals (the "Class")

11   defined as follows:

> All individuals in the United States who have had information relating to their
> credit worthiness, credit standing, credit capacity, character, general
> reputation, personal characteristics, or mode of living compiled and displayed
> by Spokeo, Inc. on Spokeo.com between July 20, 2006 and the date of trial of
> this action.

16   Excluded from the Class are Defendant, its legal representatives, assigns, and successors, and

17   any entity in which Defendant has a controlling interest.  Also excluded is the judge to whom

18   this case is assigned and the judge's immediate family.

19   39.    The Class consists of millions of individuals, making joinder impractical.

20   40.    Plaintiff's claims are typical of the claims of all of the other members of the

21   Class.  Plaintiff and each Class member was affected in substantially the same way by

22   Defendant's unlawful compiling of their personal information for distribution and/or sale to

23   third parties in violation of the FCRA and other applicable law.

24   41.    Plaintiff will fairly and adequately represent and protect the interests of the

25   other members of the Class.  Plaintiff has retained counsel with substantial experience in

26   prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to

27

28

1   vigorously prosecuting this action on behalf of the members of the Class, and have the

2   financial resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to

3   those of the other members of the Class.

4        42.     Absent a class action, most members of the Class would find the cost of

5   litigating their claims to be prohibitive and will have no effective remedy.  The class

6   treatment of common questions of law and fact is also superior to multiple individual actions

7   or piecemeal litigation in that it conserves the resources of the courts and litigants, and

8   promotes consistency and efficiency of adjudication.

9        43.     Defendant has acted and failed to act on grounds generally applicable to

10   Plaintiff and the other members of the Class, requiring the Court's imposition of uniform

11   relief to ensure compatible standards of conduct toward members of the Class.

12        44.     The factual and legal bases of Defendant's liability to Plaintiff and to the other

13   members of the Class are the same, resulting in injury to Plaintiff and all of the other

14   members of the Class.  Plaintiff and the other members of the Class have all suffered harm

15   and damages as a result of Defendant's wrongful conduct.

16        45.     There are many questions of law and fact common to Plaintiff's claims and

17   the claims of the other members of the Class.  Common questions for the Class include but

18   are not limited to the following:

19        a)     the means and methods by which Defendant compiles, distributes and

20   sells consumer reports to third parties;

21        b)     the extent and duration of Defendant's compilation, distribution, and

22   sale of consumer reports to third parties;

23        c)     the extent to which Defendant transforms, converts and draws

24   conclusions from data collected from unnamed public and private sources;

25        d)     whether Defendant's conduct described herein constitutes a violation

26   of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*;

27

28

1      e)      whether Defendant's conduct described herein constitutes a violation

2      of Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and,

3      f)      whether Defendant unjustly received and/or continues to receive

4      money as a result of its conduct described herein, and whether under principles of

5      equity and good conscience, Defendant should not be permitted to retain those

6      monies.

7      46.     The questions of law and fact common to the members of the Class

8      predominate over any questions affecting only individual members and a class action is

9      superior to all other available methods for the fair and efficient adjudication of this

10     controversy.

11     47.     Plaintiff reserves the right to revise the foregoing "Class Allegations" based

12     on facts learned in discovery.

13     **FIRST CAUSE OF ACTION**

14     **Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e**

15     **(On behalf of Plaintiff and the Class)**

16     48.     Plaintiff incorporates by reference the foregoing allegations.

17     49.     The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, was enacted in 1970

18     to ensure, among other things, that "consumer reporting agencies" adhere to strict guidelines

19     for maintaining and distributing fair and accurate consumer reports.

20     50.     The FCRA creates a set of individual consumer rights and a private right of

21     action by which to vindicate those rights.

22     51.     Defendant is a "consumer reporting agency" as defined by FCRA because it

23     accepts "monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole

24     or in part in the practice of assembling or evaluating consumer credit information or other

25     information on consumers for the purpose of furnishing consumer reports to third parties,

26

27

28

1   and…uses…means or facilit[ies] of interstate commerce for the purpose of preparing or

2   furnishing consumer reports."  15 U.S.C. § 1681a(f).

3          52.      Defendant is also a "nationwide specialty consumer reporting agency,"

4   as defined by FCRA because it is "a consumer reporting agency that compiles and

5   maintains files on consumers on a nationwide basis relating to (1) medical records or

6   payments; (2) residential or tenant history; (3) check writing history; (4) employment

7   history; or (5) insurance claims."  15 U.S.C. § 1681a(w).

