# EXHIBIT A



## Lifestyle & Interests

| | |
|---|---|
| Plays sports | Enjoys fitness |
| Enjoys the outdoors | Loves to travel |
| Loves reading | Reads about sports |
| Subscribes to magazines | Has children |
| Enjoys family activities | Cares about healthy living |
| Enjoys gardening | Enjoys home decorating |
| Owns pets | Owns dogs |
| Has a swimming pool | Researches investments |
| Is a Collector | Is self-driven |
| Seeks opportunity | Joined a shopping club |
| Is not interested in politics | Donates to causes |
| Donates to environmental issues | Enjoys shopping |
| Enjoys retail shopping | Browses mail catalogs |
| Buys from mail catalogs | |

# EXHIBIT B

PROFILE



# EXHIBIT C



# EXHIBIT D

PROFILE

 50s | Female – Parent
 20s | Female – Child

 40s | Male – Parent

**Number of People:** 5 – 6

**Children:** 3: 10 – 12 year old boy, 13 – 18 year old boy

**Fireplace:** No

**Central Air:** No

**Est. Home Value:** $1M+

**Number of Adults:** 3

**Home Description:** Single Family House

**Central Heating:** No

**Swimming Pool:** *unknown*

**Length of Residence:** 5 years



## Neighborhood

**Location:** Kentucky > Louisville

**Zipcode:** 40291

**Median Income:** $69k

**Median Home Value:** $178k

# EXHIBIT E

 **sp🔵keo™**

| NAME | EMAIL | PHONE | USERNAME | FRIENDS |  | JOIN | LOGIN |

Search for a person by name and location    **SEARCH**

## Remove a listing

Spokeo aggregates publicly available information from phone books, social networks, marketing surveys, real estate listings, business websites, and other public sources. Spokeo does not originate data or publish user-generated content. Rather, Spokeo indexes third-party data in ways similar to Google or Bing. Spokeo does not control or maintain any aggregated third-party data, and therefore cannot guarantee its accuracy or currentness. Spokeo does not publish directory listings for children under 18. Please read our full privacy policy.

Spokeo cares about data privacy. We have partnered with ReputationDefender, a leading privacy protection agency, to help you control and remove your information on hundreds of other people search sites. Click the banner to get started:


ADVERTISEMENT

**KEEP YOUR PRIVATE INFORMATION PRIVATE.**
Remove personal information from the internet.

**Learn more**

**Reputation**.com

You can also remove your Spokeo listing from public searches for free. Please note that removing your Spokeo listing from public searches does not remove your information from the third-party data sources. Your information will still be shown on other people search sites, and you will need to contact those third-party sites one-by-one, or use ReputationDefender to protect your online identity.

To remove a listing from Spokeo, please enter the URL of the profile and your email address (for verification purposes)

| URL: | http://www.spokeo.com/email-search/search?e=▮▮▮▮@gmail.com | What is a URL? |
| Email: | ▮▮▮▮@gmail.com | Why do I have to provide this? |
| Code: | | KLRDTC | Remove Listing » |

**In order to prevent abuse, we must limit the frequency of privacy requests. Please try again tomorrow.
Government officials please use your @.gov email address for priority processing.**

About  Blog  Directory  Privacy  Terms  Help  Contact
Copyright © 2006-2011 Spokeo Inc. All rights reserved

# EXHIBIT F



JOIN | LOGIN

**spokeo**

Home   Business   Law Enforcement   Recruiting

Want to see your candidates' profiles on MySpace and LinkedIn?

23% of recruiters already research social networks.* Spokeo goes a step beyond and automates candidate research across 43 social networks.

**TRY BUSINESS EDITION**   or **learn more**

SEARCH 40+ SITES IN SECONDS   slide   LinkedIn   YouTube   hi5   myspace   PANDORA   twitter   flickr   amazon   digg   StumbleUpon

"People are uncovering surprising details..." 
-- The Wall Street Journal

Enter an email address






# EXHIBIT G

**Before the**
**Federal Trade Commission**
**Washington, DC 20580**

In the Matter of                              )
                                             )
Spokeo, Inc.                                 )
_____)

**Complaint and Request for Investigation,**
**Injunction, and Other Relief**

## I.      Introduction

1.      The Center for Democracy and Technology submits this complaint to petition the Federal Trade Commission to investigate the recent business practices of Spokeo, Inc., operator of an online data aggregator and broker.

2.      Spokeo offers detailed consumer profiles about millions of Americans on its website, Spokeo.com.  These profiles include highly personal information, including religious and ethnic background, judgments about shopping and recreational habits, and information about family members and roommates.  Spokeo also purports to offer "Credit Estimate" and "Wealth Level" ratings for the millions of persons in its database, as well as information about mortgage values, income, and investments in order to convince people to sign up for the Spokeo's premium paid service.  The site also encourages employers to access its database in evaluating potential hires.

3.      In fact, Spokeo does not provide much of the data it promises, and other conclusions and facts on the site about consumers are often extremely inaccurate. The site does offer "Credit Estimate" and "Wealth Level" ratings to paid subscribers, though it does not disclose how and on what information those assessments are based.

4.      Despite offering credit ratings and promoting the use of its services for employment decisions, Spokeo does not offer consumers any of the protections encoded in the Fair Credit Reporting Act as required by law.  Consumers have no access to the data underlying Spokeo's conclusions, are not informed of adverse determinations based on that data, and have no opportunity to learn who has accessed their profiles.

5.      Spokeo's business activities, including the provision of detailed consumer reports without the controls mandated by the Fair Credit Reporting Act, constitute

violations of that Act, as well as unfair and deceptive practices in violation of Section 5 of the Federal Trade Commission Act.

