SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone:  (949) 459-2124
Facsimile:  (949) 459-2123

MICHAEL J. ASCHENBRENER (maschenbrener@edelson.com) (*pro hac vice*)
BRADLEY M. BAGLIEN (bbaglien@edelson.com) (*pro hac vice*)
CHRISTOPHER L. DORE (cdore@edelson.com) (*pro hac vice*)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THOMAS ROBINS, an individual, on behalf of himself and all others similarly situated, | ) ) ) Case No. 10-CV-5306 ODW (AGRx) ) |
| Plaintiff, | ) **PLAINTIFF'S OPPOSITION TO** ) **DEFENDANT'S MOTION TO** ) **DISMISS** |
| v. | ) ) |
| SPOKEO, INC., a California corporation, | ) ) |
| Defendant. | ) Judge Otis D. Wright II ) ) Date:  May 16, 2011 ) Time:  1:30 p.m. ) Location:  Courtroom 11 ) Action Filed: July 20, 2010 ) ) |

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 2

III. ARGUMENT ............................................................................................ 4

A.  Plaintiff Has Article III Standing Under Controlling Precedent and Because He Seeks Redress for Spokeo's Violations of His Statutory Rights ................................................. 4

   1.  Spokeo's Dissemination of Consumer Reports Has Caused Plaintiff Concrete and Particularized Harm. ................................................................................. 5

   2.  Spokeo's Violation of Plaintiff's Statutory Rights Confers Standing ..................... 8

   3.  Plaintiff Has Alleged that His Injuries are Traceable to Spokeo's Conduct. ........... 12

   4.  Plaintiff's Injuries Will be Redressed by a Favorable Decision Against Spokeo. ..... 13

B.  Plaintiff States a Claim Under FCRA Because Spokeo is a Consumer Reporting Agency ................................................................................................. 13

   1.  Spokeo is a Consumer Reporting Agency. .................................................. 14

   2.  Spokeo's reports meet the statutory definition of a "Consumer Report." ............. 16

   3.  Spokeo is not a search engine or a community forum. ................................... 18

   4.  Spokeo Cannot Disclaim its Obligations Under FCRA. ................................. 18

C.  Spokeo is Not Immune Under the Communications Decency Act Because it is a Content Provider, Not a Service Provider ................................................................. 20

   1.  CDA Immunity is an Affirmative Defense That Should Not be Considered at the Pleading Stage. ............................................................................... 20

   2.  Spokeo is an Information Content Provider. ............................................... 20

D.  Plaintiff States a Claim Under the Unfair Competition Law .................................... 23

   1.  Plaintiff has standing under the UCL because he has alleged that he suffered economic injury .............................................................................. 23

   2.  Plaintiff has alleged that Spokeo acted "Unlawfully" under the UCL. ................. 24

   3.  Plaintiff has stated a claim under the "Unfair" prong of the UCL. .................... 24

V.  CONCLUSION ....................................................................................... 25

1

# CASES

2

*Alvarez v. Longboy,*
   697 F.2d 1333 (9th Cir. 1983)................................................................ 10, 11

3

4

*American Federation of Government Employees v. Clinton,*
   180 F.3d 727 (6th Cir. 1999) .................................................................... 6

5

6

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ............................................................................ 4

7

8

*Barbour v. Haley,*
   471 F.3d 1222 (11th Cir. 2006) ............................................................... 12

9

10

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009).................................................................. 20

11

12

*Bell Atlantic v. Twombly,*
   550 U.S. 544 (2007)................................................................................. 4

13

14

*Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.,*
   206 F.3d 980 (10th Cir. 2000) ................................................................. 22

15

16

*Bennett v. Spear,*
   520 U.S. 154 (1997) ................................................................................ 12

17

18

*Botefur v. City of Eagle Point, Oregon,*
   7 F.3d 152 (9th Cir. 1993) ....................................................................... 6, 7

19

20

*Cal-Tech Communs., Inc. v. L.A. Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) ............................................................................ 23

21

22

*Camacho v. Auto Club of So. Cal.,*
   142 Cal. App. 4th 1394 (2006)................................................................ 24

23

24

*Canyon County v. Syngenta Seeds, Inc.,*
   519 F.3d 969 (9th Cir. 2008).................................................................... 12

25

26

*Carafano v. Metrosplash.com, Inc.,*
   339 F.3d 1119 (9th Cir. 2003) ................................................................. 22

27

28

*Cassierer v. Kingdom of Spain,*
   580 F.3d 1048 (9th Cir. 2009). ................................................................ 4

*Comeaux v. Brown & Williamson Tobacco Co.,*
   915 F.2d 1264 (9th Cir. 1990) ......................................................... 17, 18

*Couch v. Wan,*
   No. CV 08-1621, 2010 WL 3582519 (E.D. Cal. Sept. 10, 2010) ................... 7

*Doe v. Chao,*
   540 U.S. 614 (2004) .............................................................................. 8

*Doe v. Unocal Corp.,*
   67 F. Supp. 2d 1140 (C.D. Cal. 1999) ...................................................... 13

*Edwards v. First American Corp.,*
   610 F.3d 514 (9th Cir. 2010) ...................................................... 9, 11, 12

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
   521 F.3d 1157 (9th Cir. 2008) (en banc) ............................................. 21, 22

*Fernandez v. Brock,*
   840 F.2d 622 (9th Cir. 1988) ................................................................ 11

*Ferrington v. McAfee, Inc.,*
   No. 10-CV-01455, 2010 WL 3910169, at *7 (N.D. Cal. Oct. 5, 2010) ......... 23

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ............................................................................ 4

*FTC v. Accusearch,*
   570 F.3d 1187 (10th Cir. 2009) ...................................................... 21, 22

*Fulfillment Services Inc. v. United Parcel Serv., Inc.,*
   528 F.3d 614 (9th Cir. 2008) ................................................................. 9

*Goddard v. Google, Inc.,*
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................. 22

*Gomez v. Alexian Bros. Hosp. of San Jose,*
  698 F.2d 1019 (9th Cir. 1983) ................................................................. 11

*Greenway v. Info. Dynamics, Ltd.,*
  399 F. Supp. 1092 (D. Ariz. 1974) ........................................................ 17

*Guerrero v. Gates,*
  442 F.3d 697 (9th Cir. 2003) ..................................................................... 6

*Hepting v. AT&T Corp.,*
  439 F. Supp. 2d 974 (N.D. Cal. 2006) ................................................... 13

*Ileto v. Glock Inc.,*
  349 F.3d 1191 (9th Cir. 2003) ................................................................... 4

*In re Carter,*
  553 F.3d 919 (6th Cir. 2009) ..................................................................... 9

*Krottner v. Starbucks Corp.,*
  628 F.3d 1139 (9th Cir. 2010) ............................................................... 7, 8

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310 (2011) ............................................................................. 23

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ..................................................................... 2

*Linda R.S. v. Richard D.,*
  410 U.S. 614 (1973) .................................................................................... 9

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................................ 5, 12, 13

*McCready v. eBay, Inc.,*
  543 F.3d 882 (7th Cir. 2006) ................................................................... 15

*Mende v. Dun & Bradstreet, Inc.,*
  670 F.2d 129 (9th Cir. 1982) ................................................................... 19

*Munson v. Del Taco, Inc.*,
   46 Cal. 4th 661 (2009)............................................................... 24

*Nelson v. Chase Manhattan Mortgage Corp.*,
   282 F.3d 1057 (9th Cir. 2002) ................................................... 10

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
   No. 10-55840, 2011 WL 815806 (9th Cir. March 8, 2011).......... 16