8          53.      The data Defendant compiles and distributes and/or sells to third-

9   parties constitutes a "consumer report" as defined by FCRA because it contains

10  "written, oral, or other communication[s] of . . . information by a consumer reporting

11  agency bearing on a consumer's credit worthiness, credit standing, credit capacity,

12  character, general reputation, personal characteristics, or mode of living which is used

13  or expected to be used or collected in whole or in part for the purpose of serving as a

14  factor in establishing the consumer's eligibility for (A) credit or insurance to be used

15  primarily for personal, family, or household purposes; (B) employment purposes; or

16  (C) any other purpose authorized under section 1681b of this title." 15 U.S.C.

17  § 1681a(d).

18         54.      Defendant compiles, creates and distributes information to its users about

19  individual consumers including, their "credit estimate" (now "economic health"), "wealth

20  level," as well as occupational and personal characteristic information.

21         55.      Defendant disseminates information bearing on the characteristics enumerated

22  in 15 U.S.C. § 1681a(d).  Specifically, by providing information related to consumer's credit

23  estimate, wealth, economic health, investments, mortgage value, home value, median

24  income, and occupation, Defendant is disseminating information bearing on a consumer's

25  credit worthiness, credit capacity, and mode of living.  Likewise, by providing information

26  related to a consumer's lifestyle, interests, relationship, hobbies, education, neighborhood,

27

28

1    and household amenities, Defendant is disseminating information bearing on a consumer's

2    character, general reputation, personal characteristics, and mode of living.  Finally, by

3    disseminating information related to a consumer's ethnicity, religion, and political party,

4    Defendant is disseminating information bearing on a consumer's character and general

5    reputation.

6            56.    Despite Spokeo's clearly defined status as a "consumer reporting agency" and

7    its intent to disseminate "consumer reports," it has publicly attempted to disclaim any

8    obligations under FCRA.

9            57.    Notwithstanding statements by Defendant that information contained on

10   Spokeo.com "may not be used as a factor in establishing a consumer's eligibility for credit,

11   insurance, employment purposes or for any other purpose authorized under the FCRA,"

12   Defendant has intentionally marketed its services to human resource professionals, law

13   enforcement agencies, persons and entities performing background checks, and publishes

14   individual consumer "economic health" assessments.

15           58.    Section 1681e(d)(1) of FCRA requires that a consumer reporting agency

16   provide, to any person who regularly and in the ordinary course of business furnishes

17   information about any consumer to the consumer reporting agency ("Furnisher"), a "Notice

18   To Furnishers of Information: Obligations Under the FCRA" ("Furnisher Notice").

19           59.    Section 1681e(d)(2) requires that a consumer reporting agency provide, to any

20   person to whom it provides a consumer report ("Users"), a "Notice to Users of Consumer

21   Reports: Obligations of Users Under the FCRA" ("User Notice").

22           60.     The Furnisher Notices and the User Notices inform Furnishers and Users, of

23   their responsibilities under FCRA, such as a Furnisher's responsibility to provide accurate

24   information or a User's responsibility to provide adverse action notices.

25           61.    Defendant has continually failed to provide Furnisher Notices to Furnishers as

26   required by FCRA.

27

28

---

FIRST AMENDED COMPLAINT                    12                    Case No. 2:10-cv-5306-ODW-AGR

62.     Defendant has further failed to provide User Notices to Users as required by FCRA.

63.     Section 1681e(b) mandates that when a consumer reporting agency prepares a consumer report that it shall follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.

64.     Defendant has continually failed to follow reasonable procedures to assure the maximum possible accuracy of the information that it provides in its consumer reports.

65.     As a result of Defendant's conduct described herein and its willful violations of §§ 1681e(d), 1681e(b), Plaintiff and the Class have suffered harm as described herein. Plaintiff, on his own behalf and on behalf of the Class, seeks an order enjoining Defendant's conduct described herein and awarding himself and the Class the maximum statutory damages available under 15 U.S.C. § 1681n.