## II.    Parties

6.      The Center for Democracy and Technology ("CDT") is a non-profit, public interest organization incorporated in the District of Columbia and operating as a tax-exempt entity.  CDT is dedicated to preserving an open, free, and innovative internet, and works on a wide range of online issues, including free expression, consumer privacy, health privacy, security and surveillance, digital copyright, internet openness and standards, international issues, and open government.  CDT pursues its mission through public education, grass roots organizing, litigation, and coalition building.

7.      Spokeo, Inc. ("Spokeo") owns and operates the site Spokeo.com, which provides detailed consumer profiles about millions of Americans, including information about consumers' credit, wealth, and lifestyle.  The company offers any visitor to Spokeo.com the opportunity to search and view free profiles of the consumers in its database.  Spokeo aggressively promotes its paid service to visitors on the site, whereby consumers pay for a subscription membership to Spokeo in order to access more detailed premium profiles.  Spokeo is located in Pasadena, California.[1]

## III.   Statement of Facts

###     A.    Background about Spokeo

8.      Spokeo describes itself as a "search engine specialized in organizing people-related information."  Internet users can visit Spokeo.com and search for any person in order to see Spokeo's profile about that individual (users can also search by email address or phone number).  Spokeo offers both free and paid versions of each profile.  The free version contains more limited (though still quite detailed) information about consumers and contains repeated promotions to encourage searchers to sign up for the paid service.  Spokeo offers more substantial profiles to users who sign up for a subscription to Spokeo's service which costs between $2.95 and $4.95 per month (depending on the length of the subscription).[2]

9.      On the "About" section of its website, Spokeo describes its data aggregation business:

> Spokeo is a search engine specialized in organizing people-related information from phone books, social

---

[1] Spokeo, About Spokeo, http://www.spokeo.com/blog/about/ (last visited June 25, 2010).

[2] Spokeo, https://www.spokeo.com/purchase (last visited June 10, 2010).

> networks, marketing lists, business sites, and other
> public sources.  Most of this data is publicly available on
> the Web. . . . That said, only Spokeo's algorithm can
> piece together the scattered data into coherent people
> profiles, giving you the most comprehensive
> intelligence about anyone you want to find.[3]

Spokeo subsequently explains that it "aggregates data from hundreds of online and offline sources."[4]

10.     The logo on Spokeo's site features the slogan "Uncover personal photos, videos, and secrets . . ."[5]

11.     Spokeo is inconsistent about whether all the data it aggregates is otherwise publicly available or not.  On its own "About" page, it alternatively says that "all" and "most" of the data it aggregates is publicly available.[6]  In press interviews, Spokeo executives have refused to answer questions about its data sources and whether they are publicly available.[7]

12.     Spokeo prominently advertises that it offers credit and wealth assessments for all individuals in its database.  On each free profile page, Spokeo promotes that it has "Credit Estimate" and "Wealth Level" for paid viewers of the profile, and also promises information about the consumer's mortgage, income, and investments. *See infra*, ¶¶ 18-19 and accompanying screenshots.

13.     The company also promotes the use of its services in making employment decisions.  During at least some of the company's history, the main Spokeo page featured a banner across the front reading, "HR Recruiters — Click Here Now!"[8] Historically, the site also advertised that subscriptions were for "business," "recruiters," and "law enforcement."[9]

---

[3] Spokeo, About Spokeo, http://www.spokeo.com/blog/about (last visited June 25, 2010).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Betty Lin-Fisher, *Spokeo Web site raising privacy concerns*, OHIO.COM, May 9, 2010, http://www.ohio.com/business/93220444.html.

[8] Michael Fertik, *Want to Remove Your Information from Spokeo?*, REPUTATION DEFENDER, Mar. 28, 2010, http://www.reputationdefenderblog.com/2010/03/28/want-to-remove-your-information-from-spokeo/ (see screenshot on page)

[9] *Spokeo:  Recruiters' Friend and Job Seekers' Nightmare,* IRISHMAN SPEAKS BLOG, Feb. 23, 2010, http://irishmanspeaks.typepad.com/irishmanspeaks/2010/02/spokeo-recruiters-friend-and-job-seekers-nightmare.html.



14.     In a recent Fox Business News interview posted to the Spokeo site, Spokeo President and Co-Founder Harrison Tang continues to endorse the use of Spokeo to investigate potential hires:

> Fox Interviewer:  "If I'm an employer and I want to hire Harrison Tang, can I just, like, put your name in your system and then everything that you put on MySpace is gonna be sent to me?"

> Harrison Tang:  "Yes.  Actually just enter anyone's e-mail and then we'll basically go through 43 social networks that we support and we'll grab all the profiles, blogs, photos, videos, anything that you can see, basically we'll grab it."

> Fox Interviewer:  "So, if we're relying on employers to, you know, go look at each one individually, your program is going to make it real easy to find out a lot of information across a lot of different websites very quickly, correct?"

> Harrison Tang:  That correct.  Actually, based on the research in 2005, 23% of the recruiters today is [sic] actually already using one of the social networks for their candidate research.  So basically we streamline the

> process and actually scale it to support 43 social networks."[10]

15.    On its blog recently, Spokeo hosted a contest for users to identify the best uses of the Spokeo service.  Spokeo announced the #1 winning entry as "To look up people who are potential employers/employees."[11]  Spokeo also recently published a blog entry entitled, "Ten Great Uses for Spokeo Free People Search."  Two of these ten promoted uses were:

> Want to know more about prospective, or current business associates? Let Spokeo free people search lead the way.