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   487 F.3d 701 (9th Cir. 2007) ..................................................... 18

*Radack v. U.S. Dept. of Justice*,
   No. 04-01881, 2006 WL 2024978 (D.D.C. Jul. 17, 2006) ............ 7

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................... 24

*Sisley v. Sprint Communications Co.*,
   284 Fed. Appx. 463 (9th Cir. 2008) ...................................... 9, 11

*Warth v. Seldin*,
   422 U.S. 490 (1975).......................................................... 4, 9, 23

*Wyatt v. Terhune*,
   280 F.3d 1238 (9th Cir. 2002) ................................................... 20

**STATUTES**

15 U.S.C. § 1681a(d) ............................................................. 16, 17

15 U.S.C. § 1681a(f) ..................................................................... 14

15 U.S.C. § 1681n ......................................................................... 10

15 U.S.C. § 1681o ......................................................................... 10

15 U.S.C. § 1681e(d)(1) ................................................................ 10

15 U.S.C. 1681e(d)(2) ................................................................... 10

15 U.S.C. 1691e(b) .................................................................................. 10

47 U.S.C. § 230 ................................................................................. 20, 21

47 U.S.C. § 230(f)(3) ............................................................................ 21

Fed. R. Civ. P. 12(b)(1) ........................................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................................4

I. **INTRODUCTION**

In his First Amended Complaint ("FAC"), Plaintiff alleges that Spokeo, Inc. ("Spokeo") maintains, markets, and widely distributes highly inaccurate consumer reports, which include information bearing on a consumer's financial characteristics, creditworthiness and personal reputation, through its website spokeo.com. Well aware that the Fair Credit Reporting Act ("FCRA") requires entities that distribute such information to comply with a number of consumer protection provisions, Spokeo simply attempts to disclaim all of its obligations under FCRA. But Spokeo renders these disclaimers meaningless by advertising its reports to employers and other third parties, encouraging these users to investigate consumers through Spokeo's reports.

Defendant responds to these allegations with three primary arguments, none of which support dismissal of the FAC. Spokeo first asserts that Plaintiff lacks standing because he merely alleges that he is "concerned" that Spokeo's reports "could cause him harm" in the future. However, Spokeo's argument ignores Plaintiff's amended allegations that establish that Plaintiff has already suffered actual, concrete harm to his employment prospects and continues to suffer anxiety, stress, and concern as a result of Spokeo's conduct. Moreover, Plaintiff has sufficiently alleged that Spokeo violated his statutory rights under FCRA, which itself demonstrates Plaintiff's Article III standing.

Second, Spokeo asserts that it is not a consumer reporting agency under FCRA, an argument that ignores two salient facts: (1) Spokeo offered "Credit Estimates," "Wealth Level" determinations, and a myriad of other financial and personal information pertaining to consumers' mortgages, investments, home value, family life, and personal interests; and (2) it marketed its consumer reports to HR recruiters and employers for the purpose of evaluating potential hires. These two actions together make Defendant a consumer reporting agency.

Third, Spokeo attempts to entirely shield itself from liability by raising the affirmative defense of immunity under the Communications Decency Act ("CDA") (47 U.S.C. § 230). However, CDA immunity is unavailable to entities that, like Spokeo, are "information

---

Plaintiff's Opposition to Defendant's Motion to Dismiss                    1                    10-CV-5306-ODW (AGRx)

content providers" who create and publish their own independent content.  Accordingly, Spokeo's purported defense fails.

For these reasons, and as explained in further detail below, Spokeo's Rule 12(b)(1) and 12(b)(6) Motions to Dismiss should be denied in their entirety.

## II.    FACTUAL BACKGROUND[1]

Defendant is the operator of the website Spokeo.com, which provides in-depth consumer reports containing information about millions of individuals.  (FAC ¶ 2.) Defendant's website is supported by software that allows it to quickly collect, process and organize consumer data from a wide range of sources, and then creates original content that displays conclusions and predictions based on inferences from the collected data.  (*Id.* ¶¶ 3, 11-13.)

Millions of users search Defendant's website for consumer information each day.  (*Id.* ¶ 16.)  When a user requests information about a particular consumer, Spokeo immediately displays numerous pieces of personal information about the consumer, including the names of relatives, an address, phone number, marital status, ethnicity, and employment information. (*Id.*)  Based on this information, Spokeo also creates a list of descriptors that bear on the consumer's well being, personal reputation, and character, such as "seeks opportunity," "is self-driven," "cares about healthy living," and many more.  (*Id.* ¶ 17.)

In addition to the extensive demographic information that Spokeo provides, its reports include extensive information about consumers' economic wealth and purported creditworthiness.  (*Id.* ¶¶ 18-20.)  In particular, Spokeo creates colorized charts reporting a consumer's "Economic Health" (formerly titled "Credit Estimate"), which originally rated a

---

[1] Spokeo requests that the Court take judicial notice of a number of screen shots from Spokeo's website.  However, at the pleading stage, documents outside of the complaint may only be considered if "authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Plaintiff's complaint does not "necessarily rely" on the screen shots that Spokeo attempts to introduce, and they should be disregarded for the purposes of this Motion to Dismiss.  Rather, Plaintiff's well-pleaded allegations control and must be accepted as true at the pleading stage.

person from "low" to "high," and now appears with such categories as "below average," "average" and "very strong." (*Id.* ¶ 18.) Spokeo also assigns a "Wealth Level" to each consumer, placing individuals in a specific percentile as compared to other consumers (e.g., "Bottom 40%" or "Top 10%"), and provides information about the individual's investments and mortgage value. (*Id.*) These financial determinations and representations are created independently by Spokeo and are not available from sources other than Defendant's website. (*Id.* ¶¶ 18-20.)

At Defendant's own admission, a significant portion of the information that it reports is wholly inaccurate. (*Id.* ¶ 22.) Compounding the inaccuracies in its reports, Spokeo has made it extremely difficult for consumers to remove inaccurate information from their individual reports, or remove the reports from Defendant's website altogether. (*Id.* ¶ 23.)

Despite these known inaccuracies, Spokeo has marketed its services directly to employers, human resource professionals, law enforcement agencies, and entities performing background checks as a means to investigate consumers. (*Id.* ¶¶ 26-29.) These individuals and entities may pay a fee to subscribe to Spokeo's services and view full reports that include, among other things, the consumer's "economic health" and "credit estimate" assessments as well as numerous descriptors about the consumer's lifestyle and personal reputation.

**B.    Plaintiff's Claims**

Plaintiff alleges that Spokeo maintains an inaccurate consumer report about him on its website. (FAC ¶ 30.) While the consumer report that Spokeo has compiled about Plaintiff correctly describes some basic information, a significant portion of the information is incorrect, including his employment status, his marriage status, his age, his educational background, whether he has children, his "economic health," his "wealth level," and on top of that, the profile contained a picture of someone else. (*Id.* ¶ 31.) As a result of Spokeo's maintaining and marketing inaccurate consumer reporting information about Plaintiff, Plaintiff alleges that Spokeo has caused actual harm to Plaintiff's employment prospects, and

1  that he has suffered anxiety, stress, concern, and/or worry about his diminished employment

2  prospects.  (*Id.* ¶¶ 35, 37.)

3  **III.    ARGUMENT**

4          In reviewing a motion to dismiss, the court "accept[s] all well-pleaded factual

5  allegations in the complaint as true, and determines whether the factual content allows the

6  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

7  *Cassierer v. Kingdom of Spain, 580 F.3d 1048, 1052 (9th Cir. 2009).*  A motion to dismiss

8  must be denied if the complaint contains factual allegations that, when accepted as true,

9  "plausibly give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1941

10  (2009).  "Once a claim has been adequately stated, it may be supported by showing any set of

11  facts consistent with the allegations in the complaint."  *Bell Atlantic v. Twombly*, 550 U.S.