**SECOND CAUSE OF ACTION**

**Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b**

**(On behalf of Plaintiff and the Class)**

66.     Plaintiff incorporates by reference the foregoing allegations.

67.     Section 1681b(b)(1) of FCRA mandates that a consumer reporting agency only furnish a consumer report for employment purposes if it ensures that the person who obtains the report complies with certain disclosure requirements ("FCRA disclosures").

68.     The FCRA disclosures inform consumers that a consumer report may be used for employment purposes and inform employers that they must provide consumers with certain information if any adverse action is taken based in whole or in part on the report.

69.     Defendant promotes its services to employment recruiters and employers for use in making employment decisions.

70.     Defendant has furnished consumer reports for employment purposes, but has failed to make the FCRA disclosures required by § 1681b.

71.     As a result of Defendant's conduct described herein and its willful violations of §1681b(b), Plaintiff and the Class have suffered harm as described herein. Plaintiff, on his own behalf and on behalf of the Class, seeks an order enjoining Defendant's conduct described herein and awarding himself and the Class the maximum statutory damages available under 15 U.S.C. § 1681n.

**THIRD CAUSE OF ACTION**

**Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681j**

**(On behalf of Plaintiff and the Class)**

72.     Plaintiff incorporates by reference the foregoing allegations.

73.     15 U.S.C. § 1681j(a)(1)(C) directs the Federal Trade Commission ("FTC") to establish streamlined processes for consumers to request free annual file disclosures.  The FTC promulgated the Streamlined Process Rule, which is codified at 16 C.F.R. § 610.3.   The rule requires, among other things, that a nationwide specialty consumer reporting agency, like Defendant, provide consumers with a toll-free telephone number to request annual file disclosures and that the telephone number is prominently posted on any website owned or maintained by the nationwide specialty consumer reporting agency, as well as instructions to request disclosures by any additional available request methods.  16 C.F.R. § 610.3(a)(1).

74.     Defendant has failed to establish the processes required by the Streamlined Process Rule.  In particular, Defendant has failed to post a toll-free telephone number on its website through which consumers can request free annual file disclosures.

75.     As a result of Defendant's conduct described herein and its willful violations of §§ 1681j(a)(1)(C) and 1681j(a)(2), Plaintiff and the Class have suffered harm as described herein. Plaintiff, on his own behalf and on behalf of the Class, seeks an order enjoining Defendant's conduct described herein and awarding himself and the Class the maximum statutory damages available under 15 U.S.C. § 1681n.

**FOURTH CAUSE OF ACTION**

**Violation of Cal. Bus. & Prof. Code § 17200 et seq.**

**(On behalf of Plaintiff and the Class)**

76.     Plaintiff incorporates by reference the foregoing allegations.

77.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

78.     The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.  An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

79.     As described above, Defendant has violated the "unlawful" prong of the UCL in that Defendant's conduct violates numerous provisions of the FCRA.

80.     Defendant has violated the "unfair" prong of the UCL in that it gained an unfair business advantage by failing to produce accurate reports and otherwise take the necessary steps to adhere to FCRA.

81.     As a result of Defendant's conduct described herein and its willful violations of Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class have lost money and suffered harm as described herein.

82.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to engage in the unfair and unlawful conduct described herein. Plaintiff seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein; and, (2) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Thomas Robins, on behalf of himself and the Class, respectfully requests that this Court issue an order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Thomas Robins as class representative, and appointing his counsel as class counsel;

B.      Declaring that Defendant's actions, as set out above, violate the Fair Credit Reporting Act, §§ 1681e, 1681b, 1681j, and Cal. Bus. & Prof. Code §§ 17200 *et seq*.;

C.      Award Plaintiff and the Class statutory damages to the maximum extent allowable;

D.      Awarding injunctive relief as necessary to cease Defendant's violations of the Fair Credit Reporting Act and Cal. Bus. & Prof. Code §§ 17200 *et seq*.;

E.      Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G.      Enter such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class;

H.      Award such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  February 16, 2010                    EDELSON MCGUIRE LLC


By: /s/ Michael Aschenbrener
MICHAEL ASCHENBRENER
One of the Attorneys for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Michael J. Aschenbrener, an attorney, certify that on February 16, 2011, I served the above and foregoing **First Amended Complaint**, by causing a true and accurate copy of such paper to be filed and transmitted to counsel of record via the Court's CM/ECF electronic filing system.

/s/ Michael J. Aschenbrener_____
Michael J. Aschenbrener
EDELSON MCGUIRE LLC