> Looking to hire someone, or maybe work for a company? Spokeo free people search is a great research tool to learn more about prospective employers and employees.[12]

16.    Spokeo estimates that the site receives "millions of hits per day."[13]  The web analytics firm Quantcast ranks Spokeo.com as among the top 250 most visited sites in the United States.[14]

> B.    *What Spokeo Reports About Consumers*

17.    Spokeo profiles are divided into five sections:  "Basic Profile," "Wealth," "Lifestyle and Interests," "Household," and "Neighborhood."  Users typically search for these profiles on the Spokeo home page by the consumer's name, though Spokeo also offers its users the ability to search by phone number (Spokeo also offers

---

[10] *Fox Business News:  Speaking About Spokeo* (Fox News television broadcast Dec. 22, 2009).  *See also* Jamie Edmonds, *What Does Spokeo Say About You?*,WILX.COM, Apr. 6, 2010  http://www.wilx.com/news/headlines/90057932.html ("The Co-founder of Spokeo, Harrison Tang, told News Ten the site started as a way for Stanford grads to monitor their friends online. It evolved into a 'people search' that recruiters, employers, and even the police are using.")

[11] *We've Got a Winner!*, SPOKEO, June 14, 2010, http://www.spokeo.com/blog/2010/06/weve-got-a-winner/.

[12] *Ten Great Uses for Spokeo Free People Search*, SPOKEO, June 22, 2010, http://www.spokeo.com/blog/2010/06/ten-great-uses-for-spokeo-free-people-search/.

[13] Meredith Yeomans, *Privacy Concerns Over People Search Database Spokeo.com*, AZFAMILY.COM, June 1, 2010, http://www.azfamily.com/news/consumer/Privacy-concerns-over-people-search-database-Spokeocom-95374649.html.

[14] Quantcast Audience Profile for Spokeo.com, http://www.quantcast.com/spokeo.com (last visited June 10, 2010) (Spokeo is ranked 237 in the U.S. based on monthly traffic of approximately 5 million users).

profiles based on email address, though those profiles are structured differently). *See infra*, ¶ 25 and accompanying screenshot. Under "Basic Profile," Spokeo lists a variety of personal information about the individual, including the person's address, age, religion, education level, occupation, estimated home value, relationship status, number of children, and ethnicity. Spokeo also publishes photographs from social networking sites that may be associated with that person.



18.     In the "Wealth" section, Spokeo claims to provide information about creditworthiness, income, and wealth for every person listed within its database. For non-paying users who search for people on the Spokeo service, the "Wealth" section of each profile includes mock charts for "Credit Estimate" and "Wealth Level" and provides links to "see more information." These sections also include a solicitation to "See all available wealth information — click here," with pre-clicked options to see "Mortgage Value," "Estimated Income," and "Investments."



Clicking any of these links (or, indeed, any of the links on any free profile page) takes users to a purchase screen where they can sign up for a paid subscription membership to see the full Spokeo profile of any consumer in the Spokeo database.

19.     If a user signs up for a paid Spokeo subscription to see the more detailed wealth information, all consumer profiles show the actual Spokeo "Credit Estimate" and "Wealth Level" ratings for the consumer, with the consumer placed along continuums ostensibly indicating their relative credit and wealth status.



However, Spokeo does not here or elsewhere provide any information about "Mortgage Value," "Estimated Income," or "Investments" as promised.

20.     In the "Lifestyle and Interests" section, Spokeo's paid service provides incredibly precise conclusions about consumers, identifying potentially dozens of assessments about hobbies (such as "enjoys gourmet cooking," "enjoys family activities," or "enjoys casino gambling"), shopping habits ("mail orders DVDs" or "collects sports memorabilia"), reading habits ("reads about history" or "reads about sports"), music listened to ("likes classic music" or "likes soft rock music"), recreational interests ("plays football," "enjoys strolling," or "enjoys scuba diving"),

7

and other personal traits ("owns dogs," "cares about healthy living," or "has children").  As in the "Wealth" and other sections of its profiles, Spokeo does not disclose the underlying data on which it bases these conclusions, including for rather obscure assessments such as "is self driven" and "seeks opportunity."



Users of Spokeo's free service receive similar, though less detailed information, about a consumer's lifestyle and interests.

21.     Under "Household," Spokeo identifies by name the other adults living in the household, how many children (and how old) live in the house, how long the person had lived there, and whether the residence has certain amenities such as central heat, central air, a fireplace, or a swimming pool.

8



22.     Finally, in the "Neighborhood" section, Spokeo provides detailed demographic information about the neighborhood where the searched-for individual lives.  This typically includes median income and home values, and charts depicting age, income, occupation, and ethnicity distribution.



23.    In addition to searches by name, Spokeo also allows users to search telephone numbers and email addresses in order to find information about the persons associated with those contacts.  If a phone number matches one associated with a consumer profile on Spokeo, Spokeo shows all the information associated with that profile, just as it would if the user had searched an individual by name.

24.    Otherwise, Spokeo identifies the carrier that services the phone and purports to assign a real world location associated with the phone (along with a Google satellite view of that location) and demographic information about that location.

25.    For searches of email addresses by paid users, Spokeo provides a basic profile associated with the email address (including name, age, gender, and location) and searches to see whether that email address is associated with any of 43 social networking sites on the internet.  For unpaid users, Spokeo merely confirms that the email address is "valid," provides a name, and invites users to sign up to see more information associated with that email address.  As long as the domain associated with the email address (e.g., yahoo.com or cdt.org) is a real domain, Spokeo will say that the email address is valid and at least strongly imply that the site has extensive information about the email address — even if the email account does not actually exist.