12  544, 546 (2007).  A complaint need only contain a plain and short statement of a plaintiff's

13  claim, a standard that "contains a powerful presumption against rejecting pleadings for failure

14  to state a claim."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199 (9th Cir. 2003); Fed. R. Civ. P.

15  8(a).

16          Spokeo moves to dismiss the entire FAC under Rule 12(b)(1) based on Plaintiff's

17  purported lack of standing and under Rule 12(b)(6) for failure to state a claim.  As

18  demonstrated below, each of Spokeo's arguments fails, and the Court should deny

19  Defendant's Motion to Dismiss in its entirety.

20          **A.    Plaintiff Has Article III Standing Under Controlling Precedent and
              Because He Seeks Redress for Spokeo's Violations of His Statutory Rights**

21

22          Standing under Article III requires that a plaintiff allege: (1) injury in fact, (2) traceable

23  to the defendant's conduct, and (3) redressability.  *Friends of the Earth v. Laidlaw Envtl.*

24  *Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  "For purposes of ruling on a motion to

25  dismiss for want of standing, the court "must accept as true all material allegations of the

26  complaint . . . standing in no way depends on the merits of the plaintiff's contention that the

27  particular conduct is illegal."  *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

28

---

Beginning with injury in fact, Spokeo challenges each element of Article III standing. The injury in fact element of standing requires that Plaintiff has suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As explained below, Spokeo's argument that Plaintiff has not suffered an injury in fact is without merit because Plaintiff has alleged both concrete, actual harm flowing from Spokeo's conduct as well as an invasion of his statutory rights, both of which are sufficient to demonstrate injury in fact for purposes of Article III standing.

## 1. Spokeo's Dissemination of Consumer Reports Has Caused Plaintiff Concrete and Particularized Harm.

Ignoring Plaintiff's amended allegations, Spokeo argues that Plaintiff has not alleged a concrete, actual injury because the "most Plaintiff can say is that he is *concerned* that publicly available information about him that is incorrect and aggregated by Spokeo could cause him harm . . ." (Spokeo Mem. at 8.) But Plaintiff does not allege mere concern or potential impairment of his job prospects; rather, Plaintiff explicitly alleges that Spokeo's actions have diminished his employment prospects and caused him to suffer anxiety, concern and stress. (FAC ¶¶ 35, 37.) In other words, Plaintiff does not claim that he may suffer injury at some indeterminate time in the future, but rather alleges that he has already suffered actual harm as a result of Spokeo's conduct.

### a. Plaintiff Alleges that Spokeo has Caused Actual Harm to His Employment Prospects.

Plaintiff's amended allegations squarely address the deficiencies identified by the Court in its January 27, 2011 Minute Order (the "Order," DKT No. 35). In the Order, the Court determined that Plaintiff "only expresses that he has been unsuccessful in seeking employment, and that he is 'concerned that the inaccuracies [in] his report *will affect* his ability to obtain credit, employment, insurance, and the like.'" (Order at 3) (emphasis in original). While the risk of continued injury to Plaintiff resulting from Spokeo's reports

1    remains real, Plaintiff now explicitly alleges that Spokeo has "caused actual harm to

2    Plaintiff's employment prospects" by "creating, displaying, and marketing inaccurate

3    consumer reporting information about Plaintiff."  (FAC ¶ 35.)  Plaintiff further demonstrates

4    harm by alleging that he has been actively seeking employment throughout the time that

5    Spokeo displayed inaccurate consumer reporting information about him, and that he has not

6    yet found employment.  (*Id.* ¶ 34.)

7         Spokeo's attempt to frame Plaintiff's injuries as mere "allegations of possible future

8    injury" must be rejected, as this ignores Plaintiff's explicit allegations that he has already

9    suffered the actual harm of diminished employment prospects.  (Spokeo Mem. at 8.)

10   Similarly, Spokeo's suggestion that additional factors may have contributed to Plaintiff's

11   inability to secure employment presents, at most, a factual dispute that cannot alone support a

12   Rule 12(b)(1) dismissal.  Rather, the complaint's allegations control and plainly demonstrate

13   that Plaintiff suffered actual harm as a result of Spokeo's conduct.  (FAC ¶¶ 33-37.)

14        A number of courts, including the Ninth Circuit, have found that an impairment of

15   employment prospects is a sufficient injury to confer standing.[2]  For example, in *Guerrero v.*

16   *Gates*, 442 F.3d 697, 707 (9th Cir. 2003), the court found that the plaintiff had standing to

17   assert RICO claims against a police department based on an alleged wrongful conviction.

18   The Ninth Circuit found that the plaintiff demonstrated the requisite injury based on

19   allegations that "he *suffered a material diminishment of his employment prospects* by virtue of

20   the unjust and unconstitutional conviction."  *See also Botefur v. City of Eagle Point, Oregon*,

21

22   [2] Spokeo counters with a Sixth Circuit decision, *American Federation of Government Employees v.*
     *Clinton*, 180 F.3d 727 (6th Cir. 1999) ("AFGE").  In AFGE, plaintiffs, who were former federal

23   employees at several military bases, challenged the government's decision to allow only private
     contractors to bid on work projects at numerous military bases.  The court's conclusion that "harm

24   to plaintiffs' employment prospects . . . is insufficiently concrete and particularized to establish"
     standing is distinguishable because, even if the government had allowed public bidders, it was not

25   clear that the plaintiffs' firms would have successfully bid on the jobs or that plaintiffs would have
     been retained to perform the work.  In contrast, Plaintiff's harm is not contingent on further conduct

26   and has already occurred.  Accordingly, the Court should follow the weight of authority finding that
     actual harm to employment prospects constitutes injury in fact for Article III purposes.

27

28

---

Plaintiff's Opposition to Defendant's Motion        6             10-CV-5306-ODW (AGRx)
to Dismiss

1   7 F.3d 152, 158 (9th Cir. 1993) (considering the merits of plaintiff's § 1983 claim based on

2   allegations that defendant's "false statements impaired his future employment prospects");

3   *Couch v. Wan*, No. CV 08-1621, 2010 WL 3582519, at *19 (E.D. Cal. Sept. 10, 2010)

4   (plaintiff demonstrated injury in fact to state a RICO claim where the "alleged harm amounts

5   to a 'material diminishment' of plaintiffs' 'employment prospects'"); *Radack v. U.S. Dept. of*

6   *Justice*, No. 04-01881, 2006 WL 2024978, at *3, fn. 3 (D.D.C. Jul. 17, 2006) (in an action

7   based on former employer's decision to refer allegations of plaintiff's professional

8   misconduct to state bar authorities, injury in fact element satisfied because it "is clear . . . that

9   [plaintiff] has sustained injury in the form of a damaged reputation and reduced employment

10  prospects").[3]

11       Similarly, Plaintiff here alleges that Spokeo's provision of inaccurate consumer reports

12  caused actual harm by diminishing his employment prospects.  (FAC ¶¶ 33-37.)  Plaintiff's

13  injury is real, concrete and particularized and is sufficient to meet the injury in fact

14  requirement of Article III standing.