C.     *Inaccuracies in Spokeo*

26.     In general, the data provided in these consumer profiles is unreliable.  An informal review of profiles associated with CDT employees revealed significant inaccuracies in every single profile.  Similarly, Dori Marlin, a consumer protection reporter for the CBS affiliate in Albany, New York conducted a similar review of

11

people in her office and also found serious errors in the majority of profiles.[15] Numerous other writers have detailed similar problems in Spokeo's database.[16]

27.     Spokeo founder Harrison Tang has admitted in press interviews that Spokeo is often inaccurate and that site simply hasn't "had time to improve the inaccuracies."[17]   Spokeo has attributed the mistakes both to inherent errors in the aggregated data sources,[18] as well as to imperfections in the way that Spokeo's algorithm makes judgments based on that data.[19]   The end result is often a portrait of a consumer that bears little relation to reality.

28.     As one commentator succinctly put it:  "The site is notoriously inaccurate — and people who've paid found a mix of scarily correct and wildly wrong info about themselves."[20]

     D.     *Lack of Consumer Controls on Spokeo*

29.     Although Spokeo offers detailed — though erratic — insight into millions of American consumers, the site has few controls in place to protect those consumers' rights.

30.     Consumers cannot access the underlying data upon which Spokeo bases its broad conclusions about a consumer, including conclusions about a consumer's lifestyle, interests, credit worthiness, and wealth.  Although consumers can pay for a

---

[15] *The Bottom Line: Spokeo.com*, WRGB CBS 6 Albany, June 1, 2010, http://www.cbs6albany.com/news/website-1274470-bottom-spokeo.html.

[16] Kristin Samuelson, *Should I be worried about Spokeo.com?*, CHICAGO TRIBUNE, May 28, 2010, http://newsblogs.chicagotribune.com/the-problem-solver/2010/05/should-i-be-worried-about-spokeocom.html; Greg Lambert, *Spokeo is Only "Spooky" in its Inaccuracy*, 3 GEEKS AND A LAW BLOG, May 5, 2010, http://www.geeklawblog.com/2010/05/spokeo-is-only-spooky-in-its-inaccuracy.html; *You. Online. Your Privacy. No So Private!,* ALLVOICES, June 25, 2010, http://www.allvoices.com/contributed-news/6160803-you-online-your-privacy-isnt-private-at-all; Snopes.com, Spokeo, http://www.snopes.com/computer/internet/spokeo.asp (last visited June 28, 2010).

[17] Betty Lin-Fisher, *Spokeo Web site raising privacy concerns*, OHIO.COM, May 9, 2010, http://www.ohio.com/business/93220444.html.

[18] Spokeo, About Spokeo, http://www.spokeo.com/blog/about (last visited June 10, 2010).

[19] *See* Hannah Garroutte, *Spokeo: A Digital Compilation of Your Life*, NEW ERA NEWS, Apr. 26, 2010, http://neweranews.org/blog/spokeo-a-digital-compilation-of-your-life.

[20] Sheryl Harris, *Data-collecting Sites Scare Users Into Paying*, THE PLAIN DEALER, May 19, 2010, http://www.cleveland.com/consumeraffairs/index.ssf/2010/05/data-collecting_sites_scare_us.html.

membership to see that Spokeo reports that they have "low" credit or "enjoy shopping," they are never given the chance to learn why Spokeo lists those assessments on their profiles.

31.     Spokeo also puts no meaningful restrictions on who can access consumer data or what they can do with the information they find on Spokeo, including information about a consumer's credit worthiness.  As noted previously, the site encourages visitors to use Spokeo data to evaluate prospective employers, employees, and business associates.  *See supra*, ¶¶ 13-15.  The site also does not vet in any way potential users of its database:  Anyone with an internet connection can access the free information on the Spokeo site; for the more detailed information, including the "Credit Estimate" and "Wealth Level" ratings and detailed lifestyle information, Spokeo only requires to pay for a membership using a credit card or PayPal account.

32.     Spokeo does not inform its users of any obligation to inform consumers of adverse actions taken by the user as a result of the information obtained on Spokeo.

33.     Consumers also do not have the opportunity to correct inaccurate, incomplete, or misleading data about themselves on Spokeo.  The company does purport to offer consumers the ability to delete their profiles on the site, although some consumers have stated that this opt out mechanism does not always work.[21] Regardless, even if a consumer does remove his or her profile once, the company may subsequently create a new profile about that individual in the future — indeed, many consumers already have multiple profiles on Spokeo, and removing one does not affect any other.  Because Spokeo assembles these profiles of consumers without their knowledge or permission — and because decision-makers who rely on Spokeo data are not required or directed to give consumers notice of adverse actions — most consumers would have no reason to know about or visit the site in order to delete their profiles.

34.     Spokeo does provide an inconspicuous grey-on-white disclaimer that Spokeo information should not be used for FCRA purposes.  This notice appears at the bottom of each profile, immediately beneath aggregate demographic data about where the searched-for individual lives — information that an ordinary user would likely find less compelling that the detailed individual profile of the person searched. (For disclosure in context of consumer profile, *see supra*, ¶ 22 and succeeding screenshot).

† Profile data is derived from marketing surveys, consumer records, and public data sources and is not guaranteed to be 100% accurate. The data provided to you by Spokeo may not be used as a factor in establishing a consumer's eligibility for credit, insurance, employment purposes or for any other purpose authorized under the FCRA.

---

[21] Snopes.com, Spokeo, http://www.snopes.com/computer/internet/spokeo.asp (last visited June 28, 2010).