15          **b.     Plaintiff's Anxiety and Concern Over His Diminished Job
             Prospects Demonstrates Injury in Fact.**

16

17       Moreover, Plaintiff alleges that he has suffered harm in the form of anxiety, stress and

18  concern over his diminished employment prospects.  (FAC ¶ 37.)  The Ninth Circuit has

19  unambiguously held that allegations of this nature alone satisfy Article III's injury in fact

20  requirement and are sufficient to confer standing.  *Krottner v. Starbucks Corp.*, 628 F.3d

21  1139, 1142 (9th Cir. 2010).  In *Krottner*, an unidentified third party stole a laptop containing

22  unencrypted names, addresses, and social security numbers of numerous Starbucks

23

24  [3] Spokeo cites several cases for the proposition that "allegations of possible future injury [to
25  Plaintiff's employment prospects] do not satisfy the requirements of Article III."  (Spokeo Mem. at
    8-9)  But as pointed out in detail herein, Plaintiff does not allege a possible impairment of future
26  employment opportunities; rather, Plaintiff's injury has already occurred and was the result of
    Spokeo's conduct.  Accordingly, the cases identified by Spokeo regarding future injury are
27  inapposite.

28

1    employees.  One of the plaintiffs, all of whom were current or former Starbucks employees,

2    alleged that he suffered harm in the form of "generalized anxiety and stress regarding the

3    situation."  *Id.* at 1141.  The Ninth Circuit recognized that this plaintiff's allegation "that he

4    has generalized anxiety and stress as a result of the laptop theft *is the only present injury* that

5    Plaintiffs-Appellants allege."  *Id.* at 1142 (emphasis added).  The court concluded that "[t]his

6    is sufficient to confer standing" for that particular plaintiff.  *Id.* (citing *Doe v. Chao*, 540 U.S.

7    614, 617-18) (2004) (plaintiff who allegedly "was torn . . . all to pieces and was greatly

8    concerned and worried" because of the disclosure of his Social Security number and its

9    potentially "devastating consequences" had Article III standing).

10         Spokeo claims that *Krottner* is inapposite on the grounds that the risk of real and

11    immediate harm was "very real" in *Krottner* because the plaintiffs'  social security numbers

12    had already been released.  However, Spokeo's analysis conflates the two types of injuries at

13    issue in *Krottner*.  As discussed above, a single plaintiff alleged, as his *sole injury*, that he

14    suffered generalized anxiety and stress as a result of the laptop theft.  This injury was

15    sufficient to confer standing on that plaintiff alone.  The remaining plaintiffs alleged a

16    separate injury; namely, that they were subject to an increased risk of identity theft.  As

17    Spokeo points out, the Ninth Circuit found that the risk of identity theft was "credible"

18    because the subject laptop had already been stolen.  But this conclusion had no bearing on the

19    "generalized anxiety" injury suffered by the single plaintiff, which was deemed sufficient to

20    confer standing on its own.

21         Accordingly, Plaintiff's allegations that he has suffered, and continues to suffer,

22    anxiety, worry and concern about his diminished employment prospects is independently

23    sufficient to demonstrate injury in fact.

24           **2.**      **Spokeo's Violation of Plaintiff's Statutory Rights Confers Standing**

25         Independent of allegations that establish that Plaintiff suffered concrete, actual injury,

26    Plaintiff also has standing because he asserts a violation of his statutory rights under FCRA –

27

28

1    irrespective of whether the claim prevails on the merits.  Plaintiff respectfully requests that the

2    Court reconsider its position regarding Plaintiff's "statutory" standing in light of Plaintiff's

3    amended allegations as well as recent Ninth Circuit authority, which is discussed in detail

4    herein.

5    It is well-established that "the injury required by Article III may exist *solely* by virtue

6    of statutes creating legal rights, the invasion of which creates standing . . ." *Fulfillment*

7    *Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008) (citing *Warth*

8    *v. Seldin*, 422 U.S. 490, 500 (1975)); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 617, fn

9    3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates

10   standing, *even though no injury would exist without the statute*") (emphasis added); *Sisley v.*

11   *Sprint Communications Co.*, 284 Fed. Appx. 463, 466 (9th Cir. 2008) (reversing dismissal of

12   statutory claim "for lack of a cognizable injury" because "[the plaintiff] alleged a violation of

13   her state statutory rights which can constitute a cognizable injury sufficient to withstand a

14   Rule 12(b)(1) motion").

15   Therefore, the essential standing question is whether the "constitutional or statutory

16   provision on which the claim rests properly can be understood as granting persons in the

17   plaintiff's position a right to judicial relief."  *Warth*, 422 U.S. at 500; *see also In re Carter*,

18   553 F.3d 919, 988 (6th Cir. 2009) ("Congress no doubt has the power to create new legal

19   rights, and it generally has the authority to create a right of action whose only injury-in-fact

20   involves the violation of that statutory right.")  The court must look to the underlying statute

21   "to determine whether it prohibited Defendants' conduct; if it did, then Plaintiff has

22   demonstrated an injury sufficient to satisfy Article III."  *Edwards v. First American Corp.*,

23   610 F.3d 514, 516-17 (9th Cir. 2010).  Indeed, where a statute creates a private right of action,

24   even a plaintiff who cannot establish actual damages has article III standing.  *Id.* (finding that,

25

26

27

28

1   because the Real Estate Settlement Procedures Act of 1974 created a private right of action,

2   plaintiff had standing even though no actual damages were alleged).[4]

3          The Ninth Circuit has made clear that FCRA creates a set of individual rights and

4   provides for a private right of action for consumers such as Plaintiff by which to vindicate

5   those rights. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir.

6   2002) (citing 15 U.S.C. § 1681n & 15 U.S.C. § 1681o). Here, Plaintiff alleges detailed facts

7   demonstrating that Spokeo willfully violated FCRA by widely disseminating consumer

8   reports about Plaintiff without complying with certain notice requirements and ensuring the

9   maximum possible accuracy of the information, thereby violating Plaintiff's statutory rights.

10  (FAC ¶¶ 48-65.)

11         Specifically, the FAC demonstrates that Spokeo compiles, creates and distributes

12  information bearing on Plaintiff's creditworthiness, credit capacity, and mode of living.

13  (FAC ¶¶ 54-55.) However, Spokeo has continually failed to provide Furnisher Notices and

14  User Notices as explicitly required of consumer reporting agencies by FCRA. (*Id.* ¶¶ 58-62;

15  citing 15 U.S.C. 1681e(d)(1)-e(d)(2).) Moreover, Spokeo has continually failed to follow

16  reasonable procedures to assure the maximum possible accuracy of the consumer credit

17  information that it provides, as required by 15 U.S.C. 1691e(b). (FAC ¶¶ 63-64.) These well-

18  pleaded allegations demonstrate that Plaintiff has suffered injury in the form of a violation of

19  his statutory rights under FCRA, which is sufficient to meet Article III's requirement.

20         Indeed, the Ninth Circuit has consistently found that plaintiffs have standing to assert

21  claims based on violations of statutory procedural rights, such as the procedural requirements

22  imposed by FCRA. For example, in *Alvarez v. Longboy*, 697 F.2d 1333 (9th Cir. 1983), the

23  court found that the plaintiffs had standing to sue for violations of certain notice provisions

24  
_____

25  [4] The Eight Circuit's decision in *Dowell v. Wells Fargo Bank, NA*, 617 F.3d 1024, 1026 (8th Cir. 2008) does not bring the Ninth Circuit's rule in question. The court in *Dowell* explicitly refused to

26  "delve into [the] issue of statutory construction" regarding actual damages because the defendant presented sufficient evidence at summary judgment that it did not act willfully, as required to

27  demonstrate a FCRA violation.