Spokeo also puts a disclaimer within its "Terms of Use" that "Spokeo is not a 'consumer reporting agency' as defined in the Fair Credit Reporting Act."  However, Spokeo never explains the import of that term, or explains what uses are prohibited by that Act.[22]

35.     In short, individuals listed in the Spokeo database have no opportunity to find out who is accessing these detailed profiles about themselves, or to what purposes the profiles are being used.  Even if they learn about Spokeo, and pay for a subscription to view the most detailed information about themselves, they only see broad conclusions, and not the underlying data on which those conclusions are based.  Spokeo gives them no opportunity to petition the site to correct the information listed about them on the site.  Consumers are only given an imperfect mechanism to delete their profiles, though most of those consumers would have no reason to know about or visit Spokeo to do so.  Meanwhile, employers and other decision-makers may be relying on Spokeo's credit, wealth, and lifestyle data in making adverse determinations about consumers without their awareness.

> E.     *CDT Consultations with Spokeo*

36.     CDT sent Spokeo a message through the Spokeo.com customer service web form on June 2, 2010 stating that we had concerns about the information readily available about consumers on the company's website.  We received a response that day from Katie Johnson of Spokeo asking for a summary of our issues and an offer to speak with the company's co-founder, Harrison Tang.  On June 3, CDT sent an email to Ms. Johnson stating that CDT believed that Spokeo should offer consumers the protections required by the Fair Credit Reporting Act, including rights of access and correction.  CDT and Spokeo scheduled a call with Mr. Tang for June 9; however, Spokeo canceled the call one day before it was to occur.  CDT offered to reschedule the call for another time, but Spokeo declined our request.

## IV.     Grounds for Relief

37.     The Fair Credit Reporting Act ("FCRA") provides that the FTC shall have the authority to investigate and enforce violations of the Act.[23]  Section 5 of the Federal Trade Commission Act provides that "unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."[24]  When the Commission has reason to believe that any person has used or is using unfair or deceptive practices in or affecting commerce, it shall issue a complaint against such person in an administrative proceeding, if it believes such a proceeding to be in the public interest.[25]

---

[22] Spokeo, Terms of Use, http://www.spokeo.com/blog/terms/ (last visited June 25, 2010).
[23] Fair Credit Reporting Act, 15 U.S.C. § 1681s(a)(1) (2006).
[24] Federal Trade Commission Act § 5, 15 U.S.C. § 45(a)(1) (2006).
[25] *Id.* § 45(b).

38.     Spokeo has published detailed consumer reports about millions of consumers.  Although these reports often contain glaring inaccuracies, Spokeo has marketed them for use in employment decisions, and claims to offer qualitative assessments of consumers' credit and wealth levels based on this data.

39.     Although Spokeo's reports classify as "consumer reports" under the terms of the Fair Credit Reporting Act, Spokeo does not offer consumers the consumer protections dictated by that statute, including rights of access, redress, and notification of adverse decisions.  As such, Spokeo's offering of these reports constitutes a violation of the FCRA, as well as unfair business practices under Section 5 of the FTC Act.  Moreover, Spokeo has committed deceptive practices under Section 5 as well, in offering these admittedly flawed reports to the public, and in falsely inducing consumers to sign up for paid services by marketing of meaningless or nonexistent information about credit worthiness, wealth, income, investments, and other information.

>    *A.      The Fair Credit Reporting Act*

40.     The Fair Credit Reporting Act requires that companies that generate reports about consumers for certain purposes must abide by a threshold of consumer protections.  The statute stands for the principle that if data brokers are going to make available incredibly detailed profiles about consumers upon which others may rely in making credit, employment, and other important decisions, those data brokers should follow certain rules to protect the privacy rights of consumers and to ensure that consumer information is reported fairly and accurately.

41.     Spokeo provides the types of detailed consumer profiles that FCRA was designed to cover — profiles that provide precise evaluations of a consumer's creditworthiness and lifestyle.  Nevertheless, the company does not offer consumers any of the protections afforded by the law.

42.     FCRA was passed in 1970 in response to a pattern of abuse and misinformation by the consumer reporting industry.[26]  In addition to highly inaccurate reports, Congress was concerned that data brokers were reporting conclusions about consumers' "lifestyle," including assessments about marital status.[27]  The Act opens with the following findings:

>    The Congress makes the following findings:

---

[26] Letter dated Dec. 16, 2004, from Chris Jay Hoofnagle and Daniel J. Solove to Federal Trade Commission, http://epic.org/privacy/choicepoint/fcraltr12.16.04.html.
[27] *Id.*

15

1.  The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2.  An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3.  Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

4.  There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.[28]

43.     Because the Fair Credit Reporting Act is remedial legislation, courts have held that it is to be construed liberally in favor of consumers.[29]  The FTC has been aggressive in bringing FCRA cases in recent years in order to protect consumers and curb the excesses of the data broker industry.[30]

44.     The Fair Credit Reporting Act imposes a range of baseline protections to safeguard consumer privacy and ensure that credit and character data about consumers is collected and reported fairly and accurately.  These protections include:  the right to access consumer report data about oneself,[31] the right to petition the consumer reporting agency to correct incorrect data,[32] a time limitation

---

[28] Fair Credit Reporting Act, Pub. L. No. 91-508, § 602, 84 Stat. 1114, 1128 (codified at 15 U.S.C. § 1681(a)(1)-(4) (2006)).

[29] *See, e.g., Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1056 (S.D. Ohio 2002)

[30] *See, e.g.,* Complaint, *United States v. Choicepoint, Inc.*, Civil Action No. 2:06-CV-00041 (TC), FTC File No. 052-3069 (Jan. 26, 2006); Complaint, *United States v. Far West Credit, Inc.*, FTC File No. 042-3185 (Jan. 17, 2006); Press Release, FTC, Choice Point Settles Data Security Breach Charges; to Pay $10 Million in Civil Penalties, $5 Million for Consumer Redress (Jan. 26, 2006), http://www.ftc.gov/opa/2006/01/choicepoint.shtm; Press Release, Federal Trade Commission, Credit Reporting Agency Settles FTC Charges (Jan. 17, 2006), http://www.ftc.gov/opa/2006/01/farwestcredit.shtm (Far West Credit to pay $120,000 in civil penalties).