28

1   under the Farm Labor Contractor Registration Act of 1963 ("FLCRA").  The FLCRA
2   required employment crew leaders to inform potential workers at the time of recruitment of
3   any existing workers' strike at the place of employment.  The court found that striking
4   workers had standing to sue when their employer allegedly failed to give replacement
5   workers written notice of the existing strike when they were hired.  The Ninth Circuit noted
6   that the requisite section of FLCRA was a procedural statute, created to protect workers in the
7   plaintiffs' position.  Accordingly, "[i]nvasion of the right [of notice] was sufficient injury to
8   establish standing in such persons; no other injury was required."  *Id.* at 1337; *see also*
9   *Fernandez v. Brock*, 840 F.2d 622, 629 (9th Cir. 1988) ("the invasion of the procedural rights
10  allegedly created by [certain ERISA] provisions is sufficient to establish the requisite injury in
11  fact" required by Article III).

12        Similarly, Congress imposed certain procedural requirements under FCRA – such as
13  the provision of Furnisher and User Notices and the requirement that consumer reporting
14  agencies assure maximum accuracy in their reports – for the benefit of consumers such as
15  Plaintiff.  Plaintiff has alleged an invasion of these procedural rights, which is sufficient to
16  establish injury in fact.

17        Spokeo cites to *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019 (9th Cir.
18  1983) for the proposition that Plaintiff must allege actual harm in addition to a violation of his
19  statutory rights to demonstrate injury in fact.  In *Gomez*, the court noted that standing to assert
20  statutory rights requires that a plaintiff plead the "Article III minima of injury-in-fact."  *Id.* at
21  1020-21.  Consistent with *Gomez*, Plaintiff does not dispute that he must demonstrate injury
22  in fact to maintain an action against Spokeo.  However, *Gomez* does not address the point that
23  the Ninth Circuit has made clear several times in subsequent decisions: that the "Article III
24  minima of injury-in-fact" is satisfied when a plaintiff asserts a violation of his statutory rights.
25  *See, e.g., Edwards*, 610 F.3d at 517, *Sisley*, 284 Fed. Appx. at 466.  While Plaintiff contends
26  that he does in fact plead actual harm, Plaintiff has sufficiently pled the Article III minimum
27
28

1   of injury in fact by alleging in detail how Spokeo violated his statutory rights under FCRA.

2   Spokeo's suggestion that Plaintiff must demonstrate additional harm is without merit.

3       In sum, Plaintiff's allegations demonstrate that FCRA "prohibited [Spokeo's]

4   conduct;" thus, "Plaintiff has demonstrated an injury sufficient to satisfy Article III."

5   *Edwards*, 610 F.3d at 516-17.

6       ### 3.   Plaintiff Has Alleged that His Injuries are Traceable to Spokeo's Conduct.

7

8       Defendant's claim that Plaintiff's injuries are not "fairly traceable" to Spokeo's

9   conduct is without merit.  With respect to standing conferred by FCRA, Plaintiff alleges that

10  Spokeo willfully violated Plaintiff's statutory rights by disseminating consumer credit

11  information without complying with the procedural safeguards of FCRA.  Spokeo's conduct

12  in violating FCRA, and thus violating Plaintiff's statutory rights, is undoubtedly traceable to

13  Spokeo alone.

14      More generally, in claiming that "Plaintiff has not alleged causation," Spokeo confuses

15  Article III's standing requirements with the distinct – and more stringent – concept of

16  proximate causation.  However, "for purposes of satisfying Article III's causation

17  requirement, we are concerned with something less than the concept of proximate cause."

18  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974, fn. 7 (9th Cir. 2008) (quoting

19  *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006); *see also Bennett v. Spear*, 520 U.S.

20  154, 168-69 (1997) (finding that the defendant "wrongly equates injury 'fairly traceable' to

21  the defendant" with the concept of proximate cause).  While "it does not suffice if the injury

22  complained of is the result of the *independent* action of some third party not before the court,"

23  the traceability requirement does not preclude an action against a defendant who is not the

24  sole or proximate cause of the plaintiff's injury.  *Bennet*, 520 U.S. at 169 (internal citations

25  omitted) (citing *Lujan*, 504 U.S. at 560).

26      Plaintiff expressly alleges that his diminished employment prospects and anxiety,

27  worry and concern were caused by Spokeo's creation, display, and marketing of inaccurate

28

consumer reporting information.  (FAC ¶ 35.)  Moreover, Plaintiff demonstrates that Spokeo marketed its reports to employers and HR professionals, encouraging them to conduct research through Spokeo about potential hires such as Plaintiff.  (*Id.* ¶¶ 26-29.)  These allegations, which are presumed to "embrace those specific facts that are necessary to support the claim," demonstrate a causal connection between Plaintiff's injury and Spokeo's unlawful conduct.  *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 999 (N.D. Cal. 2006) (quoting *Lujan*, 504 U.S. at 561).  Spokeo's speculative and unsupported claim that other forces may have contributed to Plaintiff's injuries does not absolve Spokeo from its unlawful conduct.

### 4.    Plaintiff's Injuries Will be Redressed by a Favorable Decision Against Spokeo.

Spokeo's argument that Plaintiff cannot establish redressability is without merit primarily because Plaintiff seeks actual and statutory damages from Defendant.  As a result, Plaintiff's injuries can be redressed by a favorable judgment for money damages.  *See, e.g., Doe v. Unocal Corp.*, 67 F. Supp. 2d 1140, 1145, n.3 (C.D. Cal. 1999) (finding that "any question regarding the redressability of equitable relief is cured by plaintiff's request for money damages").  In addition, Spokeo claims that the inaccurate data regarding Plaintiff would still be publicly available even if Spokeo removed Plaintiff's information from Spokeo's website.  However, this argument fails because Plaintiff's claims are based on the original content created by Spokeo, which Plaintiff alleges is not available from anyone other than Defendant.  (FAC ¶¶ 17-19.)  Accordingly, a favorable decision will redress Plaintiff's harm.

### B.    Plaintiff States a Claim Under FCRA Because Spokeo is a Consumer Reporting Agency

Defendant contends that FCRA does not apply to its conduct because Spokeo is not a "consumer reporting agency," and the reports that it provides are not "consumer reports."  But Spokeo's arguments fail because Plaintiff alleges that Spokeo collects, evaluates and analyzes consumer credit information and markets it to third parties for a fee, conduct that brings

1  Spokeo squarely within FCRA's statutory definition of a consumer reporting agency.

2  Moreover, Spokeo furnishes "consumer reports" because the information that Spokeo

3  provides in its reports bears on each and every characteristic that FCRA identifies in its

4  definition of that term.  Accordingly, Plaintiff's FCRA claim should not be dismissed.

5                    **1.    Spokeo is a Consumer Reporting Agency.**

6          Spokeo asserts that it is not a consumer reporting agency under FCRA because it does

7  not "regularly engage" in providing consumer credit information "for the purpose of

8  furnishing consumer reports."  In making this argument, however, Spokeo mischaracterizes

9  Plaintiff's well-pleaded allegations and attempts to diminish its own role in creating original

10  content in Spokeo's reports.

11          Under FCRA, a "consumer reporting agency" is defined as:

12  Any person which, for monetary fees, dues, or on a cooperative nonprofit basis,
13  regularly engages in whole or in part in the practice of assembling or evaluating
    consumer credit information or other information on consumers for the purpose of
    furnishing consumer reports to third parties, and which uses any means or facility of
14  interstate commerce for the purpose of preparing or furnishing consumer reports.

15  15 U.S.C. § 1681a(f).