[31] 15 U.S.C. § 1681g(a); Press Release, FTC, Tenant Screening Agency Settles FTC Charges:  Failed to Respond to Consumers' Requests for Their Files or Investigate Disputes (Feb. 2, 2010), http://www.ftc.gov/opa/2010/02/saferent.shtm.

[32] 15 U.S.C. § 1681s-2(a)(1)(B)(i); *Bryant v. TRW, Inc.* 689 F.2d 72, 78-79 (6th Cir. 1982) (consumer may challenge negative information and credit reporting agencies must use reasonable procedures to investigate complaints); Press Release, FTC,

on how long negative financial information may remain on a consumer's record,[33] and a limitation on who can access a report about a consumer.[34]

45.     Spokeo clearly does not provide any of these protections to consumers. *See supra*, ¶¶ 29-35. As such, Spokeo is in violation of the Fair Credit Reporting Act if they are deemed to be a consumer reporting agency under that statute's definition which provides:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.[35]

46.     Spokeo clearly meets three parts of the four-part definition of "consumer reporting agency": Spokeo (1) for fees, (2) assembles information on consumers, and (3) utilizes interstate commerce. The only question, then, is whether Spokeo's reports are "consumer reports."

47.     FCRA defines the term "consumer report" as such:

> The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used or expected to be used or collected

---

Nation's Big Three Consumer Reporting Agencies Agree to Pay $2.5 Million to Settle FTC Charges of Violating Fair Credit Reporting Act (Jan. 13, 2000), http://www.ftc.gov/opa/2000/01/busysignal.shtm (consumer reporting agencies must provide reasonable opportunity for consumers to discuss credit report errors).
[33] 15 U.S.C. §1681c(a)(1)-(5); Press Release, FTC, NCO Group to Pay Largest FCRA Civil Penalty to Date (May 13, 2004), http://www.ftc.gov/opa/2004/05/ncogroup.shtm (outdated debts may not appear on a credit report).
[34] 15 U.S.C. § 1681b(a). Press Release, FTC, ChoicePoint Settles Data Security Breach Charges; To Pay $10 Million in Civil Penalties, $5 Million in Consumer Redress (January 26, 2006), http://www.ftc.gov/opa/2006/01/choicepoint.shtm (data broker fined for providing consumer reports to persons with no permissible FCRA purpose).
[35] 15 U.S.C. § 1681a(f).

> in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose under Section 604 [15 U.S.C. § 1681b].[36]

48.    The "other purposes" listed in Section 604 [15 U.S.C. § 1681a] repeat again the credit[37] and employment[38] purposes, and also include:

- insurance for the consumer[39]

- eligibility for a government benefit[40]

- assessment of a consumer's existing credit risk by potential investor or servicer of an existing consumer debt[41]

- a "legitimate business need" in connection with a transaction initiated by the consumer.[42]

---

[36] 15 U.S.C. § 1681a(d)(1) (2006).  A consumer profile must only address one of the purposes under the statute in order to qualify as a "consumer report."  *See* FTC Staff Opinion Letter dated June 11 1998, from William Haynes to Matthew B. Halpern, http://www.ftc.gov/os/statutes/fcra/halpern.shtm.

[37] *Id.* § 1681b(a)(3)(A).

[38] *Id.* § 1681b(a)(3)(B).

[39] *Id.* § 1681b(a)(3)(C).

[40] *Id.* § 1681b(a)(3)(D).

[41] *Id.* § 1681b(a)(3)(E).

[42] *Id.* § 1681b(a)(3)(F).  The Federal Trade Commission and the courts have traditionally interpreted this last provision broadly to encompass a wide range of scenarios where a business determines a consumer's eligibility for a good or service — or even price for a good or service — based in part on such as report.  *See* Commentary on the Fair Credit Reporting Act, 16 C.F.R. Pt. 600 (Comment to Section 604(3)(E)) (2010) (stating that "legitimate business purposes" would extend to rental tenant screening, offers to pay for goods with a check, and even opportunity to use a computer dating service); FTC Staff Opinion Letter dated June 10, 1998, from William Haynes to Mary Poquette, http://www.ftc.gov/os/statutes/fcra/poquette.shtm; Press Release, FTC, Spring, AT&T to Pay Nearly $1.5 Million in Combined Penalties for Violations of Federal Credit Laws, (Sept. 10, 2004) http://www.ftc.gov/opa/2004/09/sprintatt.shtm (FTC settlement regarding use of consumer reports for eligibility for phone service); *see also Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007) (interpreting "adverse action" under FCRA broadly to apply to price discrimination).

49.     Given the detailed consumer profiles created by Spokeo, the company should reasonably expect that users would utilize the information provided for the purposes specified in the statute.  Certainly, it is difficult to envision what Spokeo's "Credit Estimate" ratings would be likely to be used for other than credit purposes. Indeed, FCRA imposes specific additional requirements on data brokers that provide credit scores (also known as "risk scores" or "risk predictors") that place consumers on a relative continuum of credit worthiness.[43]  Allowing Spokeo and other companies to offer for sale specific credit ratings about consumers without following the dictates of FCRA would utterly defeat the purpose of the statute.