16          Defendant falls within the scope of FCRA because Spokeo collects volumes of

17  information from unnamed public and private sources that it then transforms, converts and

18  draws conclusions from pertaining to a consumer's wealth, credit, lifestyle, home, education,

19  political affiliation, and other personal characteristics.  (FAC ¶¶ 18-19.)  Spokeo collects and

20  creates this information for the purpose of furnishing it to paid subscribers who regularly

21  provide monetary fees in exchange for Spokeo's reports, which contain data and evaluations

22  regarding consumers' economic wealth and creditworthiness.  (*Id.* ¶¶ 26, 29.)

23          In arguing that it is not a consumer reporting agency, Spokeo ignores two core aspects

24  of its own business.  First, during the operative time period for Plaintiff's Complaint,

25  Defendant's reports included a "Wealth" section that provided a consumer's "Credit

26  Estimate" and "Wealth Level" and included information relating to a consumer's "Mortgage

27

28

Value," "Estimated Income," and "Investments." Such information is undoubtedly "consumer credit information" as identified by FCRA.

Second, Spokeo has regularly advertised that it "is a great tool to learn more about prospective employers and employees" for HR recruiters and businesses to evaluate "potential hires."[5]  (FAC ¶ 26-29); *see also* CDT Complaint (Exhibit G to the FAC), ¶¶ 13-15.  Among Spokeo's advertising efforts was a large banner on its website stating: "Want to see your candidates' profiles on MySpace and LinkedIn?  23% of recruiters already research social networks.  Spokeo goes a step beyond and automates candidate research across 43 social networks.  Try Business Edition." *Id.*  Spokeo's advertisements were geared towards securing paid users who would then have access to Spokeo's full presentation of consumer data.

Citing *McCready v. eBay, Inc.*, 543 F.3d 882, 889 (7th Cir. 2006), Spokeo argues that it is "far more similar to companies that courts have found are *not* consumer reporting agencies under FCRA." (Spokeo Mem. at 17.)  But Spokeo's reliance on *McCready* is misplaced because the consumer reports produced by Spokeo bear no resemblance to the "feedback profiles" at issue in that case.  In *McCready*, the court found that eBay does not "exert any control over what is said in the Forum, which contains mere opinions of people not in eBay's employ." *Id.*  By contrast, Spokeo creates and publishes conclusions and factual assertions about individuals pertaining to a consumer's wealth level, creditworthiness, and other economic information.  (FAC ¶¶ 2, 16-17.)  By creating the content itself, and not simply hosting a forum in which the content is posted or discussed, Spokeo's conduct goes far beyond the passive hosting of customer forums.  Therefore, *McCready* does little more than illuminate why Spokeo, unlike eBay, is a consumer reporting agency.

---

[5] Spokeo improperly attempts to introduce extrinsic facts regarding the timing of Spokeo's marketing to HR professionals and employers.  For example, Spokeo's assertion that "the alleged marketing materials Plaintiff attaches as Exhibit F to the FAC were for a dramatically different version of spokeo.com" is inconsistent with the express allegations of the complaint.  This assertion, and any similar inconsistent assertions about Spokeo's advertising, should be disregarded.

1    Ironically, Spokeo cites language from a recent opinion in which the Ninth Circuit

2    cautioned courts to "be acutely aware of excessive rigidity when applying the law in the

3    Internet context; emerging technologies require a flexible approach." *Network Automation,*

4    *Inc. v. Advanced Systems Concepts, Inc.*, No. 10-55840, 2011 WL 815806, at *1 (9th Cir.

5    March 8, 2011). Yet Spokeo asks this Court to take a prohibitively rigid approach, arguing

6    that only major credit reporting agencies like Trans Union, Equifax, and Experian can fall

7    within the FCRA's definition of a consumer reporting agency. As Spokeo concedes,

8    application of FCRA to emerging technology companies requires a flexible approach, as such

9    companies can more easily collect and quickly disseminate consumer credit information to

10    paid subscribers. In distributing reports that provide much of the same information as

11    traditional credit reporting agencies, Spokeo functioned as a "consumer reporting agency" as

12    defined by FCRA.

13        **2.    Spokeo's reports meet the statutory definition of a "Consumer
          Report."**

14

15    Spokeo argues that it does not furnish "consumer reports" because Spokeo disclaims

16    the use of its reports for FCRA purposes, and its reports purportedly do not include original

17    content sufficient to meet FCRA's statutory definition of "consumer report." Spokeo's

18    arguments fail because the product that Spokeo sells fits squarely within FCRA's definition of

19    a "consumer report," and Spokeo cannot effectively avoid federal law simply through the use

20    of a sweeping disclaimer.

21    FCRA defines a "consumer report as:

22        any written, oral, or other communication of any information by a consumer
          reporting agency bearing on a consumer's [1] credit worthiness, [2] credit standing,
23        [3] credit capacity, [4] character, [5] general reputation, [6] personal
          characteristics, or [7] mode of living which is used or expected to be used or
24        collected in whole or in part for the purpose of serving as a factor in establishing
          the consumer's eligibility for-- (A) credit or insurance to be used primarily for
25        personal, family, or household purposes; (B) employment purposes; or (C) any
          other purpose authorized under section 1681b of this title.
26

27

28

15 U.S.C. § 1681a(d).  The plain language of section 1681(d) makes clear that a report will be construed as a "consumer report" if the business providing the information "expects the user to use the report for a purpose permissible under the FCRA, without regard to the ultimate purpose to which the report is actually put." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273-74 (9th Cir. 1990).  As affirmed by the Ninth Circuit, when an entity

> disseminates information bearing on any of the seven characteristics of a consumer report listed in § 1681a(d) to a third party, and the agency knows or expects that it will be used 'in connection with a business transaction involving the consumer,' then that information is a 'consumer report' and its originator is a 'consumer reporting agency.'

*Greenway v. Info. Dynamics, Ltd.*, 399 F. Supp. 1092, 1095 (D. Ariz. 1974) *aff'd*, 524 F.2d 1145 (9th Cir. 1975).  As demonstrated in the chart below, the information widely disseminated by Spokeo bears on all seven factors listed in § 1681a(d):

| Characteristics Listed in §1681a(d) | Category of Information Provided by Spokeo |
|---|---|
| Credit worthiness, credit capacity, mode of living | Credit Estimate, Wealth, Economic Health, Investments, Mortgage Value, Home Value, Median Income, Occupation |
| Character, general reputation, personal characteristics, mode of living | Lifestyle, Interests, Relationship, Hobbies, Education, Neighborhood, Household Amenities |
| Character, general reputation | Ethnicity, Religion, Political Party |

Not only do Spokeo's reports contain information traditionally associated with a "consumer report" under FCRA, but Plaintiff's allegations firmly establish that Spokeo expected users of its reports "to use the report for a purpose permissible under FCRA." *Comeaux*, 915 F.2d at 1273-74.  As alleged in the FAC, Spokeo marketed its reports to employers for the purpose of evaluating potential hires, which is a specifically enumerated

1   purpose under FCRA.  (FAC ¶¶ 27-29.)  The combination of those two actions undercuts any

2   basis Defendant has to claim that it did not intend to provide its services for FCRA purposes,

3   let alone that it did not expect it to be used for such purposes.  *Comeaux*, 915 F.2d at 1273-74.

4   Therefore, Spokeo's reports constitute "consumer reports" as defined by FCRA.

5   ### 3.      Spokeo is not a search engine or a community forum.