50.     Spokeo's profiles are "consumer reports" even if they are based on entirely "public" information (*but see supra*, ¶ 11).  First, FCRA's definition contains no exception for profiles based in whole or in part on publicly reported information, and the FTC has regularly stated that reports that contain only public data fall within the scope of "consumer reports" under the act.  As the FTC wrote in a staff opinion letter directly addressing this very issue:

>   Is a commercial service that reports only "public record" information a consumer reporting agency (CRA)?  An entity that meets the definitional requirement for a "consumer reporting agency" (CRA) in Section 603(f) of the FCRA is covered by the law even if the only information it collects, maintains, and disseminates is obtained from "public record" sources.[44]

51.     For example, the FTC has always assumed the companies that merely provide public information about consumer's criminal records constitute consumer reporting agencies under the terms of the Fair Credit Reporting Act:

>   A "consumer report" is, in turn, defined in Section 603(d)(1) as a report containing information bearing on an individual's credit standing or his or her "character, general reputation, personal characteristics, or mode of living" that is used or expected to be used for the purpose of serving as a factor in establishing the consumer's eligibility for, among other things, employment, insurance, or credit.
>
>   You do not contest that your company meets most of the definitional requirements of a CRA: It regularly

---

[43] *E.g.*, 15 U.S.C. § 1681g(f).

[44] FTC Staff Opinion Letter dated Sept. 15, 1999, from William Haynes to Sylvia Sum, http://www.ftc.gov/os/statutes/fcra/sum.shtm; Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600 (Comment to Section 603) (2010) (section on "public record information").

> provides consumer report information (criminal records that, at the very least, concern an individual's character or general reputation) to third parties for fees using interstate commerce.[45]

52.     Second, even if all the data was collected from public or previously published sources, the algorithms for determining Spokeo's conclusions about "Credit Estimate" and "Wealth Level" ratings — not to mention other specific judgments about lifestyle, hobbies, interests, and other proclivities — are not public, nor is a consumer told upon what specific allegedly public facts Spokeo's conclusions are based.  Rather, Spokeo represents an absolute black box for consumers — generating highly detailed analyses of consumers based on uncertain facts and reasoning.

53.     Placing inconspicuous disclaimers on profile pages that the reports are not to be used for FCRA purposes does not exempt Spokeo profiles from the scope of the law.  Data and conclusions that are likely to be used for — and, in the case of credit estimates, could only reasonably be used for — FCRA purposes are still subject to the rules proscribed in the statute.  Hidden directives not to use the information for FCRA purposes have no practical effect on user's behavior and only serve as a transparent effort to avoid FCRA's baseline consumer protections.  Data brokers cannot blatantly offer credit estimates and other detailed judgments about consumers and then simply aver themselves out of the scope of the law.[46]  This must especially the case when the company is actively promoting the use of its services for FCRA-covered purposes such as employment decision. *See supra* ¶¶ 13-15.[47]  In other cases, the FTC has required that companies who offer consumer reports provide "clear and prominent" notices of the limited permissible purposes for which

---

[45] FTC Staff Opinion Letter dated June 9, 1998, from William Haynes to Richard LeBlanc, http://www.ftc.gov/os/statutes/fcra/leblanc.shtm; *accord* FTC Staff Opinion Letter dated June 11, 1998, from William Haynes to Sidney F. Lewis, http://www.ftc.gov/os/statutes/fcra/lewis.shtm; FTC Staff Opinion Letter dated June 9, 1998, from William Haynes to David G. Islinger, http://www.ftc.gov/os/statutes/fcra/islinger.shtm.

[46] *See Marricone v. Experian Information Solutions, Inc.*, 2009 U.S. Dist. LEXIS 93003 (E.D. Pa. Oct. 6, 2009) (E.D. Pa. 2009) (rejecting data brokers' argument that it was not "consumer reporting agency" as matter of law).  *See also Payne v. Trans Union, LLC*, 2010 US Dist LEXIS 32320 (E.D. Pa Mar 31, 2010) (accord) *Breslin v. Trans Union, LLC*, No. 08-2236 (E.D. Pa. 2009) (accord).

[47] *See* Commentary on the Fair Credit Reporting Act, 16 C.F.R. Pt. 600 (Comment to Section 604(5)(D)) (2010) (stating that consumer profiles are "consumer reports" unless reporter takes "reasonable steps" to ensure reports are not being used for FCRA purposes).

consumer reports may be used and the incumbent obligations imposed upon companies who make adverse determinations based on those reports.[48]

B.      Unfairness

54.     For the reasons cited above, Spokeo's furnishing of detailed conclusions about consumers for credit, employment, and other purposes constitute an unfair practice under the FTC Act.

55.     A practice will be deemed unfair and illegal under this Section if it (1) causes or is likely to cause substantial injury to consumers; (2) cannot be reasonably avoided by consumers; and (3) is not outweighed by any countervailing benefits to consumers or competition that the practice produces.[49]

56.     Certainly, if decision-makers rely on Spokeo's unreliable database in making important decisions — as Spokeo has encouraged — consumers are likely to experience substantial harm in being unfairly denied employment and other opportunities.  Indeed, recognition of this harm was the very reason Congress passed the Fair Credit Reporting Act in 1970, finding:  "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."[50]

57.     This injury cannot be reasonably avoided by consumers.  In all likelihood, the considerable majority of Americans have no awareness at all about the Spokeo database, and Spokeo does not direct persons who make adverse determinations about consumers based on its assessments to notify consumers.[51]  Spokeo does not ask or receive consumers' permission to publish these detailed profiles about them. For those who do learn about Spokeo, the site does not provide access to the underlying data or methodology behind its reports, notice of who has accessed the reports about them, or a meaningful opportunity to correct errors.