6          Spokeo repeatedly identifies itself as a "search engine."  Yet, the manner in which

7   Spokeo presents information about consumers specifically sets it apart from search engines

8   such as Google or Yahoo.  Most importantly, when a consumer searches for himself or

9   herself on a search engine like Google, Google merely presents relevant results, and does not

10  draw conclusions from the data that it returns.[6]  Rather, it simply displays a list of responsive

11  websites to the user's search query without any editorial comment or additional content.  By

12  contrast, Spokeo provides a variety of data categories and proceeds to draw conclusions,

13  make predictions, and make factual assertions about a consumer's supposed wealth, credit

14  worthiness, and lifestyle – conclusions that *do not appear* in the public or private data sources

15  that Spokeo draws from.  (FAC ¶¶ 17-19.)

16  ### 4.      Spokeo Cannot Disclaim its Obligations Under FCRA.

17         Spokeo argues that it can avoid its responsibilities as a consumer reporting agency

18  because it precludes the use of its reports for FCRA purposes and disclaims the accuracy of

19  data appearing on its website.  (MTD at 14-15.)  But, as alleged throughout the FAC and

20  discussed herein, Spokeo rendered its disclaimers irrelevant by taking explicit steps to market

21  its consumer reports to employers for precisely the purposes listed in its disclaimer (*e.g.*

22  employment).  (FAC ¶¶ 26-29.)  More generally, Spokeo provides no authority for the

23

---

24  [6] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 711 (9th Cir. 2007) (noting that

25              Google operates a search engine, a software rogram that automatically acess thousands of
            websites (collections of webpages) and indexes them within a database stored on Google's
26          computers.  When a Google user accesses the Google website and types in a search query,
            Google's software searches its database for websites responsive to that search query.
27          Google then sends relevant information form its index of websites to the user's computer.)

28

---

1    proposition that a consumer reporting agency can evade the requirements of federal law by

2    simply placing a general, boilerplate disclaimer on some of its web pages and terms of use.

3    Spokeo's logic would lead to untenable results, as TransUnion or Experian, undoubtedly

4    consumer reporting agencies under FCRA, could simply place similar language on their

5    websites and magically shed their federally-imposed duties.  Spokeo's classification as a

6    consumer reporting agency cannot be based simply on its own self-description.  Rather,

7    FCRA determines whether a company is a consumer reporting agency, and Spokeo's conduct

8    causes it to fall squarely within the statute.

9         Spokeo's suggestion that such disclaimers were "dispositive" in *Mende v. Dun &*

10   *Bradstreet, Inc.*, is without merit.  670 F.2d 129 (9th Cir. 1982).  In *Mende*, the Ninth Circuit

11   determined that the defendant was not a consumer reporting agency because the credit

12   information that it provided in its reports concerned solely "business entities or individuals

13   engaged in business in their business capacities." *Id.* at 133.  The court's determination was

14   based on evidence, submitted at the summary judgment stage, that demonstrated that the

15   reports at issue *actually provided* credit information related solely to business entities. *Id.* at

16   133-34.  While the defendant had entered into agreements with customers providing that the

17   customers would only use the subject reports as a basis for credit to businesses in their

18   capacity as such, the agreements alone were not deemed sufficient to avoid the California

19   Credit Reporting Agencies Act.[7]  In *Mende*, like here, it was the actual content of the

20   defendant's reports that determined whether they were "consumer reports" under FCRA.

21        Accordingly, Spokeo cannot effectively disclaim its FCRA responsibilities because the

22   content of its reports establish that they are "consumer reports" under the statute.

23

24   [7] Spokeo's suggestion that *Mende* supports an intent requirement similarly misconstrues the Ninth
25   Circuit's holding.  The court stated, in *dicta*, that "we do not believe that the mere fact that a report
     could be used as a consumer report is enough to make it one.  More is required; however, we
26   reserve the question of just what additional showing is required until a case properly presents the
     issue."  *Mende*, 670 F.2d at 133.  The court's ruling therefore did not require a showing of intention
27   as suggested by Spokeo.

28

### C. Spokeo is Not Immune Under the Communications Decency Act Because it is a Content Provider, Not a Service Provider.

Spokeo argues that its activities are immune from liability under the Communications Decency Act ("CDA").  However, Spokeo's argument fails for two reasons: 1) CDA immunity is an affirmative defense that should not be used as a basis for dismissal under Rule 12(b)(6); and 2) Spokeo is an information content provider to which CDA immunity is unavailable.

### 1. CDA Immunity is an Affirmative Defense That Should Not be Considered at the Pleading Stage.

At the outset, a claim of immunity under § 230 of the CDA is an affirmative defense. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1109 (9th Cir. 2009).  At the pleading stage, a court may consider an affirmative defense such as CDA § 230 immunity "only if [the affirmative defense] raises no disputed issues of fact" because "a court may look only at the face of the complaint to decide a motion to dismiss." *Wyatt v. Terhune*, 280 F.3d 1238, 1245 (9th Cir. 2002).  Here, Plaintiff explicitly alleges that Spokeo analyzes the consumer data that it collects from third parties, makes judgments, and creates original content based on those judgments bearing on a consumer's financial and economic status.  (FAC ¶¶ 17-19.)  To the extent that Spokeo argues that it does not develop the objectionable content within its reports, Spokeo's purported CDA § 230 affirmative defense raises disputed issues of fact and should not form the basis for dismissal under Rule 12(b)(6).

### 2. Spokeo is an Information Content Provider.

Spokeo's assertion of CDA immunity fares no better on the merits.  Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created solely by third parties: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c).  As Spokeo must concede, the grant of immunity applies only if the interactive computer service provider is not also an "information content provider," which is defined as an entity that is "responsible, in whole or in part, for the

1   creation or development of" content.  47 U.S.C. § 230(f)(3); *see Fair Hous. Council of San*

2   *Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1162-64 (9th Cir. 2008) (en banc).

3          Spokeo contends that it is not an information content provider because it "simply

4   reorganize[es] information it obtains from other content providers."  (Spokeo Mem. at 20.)

5   Spokeo's argument is inconsistent with Plaintiff's allegations and grossly understates

6   Spokeo's role in creating original content within its reports.  Plaintiff alleges that Spokeo goes

7   far beyond "augmenting" the data that it retrieves; rather, Spokeo materially contributes

8   content in the form consumer credit information.  (FAC ¶¶ 3, 12-13, 17-19.)

9          In particular, Plaintiff alleges that Spokeo's software analyzes data about consumers,

10  draws conclusions, and then creates original content bearing on consumers' financial well-

11  being and lifestyle choices.  Most notably, Spokeo creates and presents charts and graphics

12  depicting a consumer's "Credit Estimate" and "Wealth" level, which are not available from

13  third party sources.  (*Id.* ¶ 18.)  Spokeo also creates a unique list of descriptors based on its

14  analysis of the collected data, such as "seeks opportunity," "is self-driven," and "cares about a

15  healthy living," among others.  (*Id.* ¶ 17.)  In short, Defendant develops original content based

16  on information obtained from a variety of sources and posts it online, making it both "visible"

17  and for sale.  (*Id.* ¶¶ 3, 12-13, 17-19.)  *See Roommates.com*, 521 F.3d at 1172 ("Providing

18  immunity every time a website uses data initially obtained from third parties would eviscerate

19  the exception to section 230 for 'develop[ing] unlawful content 'in whole or in part.'").