58.     Finally, the injury to consumers is not outweighed by any benefit to consumers or competition.  Spokeo's "Credit Estimates" and "Wealth Levels" offer no benefit to consumers without the consumer protections encoded into law by the Fair Credit Reporting Act.  In the absence of these protections, Spokeo offers

---

[48] Press Release, FTC, Consumer Reporting Agency TALX Corp. Agrees to Settle FTC Charges (July 9, 2009), http://www.ftc.gov/opa/2009/07/talx.shtm; Press Release, FTC, Consumer Reporting Agency for Casinos Settles FTC Charges (April 22, 2010), http://www.ftc.gov/opa/2010/04/centralcredit.shtm.

[49] 15 U.S.C. § 45(n) (2006); FTC Policy Statement on Unfairness (1980), *appended to International Harvester Co.*, 104 F.T.C. 949, 1070 (1984), *available at* http://www.ftc.gov/bcp/policystmt/ad-unfair.htm.

[50] Fair Credit Reporting Act, Pub. L. No. 91-508, § 602, 84 Stat. 1114, 1128 (codified at 15 U.S.C. § 1681(a)(1)-(4) (2006)).

[51] 15 U.S.C. § 1681e(d)(2) (2006).

detailed conclusions about consumers' credit, wealth, and lifestyles with little or no factual grounding (and no opportunity to discern or correct whatever grounding exists).  Consumers do not benefit from data brokers publishing inaccurate, opaque, and unsubstantiated assessments relating to their creditworthiness and employability.

> C.     *Deceptive Practices*

59.     Spokeo has also committed deceptive practices by offering detailed profiles of consumers with apparently minimal factual support, and in attempting to induce users to sign up for Spokeo's paid service by overstating the amount of information Spokeo provides.

60.     The *FTC Policy Statement on Deception* provides that the Commission will find deception if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment.[52]

61.     First, Spokeo's profiles themselves are inherently deceptive.  Spokeo publishes detailed conclusions about consumers, including precise conclusions about religious preferences, ethnicity, hobbies, lifestyle, relationship status, credit levels, and wealth.  Spokeo moreover advises others to rely on this data for credit, employment, and other purposes.  Spokeo does not make available the information on which it bases these broad conclusions, so users are invited to take the claims at face value.

62.     Spokeo has admitted in press interviews that its assessments are inaccurate. *See supra*, ¶ 27.  It appears that Spokeo is these detailed conclusions about consumers with little or no factual basis; in effect, Spokeo is representing to users that it knows far more about its data subjects than is actually the case. Inconspicuous disclosures at the bottom of each page and elsewhere on the Spokeo site that the data "is not guaranteed to be 100% accurate" are insufficient to counteract a consumer's reasonable expectation when reviewing Spokeo profiles. *See supra* ¶¶ 22 & 34 and accompanying screenshots.

63.     Spokeo also intentionally misleads consumers in order to trick them into signing up for the paid service.

64.     For email searches, Spokeo also deceptively indicates that any email address coming from a legitimate web domain is a "valid email address," and strongly implies that the site has substantial information on nonexistent email addresses, including the real name and photographs of the owner.  *See supra*, ¶ 25 and accompanying screenshot.

---

[52] FTC Deception Policy Statement, *appended to Cliffdale Associates*, 103 F.T.C. 174 (1984), *available at* http://www.ftc.gov/bcp/policystmt/ad-decept.htm.

65.     When advertising available wealth information on its free profiles, Spokeo promises to provide "Credit Estimates," "Wealth Levels," mortgage value, estimated income, and investments.  *See supra*, ¶¶ 18-19 and accompanying screenshots. When users actually sign up for the service, Spokeo provides no information at all about mortgage values, estimated incomes, or investments.  Moreover, the ratings it provides regarding "Credit Estimates" and "Wealth Levels" have little or no grounding in reality.  In fact, in a blog entry on its site entitled "Clearing the Air," Spokeo admits that it doesn't actually have specific financial information about any individual:

> We do not have credit information, including exact credit scores and wealth ratings. We do not know the balance of your bank account. **In fact, we don't have any specific private financial information about anyone.**

(emphasis added).[53]

## V.     Request for Injunction and Other Relief

66.     Based on Spokeo's willful violations of the Fair Credit Reporting Act, and willful commission of unfair and deceptive business practices, CDT asks the Commission to:

- Order Spokeo to cease offering consumer reports until they offer the protections encoded in the Fair Credit Reporting Act;

- Enjoin Spokeo from making deceptive solicitations to consumers in order to induce them to sign up for Spokeo's paid services;

- Order Spokeo to pay restitution to consumers who paid for Spokeo's consumer reporting service;

- Order Spokeo to pay disgorgement of any monies received that are reasonably related to its deceptive, unfair, and illegal provision of data aggregation services;

---

[53] *Clearing the Air*, SPOKEO, May 12, 2010, http://www.spokeo.com/blog/2010/05/clearing-the-air/.  Spokeo's President Harrison Tang confirmed as much in a recent interview: "I want to clarify very clearly that we do not have people's credit information. We do not have people's credit card information, we do not have people's bank account information. We do not have any private financial information about anybody."  Connie Thompson, *Website Creates Virtual Online Bio of Anyone*, KOMONEWS.COM, May 4, 2010, http://www.komonews.com/news/consumer/92832789.html.

- Order Spokeo to pay penalties pursuant to the Fair Credit Reporting Act; and to

- Provide such other relief as the Commission finds necessary and appropriate.

Respectfully Submitted,


Justin Brookman

CENTER FOR DEMOCRACY
 AND TECHNOLOGY
1634 I Street, NW
Washington, DC  20006
202.637.9800 (tel)
202.637.0968 (fax)