20         Considering similar facts, the Tenth Circuit determined that the defendant was an

21  information content provider and thus not immune from liability under the CDA in *FTC v.*

22  *Accusearch*, 570 F.3d 1187, 1200 (10th Cir. 2009).  In *Accusearch*, the defendant's website

23  allowed a consumer to search "information generally contained in government records, such

24  as 'court dockets,' 'sex offender records,' and 'Tax . . . Liens.' . . . [and other] intimate

25  personal information, such as 'Romantic Preferences,' 'Personality traits,' and 'Rumors.'" *Id.*

26  at 1191.  The court examined the term "develop," finding that the "dictionary definitions for

27  develop correspondingly revolve around the act of drawing something out, making it

28

'visible,' 'active,' or usable.'" *Id.* at 1198.  The court determined that the defendant was responsible for the development of the information appearing on its website because it "knowingly sought to transform virtually unknown information into a publicly available commodity." *Id.* at 1999.  In much the same way, Spokeo develops the information that it pulls from third parties and transforms it into readily visible and highly usable formats that allow paid subscribers to assess a consumer's wealth, character, reputation, and mode of living, among other things.

The content created by Spokeo goes far beyond that which was at issue in the cases cited by Defendant.  For example, in *Carafano v. Metrosplash.com, Inc.*, a dating website had CDA immunity from liability for information posted on an individual's online profile because the "selection of the content [of the profile] was left exclusively to the user" who created the profile.  339 F.3d 1119, 1124 (9th Cir. 2003).  Similarly, in *Goddard v. Google, Inc.*, defendant Google allowed advertisers to create "adwords" that caused allegedly fraudulent advertisements to be displayed in response to user search queries.  640 F. Supp. 2d 1193 (N.D. Cal. 2009).  The court found that CDA immunity was appropriate because Google's Keyword Tool was a "neutral tool," and the selection of content "is left exclusively to the user" – both the advertiser selecting appropriate keywords, and the user running a particular search query.  *Id.* at 1197.

Here, because Defendant fails to identify all the sources of its information, Spokeo cannot even attempt to point to any third party who could provide similar organized credit or wealth information.  Therefore, unlike *Roommates.com*, 521 F.3d at 1161 (potential renters provided information), *Accusearch Inc.*, 570 F.3d at 1191 (third-party researchers provided information), or *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 983 (10th Cir. 2000) (third-party stock quote company provided information), Spokeo cannot identify the origin or basis for displaying sensitive information and conclusions about individual consumers' financial health.  This information, as presented, *is its own design and creation*,

based on its own evaluation of consumer data.  Therefore, Spokeo is an information content provider and cannot establish immunity under the CDA.

### D.      Plaintiff States a Claim Under the Unfair Competition Law.

The scope of the UCL is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law."  *Cal-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *see also Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2010 WL 3910169, at *7 (N.D. Cal. Oct. 5, 2010) (the UCL's standard for wrongful business conduct is 'intentionally broad,' allowing courts 'maximum discretion to prohibit new schemes of fraud.'").  Plaintiff has alleged that Spokeo's provision of consumer reports constitutes an unlawful and unfair business practice under the UCL.

Spokeo counters that Plaintiff lacks standing to assert a claim under the UCL and fails to state a claim solely because Plaintiff does not state a claim under FCRA.  As explained below, both arguments are without merit.

### 1.      Plaintiff has standing under the UCL because he has alleged that he suffered economic injury.

Spokeo claims that Plaintiff lacks standing to sue under the UCL because he fails to allege that he has lost money or property as a result of Spokeo's conduct.  A plaintiff has standing to assert a UCL claim if the complaint alleges (1) a loss of money or property, *i.e.*, some form of economic injury, and (2) injury in fact.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310; 120 Cal. Rptr. 3d 741, 749 (2011).  "There are innumerable ways in which economic injury from unfair competition may be shown."  *Id.* at 751.

Here, Plaintiff alleges that Spokeo disseminated and sold his financial and personal information and marketed it to HR professionals and employers, thereby causing actual harm to Plaintiff's employment prospects.  (FAC ¶ 35.)  Plaintiff alleges he remains unemployed, and has suffered economic injury in the form of lost income during his period of unemployment.  (*Id.* ¶ 36.)  At the pleading stage, these allegations are more than sufficient to demonstrate economic injury for the purpose of UCL standing.  *See Warth*, 422 U.S. at 500

1   ("[f]or purposes of ruling on a motion to dismiss for want of standing" the court "must accept

2   as true all material allegations of the complaint").

3          **2.     Plaintiff has alleged that Spokeo acted "Unlawfully" under the
              UCL.**

4

5          Spokeo argues that Plaintiff's UCL claim fails because, purportedly, Plaintiff has not

6   sufficiently stated a claim under FCRA.  However, as demonstrated above and throughout the

7   Complaint, Spokeo is a credit reporting agency and issues credit reports through its website.

8   As alleged, it has violated FCRA by failing to make all the required disclosures ensuring the

9   accuracy of the financial and personal information that it disseminates and sells.  Accordingly,

10  Plaintiff has sufficiently stated a claim under FCRA, and this violation properly serves as the

11  predicate offense  for Plaintiff's claim under the UCL "unlawful" prong.  *See Munson v. Del*

12  *Taco, Inc.*, 46 Cal. 4th 661, 676 (2009) ("Violations of federal as well as state and local law

13  may serve as the predicate for an unlawful practice claim under section 17200.").

14         **3.     Plaintiff has stated a claim under the "Unfair" prong of the UCL.**

15         Spokeo asserts an identical challenge to Plaintiff's claim under "unfair" prong of the

16  UCL, arguing that "Plaintiff's UCL claims are entirely dependent on the alleged FCRA

17  violations."  However, the reverse is true: Plaintiff's UCL "unfair" claim is entirely

18  independent of Spokeo's FCRA violations, and Defendant's argument must fail.

19         In the context of the UCL, a business practice is "unfair" if the following factors are

20  present: (1) substantial consumer injury; (2) the injury is not outweighed by any

21  countervailing benefits to consumers or competition; and (3) the injury could not have been

22  reasonably avoided by the consumer.  *Camacho v. Auto Club of So. Cal.*, 142 Cal. App. 4th

23  1394, 1403 (2006); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035,

24  1044 (9th Cir. 2010) ("Unfair simply means any practice whose harm to the victim outweighs

25  its benefits").

26         Plaintiff has alleged that Spokeo caused him actual harm by disseminating inaccurate

27  information relating to Plaintiff's economic health and credit worthiness in violation of

28

FCRA.  (FAC ¶¶ 31-35.)  Spokeo marketed its consumer reports to employers as a way to evaluate potential hires, further exasperating the harm to Plaintiff and other Class Members.  (*Id.* ¶¶ 26-29.)  Plaintiffs have not alleged – and Spokeo has failed to identify – any countervailing benefit that flows from the provision of inaccurate economic and consumer data to potential employers and other third parties.  Finally, Plaintiff could not have reasonably avoided his injuries because Plaintiff was initially not aware of Spokeo's unlawful dissemination and because Spokeo places substantial barriers preventing consumers from deleting information from Spokeo's web database.  (*Id.* ¶ 23.)  Accordingly, Plaintiff has properly pled a UCL "unfairness" claim.

## V.     CONCLUSION

Based on the foregoing, Plaintiff Thomas Robins respectfully requests that the Court deny Spokeo's Motion to Dismiss in its entirety.

Dated:  April 18, 2011              EDELSON MCGUIRE, LLC


                                             s/ Michael J. Aschenbrener
                                            MICHAEL J. ASCHENBRENER

1

## <u>CERTIFICATE OF SERVICE</u>

2

        I, Sean P. Reis, an attorney, certify that on April 18, 2011, I served the above and

3

foregoing ***Plaintiff's Opposition to Defendant's Motion to Dismiss***, by causing true and

accurate copies of such paper to be filed and transmitted to counsel of record via the Court's

4

CM/ECF electronic filing system.

5

6

7

                                        s/ Sean P. Reis_____

                                        Sean P. Reis

8

                                        EDELSON MCGUIRE LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28