# Exhibit B

**No.**

# In the Supreme Court of the United States

---

SPOKEO, INC.,

*Petitioner,*

v.

THOMAS ROBINS, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,

*Respondent.*

---

**On Petition for a Writ of Certiorari to
the United States Court of Appeals
for the Ninth Circuit**

---

**PETITION FOR A WRIT OF CERTIORARI**

---

JOHN NADOLENCO
  *Mayer Brown LLP*
  *350 South Grand Ave.*
  *25th Floor*
  *Los Angeles, CA 90071*
  *(213) 229-5173*

ANDREW J. PINCUS
  *Counsel of Record*
ARCHIS A. PARASHARAMI
STEPHEN LILLEY
  *Mayer Brown LLP*
  *1999 K Street*
  *Washington, DC 20006*
  *(202) 263-3000*
  *apincus@mayerbrown.com*

DONALD M. FALK
  *Mayer Brown LLP*
  *Two Palo Alto Square*
  *3000 El Camino Real*
  *Palo Alto, CA 94306*
  *(650) 331-2000*

*Counsel for Petitioner*

5

i

## QUESTION PRESENTED

Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute.

ii

## RULE 29.6 STATEMENT

Petitioner Spokeo, Inc., has no parent company. No publicly held company owns 10% or more of Spokeo.

iii

## TABLE OF CONTENTS

**Page**

Question Presented ...................................................... i

Rule 29.6 Statement.................................................. ii

Table of Authorities ....................................................v

Opinions Below..........................................................1

Jurisdiction...............................................................1

Constitutional and Statutory Provisions
Involved .................................................................1

Statement .................................................................2

    A.   The Statutory Scheme....................................3

    B.   Factual Background and District Court
        Proceedings....................................................3

    C.   The Court of Appeals' Decision. .....................5

Reasons for Granting the Petition...........................7

    A.   The Courts of Appeals Are Divided Over
        Whether An Injury-In-Law Satisfies
        Article III's Injury-In-Fact Requirement........9

    B.   Injury-In-Law Class Actions Under
        FCRA Seeking Huge Damages Are
        Being Filed With Increasing Frequency........12

    C.   A Decision In This Case Would Resolve
        Similar Issues Presented Under A Wide
        Range Of Federal Statutes............................16

    D.   The Ninth Circuit's Decision Is
        Contrary To This Court's Standing
        Jurisprudence ................................................19

    E.   This Case Cleanly Presents The Injury-
        In-Law Question ...........................................23

Conclusion ..............................................................25

8

iv

**TABLE OF CONTENTS—continued**

**Page**

Appendix A:  Opinion of the United States
Court of Appeals for the Ninth
Circuit, dated Feb. 4, 2014 ...............1a

Appendix B:  Order of the United States
District Court for the Central
District of California, dated
January 27, 2011 ............................11a

Appendix C:  Order of the United States
District Court for the Central
District of California, dated May
11, 2011.............................................15a

Appendix D:  Order of the United States
District Court for the Central
District of California, dated
September 19, 2011.........................23a

Appendix E:  Fair Credit Reporting Act,
§ 15 U.S.C. § 1681 *et seq.* ...............25a

9

v

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen* v. *Wright*, 468 U.S. 737 (1984) ........................ 21

*Almendarez-Torres* v. *United States*,
    523 U.S. 224 (1998) .............................................. 22

*Alston* v. *Countrywide Financial Corp.*,
    585 F.3d 753 (3d Cir. 2009) ............................11, 17

*American Express Co.* v. *Italian Colors Restau-
rant*, 133 S. Ct. 2304 (2013) ................................ 14

*Arizona Christian School Tuition Organization*
    v. *Winn*, 131 S. Ct. 1436 (2011) ..................... 20, 22

*Armes* v. *Sogro, Inc.*,
    932 F. Supp. 2d 931 (E.D. Wis. 2013) .................. 9

*AT&T Mobility LLC* v. *Concepcion*,
    131 S. Ct. 1740 (2011) ......................................... 15

*Avery* v. *Werner Enterprises, Inc.*,
    No. 14-cv-330 (W.D. Mo. Apr. 9, 2014) ............... 13

*Bateman* v. *American Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) .............................. 15

*Beaudry* v. *TeleCheck Services, Inc.*,
    579 F.3d 702 (6th Cir. 2009) .....................9, 11, 12

*Blue Chip Stamps* v. *Manor Drug Stores*,
    421 U.S. 723 (1975) ............................................ 15

*Brittingham* v. *Cerasimo, Inc.*,
    621 F. Supp. 2d 646 (N.D. Ind. 2009) .................. 9

*Broberg* v. *Experian Information Solutions,
Inc.*, No. 14-cv-49 (D. Minn. Jan. 6, 2014) ......... 13

*Brown* v. *Delhaize America, LLC*,
    No. 14-cv-195 (M.D.N.C Mar. 7, 2014) ............... 13

vi

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Carsten* v. *University of Miami*,
 No. 14-cv-20497 (S.D. Fla. Feb. 10, 2014) .......... 13

*Carter* v. *Welles-Bowen Realty, Inc.*,
 553 F.3d 979 (6th Cir. 2009) ......................... 11, 17

*Chapman* v. *Wagener Equities, Inc.*,
 ___ F.3d ___, No. 14-8004,
 2014 WL 1272786 (7th Cir. Mar. 31, 2014) .... 9, 16

*Charvat* v. *Mutual First Federal Credit Union*,
 725 F.3d 819 (8th Cir. 2013), cert. denied,
 134 S. Ct. 1515 (2014) ........................................ 12

*Clapper* v. *Amnesty International USA*,
 133 S. Ct. 1138 (2013) ........................................ 24

*C.M.D.* v. *Facebook, Inc.*,
 No. C 12-1216, 2014 WL 1266291
 (N.D. Cal. Mar. 26, 2014) ................................... 19

*Corliss* v. *Providence Health & Services*,
 No. 14-cv-119 (D. Or. Jan. 23, 2014) .................. 13

*David* v. *Alphin*, 704 F.3d 327 (4th Cir. 2013) ... 10, 17

*Deacon* v. *Pandora Media, Inc.*,
 901 F. Supp. 2d 1166 (N.D. Cal. 2012) .............. 19

*Dell'Olio* v. *HCA HealthONE, LLC*,
 No. 14-cv-885 (D. Colo. Mar. 26, 2014) .............. 13

*DeMando* v. *Morris*,
 206 F.3d 1300 (9th Cir. 2000) ............................ 16

*Doe* v. *Chao*, 540 U.S. 614 (2004) ............................ 23

*Doe* v. *National Board of Medical Examiners*,
 199 F.3d 146 (3d Cir. 1999) ........................... 11, 18

11

vii

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*Dowell* v. *Wells Fargo Bank, NA*,
  517 F.3d 1024 (8th Cir. 2008) ............................ 23

*Edwards* v. *First American Corp.*,
  610 F.3d 514 (9th Cir. 2010), cert. granted,
  131 S. Ct. 3022 (2011), cert. dismissed as
  improvidently granted,
  132 S. Ct. 2536 (2012) .........................6, 10, 11, 18

*Ellis* v. *Swift Transp. Co. of Ariz., LLC*,
  No. 13-cv-00473, Dkt. 36-1
  (E.D. Va. Apr. 21, 2014) ........................................ 14

*Fair Housing Council* v. *Main Line Times*,
  141 F.3d 439 (3d Cir. 1998) ............................11, 18

*First American Financial Corp.* v. *Edwards*,
  132 S. Ct. 2536 (2012) ............................... 2, 23, 24

*Ford* v. *CEC Entertainment, Inc.*,
  No. 14-cv-677 (S.D. Cal. Mar. 24, 2014) ............. 13

*Friends of the Earth, Inc.* v. *Laidlaw Envtl.*
  *Servs, Inc.*, 528 U.S. 167 (2000) ........................... 7

*Gezahegne* v. *Whole Foods Market California,*
  *Inc.*, No. 14-cv-592 (N.D. Cal. Feb. 7, 2014)....... 13

*Gladstone, Realtors* v. *Village of Bellwood*,
  441 U.S. 91 (1979) ......................................... 19, 20

*Gonzalez* v. *Harris Ranch*,
  No. 14-cv-38 (E.D. Cal. Jan. 10, 2014) .............. 13

*Haber* v. *Bank of America, N.A.*,
  No. 14-cv-169 (E.D. Pa. Jan. 13, 2014).............. 13

viii

## TABLE OF AUTHORITIES—continued

Page(s)

*Harris* v. *comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ........................... 19

*Hathaway* v. *Whole Foods Market California,
    Inc.*, No. 14-cv-663
    (S.D. Cal. Mar. 21, 2014).................................... 13

*Henderson* v. *First Advantage Background
    Services Corp.*, No. 14-cv-221
    (E.D. Va. Mar. 28, 2014)...................................... 13

*Henderson* v. *HR Plus*,
    No. 14-cv-82 (E.D. Va. Feb. 6, 2014)................... 13

*Henderson* v. *Wal-Mart Stores*,
    No. 14-cv-208 (E.D. Va. Mar. 24, 2014) .............. 13

*In re Hulu Privacy Litig.*,
    No C 11-03764, 2013 WL 6773794
    (N.D. Cal. Dec. 20, 2013) .................................... 18

*Joint Stock Soc'y* v. *UDV North America, Inc.*,
    266 F.3d 164 (3d Cir. 2001)...........................11, 17

*Kendall* v. *Employees Retirement Plan of Avon
    Prods.*, 561 F.3d 112 (2d Cir. 2009)............... 10, 17

*Knights* v. *Publix Super Markets, Inc.*,
    No. 14-cv-720 (M.D. Tenn. Mar. 12, 2014) ......... 13

*Linda R.S.* v. *Richard D.*, 410 U.S. 614 (1973)........ 20

*Lozano-Rivera* v. *Universal City Nissan Inc.*,
    No. 14-cv-1010 (C.D. Cal. Feb. 10, 2014) ........... 13

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992)............................. 7, 20, 21, 23

13

ix

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Lunds* v. *Johns Pizza Cafe Ltd.*,
No. 14-cv-63 (D. Minn. Jan. 7, 2014).................. 13

*Manno* v. *Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674 (S.D. Fla. 2013)................. 17

*Manuel* v. *Wells Fargo Bank*,
No. 14-cv-238 (E.D. Va. Apr. 1, 2014) ................ 13

*Murray* v. *GMAC Mortgage Corp.*,
434 F.3d 948 (7th Cir. 2006) .............. 9, 12, 14, 15

*Myers* v. *National Tenant Network, Inc.*,
No. 14-cv-327 (D. Or. Feb. 26, 2014) .................. 13

*Palm Beach Golf Ctr.—Boca, Inc.* v. *Sarris*,
___ F. Supp. 2d ___, No. 12-80178-CIV,
2013 WL 5972173 (S.D. Fla. Oct. 22, 2013) ....... 17

*Patel* v. *Trans Union, LLC*,
No. 14-cv-522 (N.D. Cal. Feb. 4, 2014).............. 13

*Pekelney* v. *Horizon Healthcare Services, Inc.*,
No. 14-cv-584 (D.N.J. Jan. 28, 2014).................. 13

*Plasters* v. *UBS Financial Services, Inc.*,
No. 14-cv-1659 (D.N.J Mar. 14, 2014) ............... 13

*Ragland* v. *Guardsmark, LLC*,
No. 14-cv-693 (S.D. Cal. Mar. 26, 2014) ............ 13

*Raines* v. *Byrd*, 521 U.S. 811 (1997)..................... 8, 19

*Reed* v. *Golf & Tennis Pro Shop, Inc.*,
No. 14-cv-895 (D.N.J. Feb 12, 2014).................. 13

*Reed* v. *Swatch Group (US) Inc.*,
No: 14-cv-896 (D.N.J. Feb. 12, 2014).................. 13

14

x

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Roberson* v. *Laborchex Companies, Inc.*,
  No. 14-cv-273 (M.D. Ala. Apr. 11, 2014) ............ 13

*Robey* v. *Shapiro Marianos & Cejda, L.L.C.*,
  434 F.3d 1208 (10th Cir. 2006) ........................... 16

*Robins* v. *Spokeo, Inc.*, 742 F.3d 409 (2014)............... 1

*Robins* v. *Spokeo, Inc.*,
  CV10-05306, 2011 WL 597867
  (C.D. Cal. Jan. 27, 2011) ..................................... 1

*Robins* v. *Spokeo, Inc.*,
  CV10-05306, 2011 WL 1793334
  (C.D. Cal. May 11, 2011) ..................................... 1

*Robins* v. *Spokeo, Inc.*,
  CV10-05306, 2011 WL 11562151
  (C.D. Cal. Sept. 19, 2011)..................................... 1

*Scott* v. *KKW Trucking, Inc.*,
  No. 14-cv-494 (D. Or. Mar. 25, 2014).................. 13

*Short* v. *Equifax Information Services LLC*,
  No. 14-cv-471 (D. Or. Mar. 24, 2014).................. 13

*Sierra Club* v. *Morton*, 405 U.S. 727 (1972) ........... 21

*Smith* v. *Microsoft Corp.*,
  No. 11-cv-1958, 2012 WL 2975712
  (S.D. Cal. July 20, 2012) ..................................... 17

*Steed* v. *Equifax Information Services, LLC*,
  No. 14-cv-437 (N.D. Ga. Feb. 14, 2014).............. 13

*Sterk* v. *Best Buy Stores, L.P.*,
  No. 11 C 1894, 2012 WL 5197901
  (N.D. Ill. Oct. 27, 2012)....................................... 18

15

xi

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Summers* v. *Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................. 20

*US Fax Law Ctr., Inc.* v. *iHire, Inc.*,
    362 F. Supp. 2d 1248 (D. Colo. 2005) ................ 17

*Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*,
    529 U.S. 765 (2000) ............................................. 20

*Wallace* v. *ConAgra*,
    ___ F.3d ___, 2014 WL 1356860
    (8th Cir. Apr. 4, 2014) ......................................... 23

*Warth* v. *Seldin*, 422 U.S. 490 (1975) .................. 8, 20

*Wilson* v. *Glenwood Intermountain Props., Inc.*,
    98 F.3d 590 (10th Cir. 1996) .............................. 18

**CONSTITUTION, STATUTES, AND RULES**

U.S. Const. art. III, § 2 ......................................*passim*

28 U.S.C. § 1254(1) .................................................... 1

28 U.S.C. § 1292(b) .................................................... 5

Americans With Disabilities Act
    42 U.S.C. § 12182(a) .......................................... 18
    42 U.S.C. § 12188 ............................................... 18

Cable Communications Privacy Act
    47 U.S.C. § 551(f)(2) ........................................... 18

Driver's Privacy Protection Act
    18 U.S.C. § 2724(a) ............................................ 18

Electronic Communications Privacy Act
    18 U.S.C. § 2520(c) ............................................. 18

xii

## TABLE OF AUTHORITIES—continued

**Page(s)**

Employee Retirement Income Security Act
   29 U.S.C. § 1104(a)(1)(D) ..................................... 17
   29 U.S.C. § 1132(a)(2) ......................................... 17
Equal Credit Opportunity Act
   15 U.S.C. § 1691e(a) ............................................ 18
Expedited Funds Availability Act
   12 U.S.C. § 4010(a)(2) ......................................... 18
Fair Credit Reporting Act
   15 U.S.C. § 1681, *et seq.* .................................... 1, 3
   15 U.S.C. § 1681b(b)(1) ........................................ 3
   15 U.S.C. § 1681c(g)(1) ........................................ 15
   15 U.S.C. § 1681e(b) ............................................ 3
   15 U.S.C. § 1681e(d) ............................................ 3
   15 U.S.C. § 1681j(a) ............................................ 3
   15 U.S.C. § 1681n(a) ........................................... 23
   15 U.S.C. § 1681n(a)(1) ......................................... 3
   15 U.S.C. § 1681n(a)(2) ......................................... 3
   15 U.S.C. § 1681o(a) ............................................ 3
Fair Debt Collection Practices Act
   15 U.S.C. § 1692f................................................. 16
   15 U.S.C. § 1692k(a)(2)(B) ..................................... 16
Fair Housing Act
   42 U.S.C. § 3604(c) ............................................. 17
   42 U.S.C. § 3613(a)(1)(A) ...................................... 18
Homeowners Protection Act
   12 U.S.C. § 4907(a)(1) ......................................... 18

17

xiii

## TABLE OF AUTHORITIES—continued

**Page(s)**

Lanham Act
    15 U.S.C. § 1125 .................................................. 17
Migrant and Seasonal Agricultural Worker
    Protection Act
    29 U.S.C. § 1854(a) ............................................ 18
    29 U.S.C. § 1854(c) ............................................ 18
Real Estate Settlement Procedures Act
    12 U.S.C. § 2607................................................. 17
    12 U.S.C. § 2607(d)(2) ........................................ 24
Stored Communications Act
    18 U.S.C. § 2707(c) ............................................ 18
Telephone Consumer Protection Act
    47 U.S.C. § 227(b) ............................................ 16
Truth in Lending Act
    15 U.S.C. § 1631................................................. 16
    15 U.S.C. § 1632................................................. 16
    15 U.S.C. § 1640(a)(2)(B) ................................... 16
Video Privacy Protection Act
    18 U.S.C. § 2710(b) ............................................ 18
    18 U.S.C. § 2710(c)(1)........................................ 18
Fed. R. Civ. P. 23(b)(3) ............................................ 14

**MISCELLANEOUS**

David L. Permut & Tamra T. Moore, *Recent
    Developments in Class Actions: The Fair
    Credit Reporting Act*, 61 Bus. Law 931
    (2006) .................................................................. 12

xiv

## TABLE OF AUTHORITIES—continued

**Page(s)**

Hart & Wechsler's The Federal Courts and the
Federal System (Richard H. Fallon Jr. et
al. eds., 6th ed. 2009) .......................................... 21

Jonathan D. Jerison & Bradley A. Marcus, *A
Brief History of the FCRA and the Potential
for New Litigation After Dodd-Frank*, Con-
sumer Fin. Services L. Rep., Apr. 13, 2011 ........ 12

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Spokeo, Inc., respectfully petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Ninth Circuit in this case.

### OPINIONS BELOW

The opinion of the court of appeals (App., *infra*, 1a-10a) is reported at 742 F.3d 409. The order of the district court granting defendant's motion to dismiss plaintiff's complaint (App., *infra¸* 11a-14a) is unreported but is available at 2011 WL 597867. The order of the district court granting in part and denying in part defendant's motion to dismiss plaintiff's first amended complaint (App., *infra¸* 15a-22a) is unreported but is available at 2011 WL 1793334. The order of the district court "correcting prior ruling and finding moot motion for certification," and dismissing the case (App., *infra¸* 23a-24a), is unreported but is available at 2011 WL 11562151.

### JURISDICTION

The judgment of the court of appeals was entered on February 4, 2014. This Court's jurisdiction rests on 28 U.S.C. § 1254(1).

### CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article III, Section 2 of the U.S. Constitution provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under * * * the Laws of the United States * * *."

The pertinent provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, are reproduced at App., *infra*, 25a-28a.

20

2

## STATEMENT

This Court recognized the substantial importance of the question presented here when it granted certiorari in *First American Financial Corp.* v. *Edwards*, No. 10-708. But the Court dismissed the writ of certiorari as improvidently granted, and so did not decide whether a technical violation of a federal statute *ipso facto* satisfies the injury-in-fact requirement for Article III standing in the absence of any allegation of concrete and particularized injury. See *First American Financial Corp.* v. *Edwards*, 132 S. Ct. 2536 (2012) (per curiam).

This case presents the same question in the context of a different, frequently litigated federal statute—the Fair Credit Reporting Act. And this case provides a cleaner vehicle. Unlike in *First American*—where the statutory private action and remedy at issue were predicated on the plaintiff's payment of money to the defendant—no such payment took place here. Instead, in the uncluttered context of this case the Ninth Circuit underscored its view that a mere statutory injury-in-law—standing alone—is sufficient to satisfy the Article III injury-in-fact requirement even when the plaintiff did not sustain *any* tangible harm.

Whether Congress can create Article III standing by authorizing a remedy for a bare statutory violation is a recurring question under the FCRA and a wide variety of other federal laws. The courts of appeals have delivered conflicting answers. Unless this Court steps in, the extent and limits of federal jurisdiction will continue to vary circuit by circuit and case by case. And in those circuits where a harmless statutory violation has been held sufficient to confer

3

standing, class actions presenting huge damages exposure based on harmless conduct will proliferate.

Because this fundamental and unsettled question of Article III jurisdiction has enormous practical significance, this Court's review is plainly warranted.

## A. The Statutory Scheme.

The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, imposes specific obligations on "consumer reporting agencies" with respect to the consumer information they transmit. As pertinent here, the FCRA limits the circumstances in which consumer reporting agencies may provide "consumer reports for employment purposes" (15 U.S.C. § 1681b(b)(1)) and requires such agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports (*id.* § 1681e(b)); to issue notices to providers and users of information (*id.* § 1681e(d)); and to post toll-free telephone numbers to allow consumers to request consumer reports (*id.* § 1681j(a)). See App., *infra*, 4a-5a.

A negligent violation of these requirements "with respect to any consumer" subjects a consumer reporting agency to "actual damages," attorney's fees, and costs. *Id.* § 1681o(a). For a "willful" violation, however, a consumer may choose between "actual damages" and statutory "damages of not less than $100 or not more than $1,000," *id.* § 1681n(a)(1), and also may seek punitive damages. *Id.* § 1681n(a)(2).

## B. Factual Background And District Court Proceedings.

Petitioner Spokeo, Inc., operates a "people search engine"—it aggregates publicly available information regarding individuals from phone books, social networks, marketing surveys, real estate listings, busi-

22

4

ness websites, and other sources into a database that is searchable via the Internet using an individual's name, and displays the results of searches in an easy-to-read format. During the time relevant to this action, the bottom of every search results page stated:

> Spokeo does not verify or evaluate each piece of data, and makes no warranties or guarantees about any of the information offered. Spokeo does not possess or have access to secure or private financial information.

C.A. Supp. Excerpts of Record (ER) 22.

In particular, Spokeo warned its users that "none of the information offered by Spokeo is to be considered for purposes of determining any entity or person's eligibility for credit, insurance, employment, or for any other purposes covered under FCRA." *Ibid.* Additionally, to access the "Wealth" section of search results, users had to agree that "[n]one of the information offered by Spokeo is to be considered for purposes of determining a consumer's eligibility for credit, insurance, employment, or for any other purpose authorized under the FCRA." C.A. Supp. ER 25.

Respondent Thomas Robins instituted a putative class action against Spokeo, alleging that Spokeo is a "consumer reporting agency" that issues "consumer reports" in violation of the FCRA.[1] See App., *infra*, 19a-20a. Robins alleged that the search results associated with his name included inaccurate information indicating that he has more education and professional experience than he actually has, that he

---

[1] Spokeo disputes Robins's claims that it is a "consumer reporting agency" within the meaning of FCRA, and that its search engine results are "consumer reports."

23

5

is married (although in fact he is not), and that he is better situated financially than he really is. App., *infra*, 2a; C.A. ER 40:7 ¶¶ 31-32. He did not allege that he had contacted Spokeo to ask it to correct or remove the search results pertaining to him.

The district court dismissed the complaint with leave to amend, holding that Robins had failed to allege an injury in fact because he had not alleged "any actual or imminent harm." See App., *infra*, 2a. The court paraphrased Robins's allegations as stating "that he has been unsuccessful in seeking employment, and that he is concerned that the inaccuracies in his report will affect his ability to obtain credit, employment, insurance, and the like." *Ibid.* The court stated that allegations of possible future injury do not satisfy Article III standing requirements. *Ibid.*

The amended complaint alleged that the inaccurate information collected in Spokeo's search results had caused actual harm to Robins's "employment prospects." App., *infra*, 2a. Robins's continued unemployment, he alleged, had cost him money and caused "anxiety, stress, concern, and/or worry about his diminished employment prospects." *Ibid.* The district court initially held that Spokeo's "marketing of inaccurate consumer reporting information about" Robins amounted to injury-in-fact. App., *infra*, 3a. After Spokeo sought certification of an interlocutory appeal under 28 U.S.C. § 1292(b), however, the district court reconsidered its views and dismissed the case with prejudice based on the Article III analysis in its original dismissal order. *Ibid.*

## C.  The Court of Appeals' Decision.

The Ninth Circuit reversed, holding that the "creation of a private cause of action to enforce a statutory provision implies that Congress intended

24

6

the enforceable provision to create a statutory right," and that "the violation of a statutory right is usually a sufficient injury in fact to confer standing." App., *infra*, 6a (citing *Edwards* v. *First American Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), cert. granted, 131 S. Ct. 3022 (2011), cert. dismissed as improvidently granted, 132 S. Ct. 2536 (2012)).

Because "the statutory cause of action does not require a showing of actual harm when a plaintiff sues for willful violations," App., *infra*, 6a, the court reasoned, actual harm is unnecessary to establish injury in fact. Instead, the court held that Robins had satisfied the requirements for Article III standing because "he allege[d] that Spokeo violated *his* statutory rights, not just the statutory rights of other people," and because his "personal interests in the handling of his credit information are individualized rather than collective." App., *infra*, 8a. Thus, the court of appeals concluded, "alleged violations of Robins's statutory rights are sufficient to satisfy the injury-in-fact requirement of Article III." *Ibid.*

The court of appeals specifically refused to rest its ruling on the alleged harm to Robins's employment prospects and related anxiety: "[b]ecause we determine that Robins has standing by virtue of the alleged violations of his statutory rights, we do not decide whether [the alleged harms] could be sufficient injuries in fact." App., *infra*, 9a n.3. The court of appeals declined to construe the statutory damages provision as an alternate measure of damages rather than a substitute for injury-in-fact, perceiving no "difficult constitutional questions" to be avoided. App., *infra*, 6a-7a n.2.

The Ninth Circuit recognized that its analysis had the practical effect of turning the three-part test

25

7

for Article III standing into a single-factor inquiry that was satisfied by the availability of a statutory remedy. *See* App., *infra,* 9a. As the court of appeals put it, "[w]hen the injury in fact is the violation of a statutory right * * * inferred from the existence of a private cause of action, causation and redressability will usually be satisfied." *Ibid.* Causation is self-evident, because the statutory violation *is* the injury. *Ibid.* And the presence of a statutory remedy guarantees redressability, since there is no injury to redress apart from the statutory violation itself. *Ibid.*

## REASONS FOR GRANTING THE PETITION

To establish standing (and thus federal jurisdiction) under Article III, a plaintiff bears the burden of showing that he

> (1) * * * has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 180–81 (2000).

The injury-in-fact requirement is the "irreducible constitutional minimum" for standing. *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Yet the Ninth Circuit held that requirement satisfied by a statutory violation that is unaccompanied by any concrete harm to the plaintiff. That holding has the practical effect of collapsing the three-part standing inquiry into the single question whether the plaintiff has been subjected to a statutory violation. As the

26

8

court of appeals itself acknowledged, "[w]hen the injury in fact is the violation of a statutory right * * * inferred from the existence of a private cause of action, causation and redressability will usually be satisfied." App., *infra*, 9a.

The decision below—along with those of two other circuits—directly conflicts with the decisions of at least two other courts of appeals. Those courts have held that a plaintiff pursuing a statutory cause of action still must demonstrate a concrete injury-in-fact (as opposed to a mere injury-in-law) in order to establish Article III standing.

The conflict arises in part from a statement by this Court. The Court has held with unmistakable clarity "that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines* v. *Byrd*, 521 U.S. 811, 820 n.3 (1997). Yet several courts of appeals have disregarded this "settled" principle (*ibid.*) in favor of what they perceive to be a contrary rule expressed in *Warth* v. *Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks omitted): "The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." App., *infra*, 5a (quoting *Warth*).

The need to resolve the conflict is especially acute because this fundamental question of Article III jurisdiction has significant implications for class action litigation under a statute that generates dozens of class actions in the federal courts every year. The Court should grant review.

27

9

### A.  The Courts Of Appeals Are Divided Over Whether An Injury-In-Law Satisfies Article III's Injury-In-Fact Requirement.

The division among the courts of appeals regarding whether a statutory violation, unaccompanied by any concrete injury, is sufficient to establish Article III standing leaves no doubt that if this case had been filed in the Second or Fourth Circuits the district court's order of dismissal would have been affirmed rather than reversed.

To begin with, the Sixth Circuit—like the Ninth Circuit in this case—has held that a plaintiff had Article III standing to bring a FCRA action against a check verification service even though she never had a check rejected or suffered any other consequence of the challenged practice. *Beaudry* v. *TeleCheck Services, Inc.,* 579 F.3d 702, 705–07 (6th Cir. 2009).  And the Seventh Circuit, in reversing a denial of class certification, has held (without mentioning Article III) that statutory damages are available under FCRA "without proof of injury." *Murray* v. *GMAC Mortgage Corp.*, 434 F.3d 948, 952–53 (7th Cir. 2006).[2]

---

[2] District courts within the Seventh Circuit have concluded that *Murray* controls the Article III inquiry. *E.g., Armes* v. *Sogro, Inc,* 932 F. Supp. 2d 931, 937–38 (E.D. Wis. 2013); *Brittingham* v. *Cerasimo, Inc.*, 621 F. Supp. 2d 646, 649–50 (N.D. Ind. 2009). And although the Seventh Circuit has not directly addressed the Article III question, it has recently reiterated the holding in *Murray* that "entitlement to statutory damages" does not "require any showing of injury of any sort." *Chapman* v. *Wagener Equities, Inc.*, __ F.3d __, No. 14-8004, 2014 WL 1272786, at *1 (7th Cir. Mar. 31, 2014) (construing Telephone Consumer Protection Act).

28

10

Although the Fourth Circuit has not addressed the issue in the context of the FCRA, it has—in the context of an ERISA action—squarely rejected the argument that, in the absence of any concrete injury, the mere "deprivation of [a] statutory right * * * is sufficient to constitute an injury-in-fact for Article III standing." *David* v. *Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013). The court forthrightly declared that "this theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing." *Ibid.*

The Second Circuit has reached the same conclusion, squarely rejecting the argument that "either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of [the plaintiff's] entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall* v. *Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009). The court explained that although "plan fiduciaries have a statutory duty to comply with ERISA," a plaintiff cannot maintain a claim for breach of that duty without also "alleg[ing] some injury or deprivation of a specific right that arose from a violation of th[e] duty." *Ibid.*

Faced with a FCRA claim for statutory damages in the absence of concrete injury, the Second and Fourth Circuits would be obligated to apply these precedents and hold that the plaintiffs lack Article III standing. The court below took precisely that approach to its own (diametrically opposite) precedent, applying in the FCRA context its prior holding in *Edwards* v. *First American Corp.,* 610 F.3d 514, 517 (9th Cir. 2010)), cert. granted, 131 S. Ct. 3022 (2011), cert. dismissed as improvidently granted, 132 S. Ct. 2536 (2012) (involving a claim under Real Estate

29

11

Settlement Procedures Act (RESPA)). See App., *infra*, 6a (citing *Edwards*). And it is what the Sixth Circuit did in *Beaudry*, applying to FCRA its decision in *Carter* v. *Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009) (also involving a RESPA claim). See 579 F.3d at 705–07.[3]

While it is abundantly clear that the circuits are in marked disagreement over whether, as a general matter, Congress can create constitutional standing in the absence of actual injury, a square conflict in the FCRA context in particular is unlikely to develop.

---

[3] Like the Second and the Fourth Circuits, the Third Circuit has twice held that plaintiffs must allege actual injury—not just a violation of a federal statute—to establish Article III standing. For example, the Third Circuit held that Article III standing is lacking in suits for false advertising under the Lanham Act unless the plaintiffs allege that they were actually harmed by the challenged conduct. See *Joint Stock Soc'y* v. *UDV North America, Inc.*, 266 F.3d 164, 176 (3d Cir. 2001) (Alito, J.) (no "injury in fact" from defendants' use of Smirnoff trade name where plaintiffs "never marketed any vodka in the United States"). See also *Fair Housing Council* v. *Main Line Times*, 141 F.3d 439, 443-44 (3d Cir. 1998) (plaintiff who was not actually deterred by discriminatory advertising lacked standing because "a violation of the Act does not automatically confer standing on any plaintiff, even one who holds the status of a private attorney general"); *Doe* v. *National Board of Medical Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) (Becker, C.J., joined by Scirica and Alito, JJ.) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury * * * [.] Congress * * * cannot confer standing by statute alone") (discussing Americans with Disabilities Act and finding standing). But see *Alston* v. *Countrywide Financial Corp.*, 585 F.3d 753, 763 (3d Cir. 2009) (holding that "[a] plaintiff need not demonstrate that he or she suffered actual monetary damages" to have Article III standing to sue under the RESPA, without acknowledging contrary circuit precedents, which were not cited in the defendant's brief (see 2009 WL 7170604)).

12

That is so in light of the decision below and those of the Sixth Circuit in *Beaudry*, the Seventh Circuit in *Murray* (see note 2, *supra*), and the Eighth Circuit's similarly reasoned Article III standing decision under a different statute, see *Charvat* v. *Mutual First Federal Credit Union,* 725 F.3d 819, 822-825 (8th Cir. 2013), cert. denied, 134 S. Ct. 1515 (2014) (Electronic Funds Transfer Act). In almost every case plaintiffs' counsel can choose to bring nationwide class actions under FCRA in one of these four circuits that equate statutory injury-in-law with Article III injury-in-fact—and thereby avoid dismissal under the standards applied in the Second and Fourth Circuits.

In sum, there is broad-based and long-standing disagreement in the lower courts over whether Article III places limitations on Congress's ability to create constitutional standing. That fundamental conflict is ripe for resolution by this Court.

### B. Injury-In-Law Class Actions Under FCRA Seeking Huge Damages Are Being Filed With Increasing Frequency.

Class actions invoking the FCRA, and grounded in the injury-in-law theory upheld in this case, are being filed with great frequency. "In the 40 years since FCRA was enacted, litigation has skyrocketed."[4] Indeed, at least 29 putative class actions claim-

---

[4] Jonathan D. Jerison & Bradley A. Marcus, *A Brief History of the FCRA and the Potential for New Litigation After Dodd-Frank*, Consumer Fin. Services L. Rep., Apr. 13, 2011, at 3, 4; see also David L. Permut & Tamra T. Moore, *Recent Developments in Class Actions: The Fair Credit Reporting Act*, 61 Bus. Law. 931 (2006) (noting the "proliferation of class action lawsuits brought under" FCRA that "combined with certain class action-friendly provisions of FCRA—such as the availability of fee shifting and statutory damages, and the lack of a class ac-

13

ing statutory damages under FCRA have been filed in *the first four months of this year* alone.[5] And those lawsuits target a broad range of businesses. As this

tion damages cap—have * * * push[ed] the FCRA to the forefront of consumer financial services class litigation.").

[5] See *Broberg* v. *Experian Information Solutions, Inc.*, No. 14-cv-49 (D. Minn. Jan. 6, 2014); *Lunds* v. *Johns Pizza Cafe Ltd.*, No. 14-cv-63 (D. Minn. Jan. 7, 2014); *Gonzalez* v. *Harris Ranch*, No. 14-cv-38 (E.D. Cal. Jan. 10, 2014); *Haber* v. *Bank of America, N.A.*, No. 14-cv-169 (E.D. Pa. Jan. 13, 2014); *Corliss* v. *Providence Health & Services*, No. 14-cv-119 (D. Or. Jan. 23, 2014); *Pekelney* v. *Horizon Healthcare Services, Inc.*, No. 14-cv-584 (D.N.J. Jan. 28, 2014); *Patel* v. *Trans Union, LLC*, No. 14-cv-522 (N.D. Cal. Feb. 4, 2014); *Henderson* v. *HR Plus*, No. 14-cv-82 (E.D. Va. Feb. 6, 2014); *Gezahegne* v. *Whole Foods Market California, Inc.*, No. 14-cv-592 (N.D. Cal. Feb. 7, 2014); *Lozano-Rivera* v. *Universal City Nissan Inc.*, No. 14-cv-1010 (C.D. Cal. Feb. 10, 2014); *Carsten* v. *University of Miami*, No. 14-cv-20497 (S.D. Fla. Feb. 10, 2014); *Reed* v. *Swatch Group (US) Inc.*, No: 14-cv-896 (D.N.J. Feb. 12, 2014); *Reed* v. *Golf & Tennis Pro Shop, Inc.*, No. 14-cv-895 (D.N.J. Feb 12, 2014); *Steed* v. *Equifax Information Services, LLC*, No. 14-cv-437 (N.D. Ga. Feb. 14, 2014); *Myers* v. *National Tenant Network, Inc.*, No. 14-cv-327 (D. Or. Feb. 26, 2014); *Brown* v. *Delhaize America, LLC*, No. 14-cv-195 (M.D.N.C Mar. 7, 2014); *Knights* v. *Publix Super Markets, Inc.*, No. 14-cv-720 (M.D. Tenn. Mar. 12, 2014); *Plasters* v. *UBS Financial Services, Inc.*, No. 14-cv-1659 (D.N.J Mar. 14, 2014); *Hathaway* v. *Whole Foods Market California, Inc.*, No. 14-cv-663 (S.D. Cal. Mar. 21, 2014); *Ford* v. *CEC Entertainment, Inc.*, No. 14-cv-677 (S.D. Cal. Mar. 24, 2014); *Henderson* v. *Wal-Mart Stores*, No. 14-cv-208 (E.D. Va. Mar. 24, 2014); *Short* v. *Equifax Information Services LLC*, No. 14-cv-471 (D. Or. Mar. 24, 2014); *Scott* v. *KKW Trucking, Inc.*, No. 14-cv-494 (D. Or. Mar. 25, 2014); *Ragland* v. *Guardsmark, LLC*, No. 14-cv-693 (S.D. Cal. Mar. 26, 2014); *Dell'Olio* v. *HCA HealthONE, LLC*, No. 14-cv-885 (D. Colo. Mar. 26, 2014); *Henderson* v. *First Advantage Background Services Corp.*, No. 14-cv-221 (E.D. Va. Mar. 28, 2014); *Manuel* v. *Wells Fargo Bank*, No. 14-cv-238 (E.D. Va. Apr. 1, 2014); *Avery* v. *Werner Enterprises, Inc.*, No. 14-cv-330 (W.D. Mo. Apr. 9, 2014); *Roberson* v. *Laborchex Companies, Inc.*, No. 14-cv-273 (M.D. Ala. Apr. 11, 2014).

14

case demonstrates, FCRA class actions are being filed with increasing frequency against employers and other entities that are not traditional "consumer reporting agencies," but cannot escape the litigation (and potentially massive exposure) at the pleading stage.[6]

Moreover, the interaction between a no-injury theory of standing and the class action device means that enormous potential liability may result even though no one has suffered *any* concrete injury. The decision below not only lowers the bar for plaintiffs to bring such actions and survive dismissal; it also has the practical effect of relaxing Rule 23's "stringent requirements for [class] certification," *American Express Co.* v. *Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013), because—once the presence of actual harm is out of the equation—issues of injury and causation will be claimed to be much more susceptible to common proof. That is exactly what happened in *Murray*, where the Seventh Circuit—reversing a denial of class certification—held that individualized issues as to injury and damages did not preclude class certification precisely because, in that court's view, statutory damages were available "without proof of injury." 434 F.3d at 952–53.

Magnifying the issue's practical significance, at least two courts of appeals addressing the FCRA remedial provision at issue here have rejected challenges to class certification, declaring class adjudication "superior" (Fed. R. Civ. P. 23(b)(3)) even when

---

[6] See note 5, *supra*; see also, *e.g.*, *Ellis* v. *Swift Transp. Co. of Ariz., LLC*, No. 13-cv-00473, Dkt. 36–1 (E.D. Va. Apr. 21, 2014) (proposing settlement for $4.4 million of putative class action that alleged that a trucking company willfully violated the FCRA through its use of consumer reports in its hiring process).

33

15

that device threatens to impose billions in damages for technical violations causing infinitesimal harm or no harm at all. See *Murray*, 434 F.3d at 952–53; *Bateman* v. *American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010).[7]

The implication is drastic and absurd: the lesser the injury, the easier the path to class certification, the broader the class, the greater the damages exposure, and—inevitably—the larger the settlement. As this Court has put it, "[w]hen damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims." *AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1752 (2011); see also *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 741 (1975) (noting risk of *in terrorem* settlements).

This case imposes a similar threat of extraordinary settlement pressure regardless of the merits. Respondent alleges that the putative class he seeks to represent "consists of millions of individuals" on whose behalf he hopes to recover "the maximum statutory damages available under" FCRA—*i.e.*, $1000 per violation. C.A. ER 40:8 ¶ 39, 40:13 ¶ 65, 40:14 ¶¶ 71, 75. In other words, if a class were certified in this case, the potential exposure reaches into the billions of dollars.

---

[7] FCRA class actions include litigation (like *Bateman*) under the Fair and Accurate Credit Transactions Act (FACTA), a FCRA provision that governs information on credit-card receipts (see 15 U.S.C. § 1681c(g)(1)) but is subject to standard FCRA remedies and presents identical standing issues.

16

In light of the high volume of FCRA class actions in the federal courts and the massive stakes at issue, review by this Court is warranted to decide whether those cases may be brought by plaintiffs who lack genuine, concrete injuries.

### C.  A Decision In This Case Would Resolve Similar Issues Presented Under A Wide Range Of Federal Statutes.

Review here would have the additional practical benefit of resolving the same constitutional issue as it arises under many more federal statutes. Among those statutes are:

- The Truth in Lending Act, which imposes requirements on financial institutions that extend credit to consumers (see 15 U.S.C. §§ 1631-1632) and provides for awards of actual and statutory damages (see 15 U.S.C. § 1640(a)(2)(B)).[8]

- The Fair Debt Collection Practices Act, which prohibits using certain "means to collect or attempt to collect any debt" (15 U.S.C. § 1692f) and imposes liability for actual and statutory damages (see *id*. § 1692k(a)(2)(B)).[9]

- The Telephone Consumer Protection Act, which regulates telephone solicitations and provides for statutory damages. See 47 U.S.C. § 227(b).[10]

---

[8] See, *e.g.*, *DeMando* v. *Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000).

[9] See, *e.g.*, *Robey* v. *Shapiro Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006).

[10] See *Chapman* v. *Wagener Equities, Inc.*, __ F.3d __, No. 14-8004, 2014 WL 1272786, at *1 (7th Cir. Mar. 31, 2014) ("Nor

17

- The Employee Retirement Income Security Act, which imposes fiduciary duties on sponsors of retirement plans, including a duty to act in accordance with plan terms that are consistent with ERISA's requirements (see 29 U.S.C. § 1104(a)(1)(D)), and authorizes plan participants to bring civil actions against plan fiduciaries for breaches of those duties (see *id.* § 1132(a)(2)).[11]

- The Real Estate Settlement Procedures Act, which prohibits kickbacks in certain mortgage-loan transactions. See 12 U.S.C. § 2607.[12]

- The Lanham Act, which prohibits false advertising and authorizes civil actions for violations. See 15 U.S.C. § 1125.[13]

- The Fair Housing Act, which forbids discriminatory advertising for apartments (see 42 U.S.C. § 3604(c) and creates a private right

---

does entitlement to statutory damages require any showing of injury of any sort * * * ."). See also, *e.g.*, *Palm Beach Golf Ctr.–Boca, Inc.* v. *Sarris*, __ F. Supp. 2d __, No. 12-80178-CIV, 2013 WL 5972173, at *11-12 (S.D. Fla. Oct. 22, 2013); *Manno* v. *Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013); *Smith* v. *Microsoft Corp.*, No. 11-cv-1958, 2012 WL 2975712, at *3-4 (S.D. Cal. July 20, 2012); *US Fax Law Ctr., Inc.* v. *iHire, Inc.*, 362 F. Supp. 2d 1248, 1252-1253 (D. Colo. 2005).

[11] See, *e.g.*, *David* v. *Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013); *Kendall* v. *Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009).

[12] See, *e.g.*, *Alston* v. *Countrywide Financial Corp.*, 585 F.3d 753, 763 (3d Cir. 2009); *Carter* v. *Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009).

[13] See, *e.g.*, *Joint Stock Soc'y* v. *UDV North American, Inc.*, 266 F.3d 164, 176 (3d Cir. 2001).

18

of action to challenge discriminatory housing practices in federal court (see *id.* § 3613(a)(1)(A)).[14]

• The Americans with Disabilities Act, which prohibits discrimination on the basis of disability in public accommodations (see 42 U.S.C. § 12182(a)) and authorizes suits by private persons to enjoin such discrimination (see *id.* § 12188).[15]

• The Video Privacy Protection Act, 18 U.S.C. § 2710(b), which prohibits a "video tape service provider" from knowingly disclosing personally identifiable information concerning any consumer, and authorizes consumer lawsuits, *id.* § 2710(c)(1).[16]

Many more federal statutes contain statutory damages provisions.[17] Litigation under those laws is

---

[14] See, *e.g.*, *Fair Housing Council* v. *Main Line Times*, 141 F.3d 439, 443-44 (3d Cir. 1998); *Wilson* v. *Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 593-94 (10th Cir. 1996).

[15] See, *e.g.*, *Doe* v. *National Board of Medical Examiners*, 199 F.3d 146, 153 (3d Cir. 1999).

[16] See, *e.g.*, *In re Hulu Privacy Litig.*, No. C 11-03764, 2013 WL 6773794, at *4-5, *8-9 (N.D. Cal. Dec. 20, 2013) (following *Edwards* and finding no injury necessary beyond disclosure in violation of VPPA); *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *7-9 (N.D. Ill. Oct. 27. 2012) (dismissing for want of injury-in-fact despite statutory violation).

[17] See, *e.g.*, Electronic Communications Privacy Act, 18 U.S.C. § 2520(c); Stored Communications Act, 18 U.S.C. § 2707(c); Cable Communications Privacy Act, 47 U.S.C. § 551(f)(2); Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1854(a), (c); Expedited Funds Availability Act, 12 U.S.C. § 4010(a)(2); Homeowners Protection Act, 12 U.S.C. § 4907(a)(1); Equal Credit Opportunity Act, 15 U.S.C. § 1691e(a); Driver's Privacy Protection Act, 18 U.S.C. § 2724(a).

19

likely to raise the question presented here.[18] And some courts have extended the same principles to state statutes.[19]

The Ninth Circuit's holding would afford plaintiffs Article III standing whenever they bring private actions under any of these statutes—regardless of whether they plead actual harm—so long as they allege a bare statutory violation with some connection to them. Review by this Court would ensure that the lower courts are acting within the scope of their constitutional authority in a broad range of statutory settings beyond FCRA.

### D. The Ninth Circuit's Decision Is Contrary To This Court's Standing Jurisprudence.

Review is warranted for the additional reason that the decision below cannot be reconciled with this Court's Article III standing precedents.

1.   It long has been "settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines* v. *Byrd*, 521 U.S. 811, 820 n.3 (1997) (citing *Gladstone, Realtors* v. *Village of Bellwood*, 441 U. S. 91, 100 (1979)).

---

[18] For example, although to our knowledge the Article III question has not squarely arisen under the Electronic Communications Privacy Act or the Stored Communications Act, at least one district court has held that the statutory damages provisions in those laws obviate any inquiry into whether plaintiffs "suffered damage or loss." *Harris* v. *comScore, Inc.*, 292 F.R.D. 579, 589 (N.D. Ill. 2013).

[19] See, *e.g.*, *C.M.D.* v. *Facebook, Inc.*, No. C 12-1216, 2014 WL 1266291, at *2-3 (N.D. Cal. Mar. 26, 2014) (Illinois statute); *Deacon* v. *Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1171-72 (N.D. Cal. 2012) (Michigan statute).

20

"In no event * * * may Congress abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself * * * that is likely to be redressed if the requested relief is granted." *Gladstone*, 441 U.S. at 100 (internal quotation marks omitted). This "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 497 (2009).

The court below (App., *infra*, 5a), and other courts similarly inclined, have subordinated those principles to this Court's earlier passing observation that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing." *Warth* v. *Seldin*, 422 U.S. 490, 500 (1975) (quoting *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 617 n.3 (1973)). But that statement does not mean that Congress can manufacture Article III standing when the asserted injury is insufficiently concrete to satisfy Article III's injury-in-fact requirement. Nor is it enough (as the Ninth Circuit believed, see App., *infra*, 8a) that the interest addressed by the statutory violation is individual to the plaintiff rather than collective. "An interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U.S. 765, 772 (2000).

As this Court recently reiterated, injury-in-fact requires not only "an invasion of a legally protected interest," but one that is both "(a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " *Arizona Christian School Tuition Organization* v. *Winn*, 131 S. Ct. 1436, 1442 (2011) (quoting *Lujan,* 504 U.S. at 560).

21

Congress may accomplish a "'[s]tatutory broadening of the categories of injury that may be alleged in support of standing,'" but not by "'abandoning the requirement that the party seeking review must himself have suffered an injury.'" *Lujan*, 504 U.S. at 578 (quoting *Sierra Club* v. *Morton*, 405 U.S. 727, 738 (1972)) (brackets omitted). If there is an actual, palpable injury—i.e., one that could qualify as an "injury in fact" under Article III—but no remedy at law, Congress may create a remedy. See *ibid.* In other words, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Ibid.*; see also Hart & Wechsler's The Federal Courts and the Federal System 144 (Richard H. Fallon Jr. et al. eds., 6th ed. 2009).

But Congress may not create the necessary underlying injury by fiat. See *Lujan*, 504 U.S. at 578. No plaintiff can enforce every legal obligation that involves her in some way; she can "enforce" only those "specific legal obligations whose violation works a direct harm" to her that is actual and concrete within the meaning of Article III. *Allen* v. *Wright*, 468 U.S. 737, 761 (1984).

The decision below—like many lower court decisions before it—departs from these firmly established constitutional principles. The Ninth Circuit held that Robins alleged an injury sufficient to satisfy Article III by alleging that Spokeo violated FCRA when it retransmitted inaccurate personal information about him, without alleging a sufficient allegation of tangible harm.

That circular approach to injury would render the case-or-controversy requirement of Article III an empty formality. In excusing a plaintiff from showing

22

an *actual* injury-in-fact, the decision below necessarily excuses a showing of causation as well. Where the only injury arises from a violation of legal duty that had no effect on the plaintiff, there is nothing to cause, and thus no meaning to the "causal connection" that is otherwise required. *Arizona Christian*, 131 S. Ct. at 1442.

As a consequence, the three-part test of Article III standing—injury-in-fact, causation, and redressability—would collapse into the single question of redressability. Once a congressionally authorized remedy made an abstract complaint "redressable" in the sense that the plaintiff could seek and collect payment, anyone identified in a statute would have standing. The Ninth Circuit recognized and embraced this anomaly. See App., *infra*, 9a.

If the Ninth Circuit were correct, Congress could expand the jurisdiction of the federal courts by authorizing statutory damages for violation of any federal requirement. But Article III's actual injury requirement cannot be evaded simply by making damages available even when injury is absent.

2.   Further review is warranted for the additional reason that the serious constitutional questions raised by the decision below, and many others like it, are the unnecessary result of an overbroad statutory construction. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Almendarez-Torres* v. *United States*, 523 U.S. 224, 237 (1998) (citation and quotation marks omitted). Accordingly, where a statute is "genuinely susceptible to two constructions," a court is obligated to choose the one that avoids constitutional doubt. *Id*. at 238.

41

23

The FCRA can readily be construed in that manner. As the Eighth Circuit has observed, "[a] reasonable reading of the statute could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award." *Dowell* v. *Wells Fargo Bank, NA*, 517 F.3d 1024, 1026 (8th Cir. 2008). Under that construction, because it can be difficult to prove the *amount* of damages resulting from a failure to comply with FCRA's procedural provisions, plaintiffs who have been *concretely* harmed by willful noncompliance need not *quantify* the harm.[20] This interpretation of Section 1681n(a) of FCRA would not affect the need to show a concrete and particularized injury-in-fact sufficient to satisfy Article III. The federal courts should not "presume—without any basis in the statutory text * * * and in contradiction to long-settled constitutional precedent, see, *e.g.*, *Lujan*, 504 U.S. at 560—that Congress intended to stretch, if not breach, the constitutional limits on federal jurisdiction." *Wallace* v. *ConAgra*, __ F.3d __, 2014 WL 1356860, at *5 (8th Cir. Apr. 4, 2014). Review is warranted to reinvigorate that principle as it applies to the interpretation of private causes of action for violations of federal statutes.

### E.   This Case Cleanly Presents The Injury-In-Law Question.

This case presents an appropriate vehicle to resolve the question left open by the dismissal of certiorari in *First American*. Unlike the plaintiff in that case, who had paid money to the defendant in a

---

[20] Cf. *Doe* v. *Chao*, 540 U.S. 614, 621 (2004) (construing Privacy Act recovery to require actual damages in light of "traditional understanding that tort recovery requires * * * proof of some harm for which damages can reasonably be assessed").

24

commercial transaction that her lawsuit challenged, Robins did not enter into a commercial transaction with Spokeo and has not paid Spokeo a dime (as frequently is the case in FCRA claims).[21]

Moreover, unless the mere existence of the alleged FCRA violation is sufficient to satisfy Article III, Robins cannot establish standing. In "allegations of injury" that the Ninth Circuit conceded were "sparse," App., *infra*, 2a, Robins asserted that the very existence of inaccurate information about him harmed his "prospects" for employment, and that he was anxious about the possibility that a prospective employer might see that information and use it adversely against him.

This "highly attenuated chain of possibilities * * * does not satisfy the requirement that threatened injury must be certainly impending" to satisfy Article III. *Clapper* v. *Amnesty International USA*, 133 S. Ct. 1138, 1148 (2013). This Court recently "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors" like the unknown employers who might have seen Robins's Spokeo search results. *Id.* at 1150. And Robins's pleaded anxiety and stress about his speculation is as insufficient to satisfy the injury-in-fact requirement as was the "subjective fear of surveillance" that this Court found wanting in *Clapper*, *id.* at 1153-1153.

In short, this case provides a clear path to the resolution of the important question presented.

---

[21] Indeed, the remedial provision involved in *First American* imposed liability for "three times the amount of *any charge paid*" to the defendant. 12 U.S.C. § 2607(d)(2) (emphasis added).

43

25

\*       \*       \*

By equating a statutory injury-in-law with an Article III injury-in-fact, the Ninth Circuit has opened the federal courts to a large class of lawsuits that do not satisfy Article III. Review by this Court is warranted to ensure that the jurisdiction asserted by the federal courts remains within constitutional limits.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted.

JOHN NADOLENCO
  *Mayer Brown LLP*
  *350 South Grand Ave.*
  *25th Floor*
  *Los Angeles, CA 90071*
  *(213) 229-5173*

ANDREW J. PINCUS
  *Counsel of Record*
ARCHIS A. PARASHARAMI
STEPHEN LILLEY
  *Mayer Brown LLP*
  *1999 K Street*
  *Washington, DC 20006*
  *(202) 263-3000*
  *apincus@mayerbrown.com*

DONALD M. FALK
  *Mayer Brown LLP*
  *Two Palo Alto Square*
  *3000 El Camino Real*
  *Palo Alto, CA 94306*
  *(650) 331-2000*

*Counsel for Petitioners*

MAY 2014

44

**APPENDICES**

1a

**APPENDIX A**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS ROBINS, individually and on behalf of all others similarly situated, | No. 11-56843 |
| *Plaintiff–Appellant,* v. | D.C. No. 2:10-cv-5306-ODW-AGR |
| SPOKEO, INC., a California corporation, | |
| *Defendant–Appellee.* | |

Appeal from the United States District Court
For the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
November 6, 2013—Pasadena, California

Filed February 4, 2014

Before: Diarmuid F. O'Scannlain, Susan P. Graber,
and Carlos T. Bea, Circuit Judges

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether an individual has Article III standing to sue a website's operator under the Fair Credit Reporting Act for publishing inaccurate personal information about himself.

**I**

Spokeo, Inc. operates a website that provides users with information about other individuals, including

46

2a

contact data, marital status, age, occupation, economic health, and wealth level. Thomas Robins sued Spokeo for willful violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.,* related to its website. Although he asserted that Spokeo's website contained false information about him, Robins's allegations of injury were sparse. Spokeo moved to dismiss Robins's original complaint for lack of subject-matter jurisdiction on the ground that Robins lacked standing sufficient under Article III of the United States Constitution.

On January 27, 2011, the district court ruled that Robins had failed to allege an injury in fact because he had not alleged "any actual or imminent harm." The court characterized Robins's allegations as simply "that he has been unsuccessful in seeking employment, and that he is concerned that the inaccuracies in his report will affect his ability to obtain credit, employment, insurance, and the like." The district court noted that "[a]llegations of possible future injury do not satisfy the [standing] requirements of Art. III" and dismissed the complaint without prejudice.

Robins thereafter filed his First Amended Complaint (FAC). Similar to the original complaint, the FAC alleged willful violations of the FCRA. For example, the website allegedly described Robins as holding a graduate degree and as wealthy, both of which are alleged to be untrue. Robins, who is unemployed, described the misinformation as "caus[ing] actual harm to [his] employment prospects." Remaining unemployed has cost Robins money as well as caused "anxiety, stress, concern, and/or worry about his diminished employment prospects."

47

3a

Again, Spokeo moved to dismiss for lack of subject-matter jurisdiction on the ground that Robins lacked standing under Article III. On May 11, the district court denied the motion and concluded that Robins had alleged a sufficient injury in fact, namely Spokeo's "marketing of inaccurate consumer reporting information about" Robins. The court also ruled that the injury was traceable to Spokeo's alleged violations of the FCRA and that the injury was redressable through a favorable court decision.

On September 19, after Spokeo moved to certify an interlocutory appeal, the district court reconsidered its previous ruling on standing. It then ruled, contrary to its May 11 order, that Robins failed to plead an injury in fact and that any injuries pled were not traceable to Spokeo's alleged violations, dismissing the action. Robins timely appealed.

## II

On appeal, Robins first argues that the law-of-the-case doctrine prohibited the district court from revisiting its own May 11 decision. In *United States v. Smith,* however, we held that the law-of-the-case doctrine does not apply "to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction." 389 F.3d 944, 949 (9th Cir.2004) (per curiam) (describing the doctrine as "wholly inapposite"). In this case, the district court was not divested of jurisdiction prior to its September 19 order.

Although *United States v. Alexander* held that the law-of-the-case doctrine precluded a district court from reconsidering an evidentiary issue after a mistrial, 106 F.3d 874, 876–77 (9th Cir.1997), we distinguished *Alexander* in *Smith* and do so again here.

48

4a

The rule from *Alexander* applies only to cases in which a submission to the jury separates the two decisions. *See Smith,* 389 F.3d at 949–50 (distinguishing *Alexander* on the ground that the district court in that case had reconsidered its decision only after submitting the case to a jury).

Here, because the district court had neither been divested of jurisdiction nor submitted this case to the jury, it was free to reconsider its own prior ruling. The law-of-the-case doctrine did not limit the district court.

## III

Robins next argues that the FAC sufficiently alleges Article III standing and that the May 11 ruling was correct.[1] The FAC indeed alleges violations of various statutory provisions. *See* 15 U.S.C. § 1681b(b)(1) (listing the circumstances in which consumer reporting agencies (CRAs) may provide "consumer reports for employment purposes"); *id.* § 1681 e(b) (requiring CRAs to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports); *id.* § 1681e(d) (requiring CRAs to issue notices to providers and users of information); *id.* § 1681j(a)

---

[1] Spokeo briefly responds that the FAC "pleads no facts from which an inference of willfulness might be drawn." We disagree. "[W]illful [ ]" violations within the meaning of 15 U.S.C. § 1681n include violations in "reckless disregard of statutory duty." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). The facts that Robins pled make it plausible that Spokeo acted in reckless disregard of duties created by the FCRA. Robins pled, among other things, that Spokeo knew about inaccuracies in its reports and marketed its reports for purposes covered by the FCRA despite disclaiming any such uses.

49

5a

(requiring CRAs to post toll-free telephone numbers to allow consumers to request consumer reports). Robins contends that because these provisions are enforceable through a private cause of action, *see id.* § 1681n, they create statutory rights that he has standing to vindicate in court. *See Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("The actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (internal quotation marks omitted)).

The district court properly recognized that it would not have subject-matter jurisdiction if Robins did not have standing. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341–42, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). The district court also correctly identified the three components of standing: (1) the plaintiff "has suffered an 'injury in fact' that is (a) concrete and partlarized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Although more may be required at later stages of the litigation, on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

## A

In standing cases that analyze statutory rights, our

50

6a

precedent establishes two propositions. First, Congress's creation of a private cause of action to enforce a statutory provision implies that Congress intended the enforceable provision to create a statutory right. *See Fulfillment Servs. Inc. v. United Parcel Serv., Inc.,* 528 F.3d 614, 619 (9th Cir.2008). Second, the violation of a statutory right is usually a sufficient injury in fact to confer standing. *See Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir.2010) ("Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."); *Fulfillment Servs.,* 528 F.3d at 619 (same).

Spokeo contends, however, that Robins cannot sue under the FCRA without showing actual harm. But the statutory cause of action does not require a showing of actual harm when a plaintiff sues for willful violations. 15 U.S.C. § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to ... damages of not less than $100 and not more than $1,000...."); *see also Beaudry v. TeleCheck Servs., Inc.,* 579 F.3d 702, 705–07 (6th Cir.2009) (ruling that the FCRA "permits a recovery when there are no identifiable or measurable actual damages"); *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952–53 (7th Cir.2006) (ruling that the FCRA "provide[s] for modest damages without proof of injury").[2]

---

[2] Spokeo urges that such interpretation of the FCRA "would raise serious constitutional issues," suggesting that we should adopt the contrary reading, which the Eighth Circuit has de-

7a

The scope of the cause of action determines the scope of the implied statutory right. *See Edwards,* 610 F.3d at 517 ("Because the statutory text does not limit liability to instances in which a plaintiff is overcharged, we hold that Plaintiff has established an injury sufficient to satisfy Article III."). When, as here, the statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages.

## B

Of course, the Constitution limits the power of Congress to confer standing. *See Lujan,* 504 U.S. at 577, 112 S.Ct. 2130 (refusing "[t]o permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts"); *id.* at 580, 112 S.Ct. 2130 (Kennedy, J., concurring in part and concurring in the judgment) ("The Court's holding that there is an outer limit to the power of Congress to confer rights of action is a direct and necessary consequence of the case and controversy limitations found in Article III."). This constitutional limit, however, does not prohibit Congress from "elevating to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in

---

scribed as "reasonable." *See Dowell v. Wells Fargo Bank, NA,* 517 F.3d 1024, 1026 (8th Cir.2008) (per curiam) (noting that one "reasonable reading of the [FCRA] could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award"). We are not persuaded. As we explain below, our reading of the FCRA does not raise difficult constitutional questions. That our sister circuit has described Spokeo's reading as "reasonable," without actually ruling on the best interpretation of the statutory text, is of little consequence here

52

8a

law." *Id.* at 578, 112 S.Ct. 2130 (majority opinion).

The issue before us is whether violations of statutory rights created by the FCRA are "concrete, *de facto* injuries" that Congress can so elevate. We are not the first Court of Appeals to face this question. In *Beaudry,* the Sixth Circuit considered whether an FCRA plaintiff suing under 15 U.S.C. § 1681n had sufficiently alleged an injury in fact by alleging a violation of the FCRA. 579 F.3d at 707. The court identified two constitutional limitations on congressional power to confer standing. First, a plaintiff "must be 'among the injured,' in the sense that she alleges the defendants violated *her* statutory rights." *Id.* Second, the statutory right at issue must protect against "individual, rather than collective, harm." *Id.* The *Beaudry* court held that the plaintiff satisfied both of these requirements. *Id.*

Robins is in the same position. First, he alleges that Spokeo violated *his* statutory rights, not just the statutory rights of other people, so he is "among the injured." Second, the interests protected by the statutory rights at issue are sufficiently concrete and particularized that Congress can elevate them. *Lujan,* 504 U.S. at 578, 112 S.Ct. 2130. Like "an individual's personal interest in living in a racially integrated community" or "a company's interest in marketing its product free from competition," Robins's personal interests in the handling of his credit information are individualized rather than collective. *Id.* (describing two "concrete, *de facto* injuries" that Congress could "elevat[e] to the status of legally cognizable injuries"). Therefore, alleged violations of Robins's statutory rights are sufficient to satisfy the injury-in-fact requirement of Article III.

9a

## C

In addition to injury in fact, of course, standing requires causation and redressability. *See Laidlaw,* 528 U.S. at 180–81, 120 S.Ct. 693. Where statutory rights are asserted, however, our cases have described the standing inquiry as boiling down to "essentially" the injury-in-fact prong. *See Edwards,* 610 F.3d at 517; *Fulfillment Servs.,* 528 F.3d at 618–19. When the injury in fact is the violation of a statutory right that we inferred from the existence of a private cause of action, causation and redressability will usually be satisfied. First, there is little doubt that a defendant's alleged violation of a statutory provision "caused" the violation of a right created by that provision. Second, statutes like the FCRA frequently provide for monetary damages, which redress the violation of statutory rights. *See Jewel v. Nat'l Sec. Agency,* 673 F.3d 902, 912 (9th Cir.2011) (ruling that there was "no real question about redressability" when a plaintiff sought "an injunction and damages, either of which is an available remedy"). Therefore, Robins has adequately pled causation and redressability in this case.[3]

## IV

For the foregoing reasons, Robins adequately alleges Article III standing.[4]

---

[3] Because we determine that Robins has standing by virtue of the alleged violations of his statutory rights, we do not decide whether harm to his employment prospects or related anxiety could be sufficient injuries in fact.

[4] Because standing is the only question before us, we do not intimate any opinion on the merits of this case. We do not decide,

10a

**REVERSED AND REMANDED.**

---

for example, whether Spokeo qualifies as a consumer reporting agency or whether Spokeo actually violated the FCRA

11a

## APPENDIX B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA.
**CIVIL MINUTES – GENERAL**

Case No.    CV10-05306 ODW (AGRx)

Date  January 27, 2011

Title    *Thomas Robins v. Spokeo, Inc.*

Present:    The Honorable Otis D. Wright, II, United States District Judge

Raymond Neal    .    Not Present    .    n/a___.
Deputy Clerk    Court Reporter    Tape No.

Attorneys Present for Plaintiff(s):

Not Present

Attorneys Present for Defendant(s):

Not Present

**Proceedings (In Chambers):    Order GRANT- ING Defendant's Motion to Dismiss Plaintiffs' Complaint [22] (Filed 11/03/10)**

## I.   INTRODUCTION

Currently before this Court is Defendant, Spokeo, Inc.'s ("Defendant"), Motion to Dismiss Plaintiff Thomas Robin's ("Plaintiff") Complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt.# 22.) On January 10, 2011, Plaintiff filed an Opposition (Dkt.# 30), to which Defendant responded on January 20, 2011 (Dkt. # 31). Having carefully considered the papers filed in support of and in opposition to the instant

56

12a

Motion, the Court deems the matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; L.R. 7–15. For the following reasons, Defendant's Motion is **GRANTED.**

## II. FACTUAL BACKGROUND

Plaintiff alleges that Defendant operates its website, Spokeo.com, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.[5] (Compl.¶¶ 1, 2.) Specifically, Plaintiff claims that reports generated by Spokeo.com contain inaccurate consumer information that is marketed to entities performing background checks. (Compl. ¶¶ 13, 17.) As a result of Defendant's FCRA violations, Plaintiff is concerned that his ability to obtain credit, employment, insurance and the like will be adversely affected. (Compl. ¶¶ 23, 24.)

 In response, Defendant argues that it is not a consumer reporting agency under the FCRA, and thereby cannot be sued for alleged FCRA violations. (Mot. at 8.) Moreover, Defendant argues that even if it could be sued under the FCRA, Plaintiff does not have standing to bring such a claim. (Mot. at 17.) Defendant now brings the instant Motion to Dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and lack of subject matter jurisdiction because Plaintiff lacks standing, Fed.R.Civ.P. 12(b)(1).

## III. DISCUSSION

In order for this Court to have subject matter juris-

---

[5] Plaintiff's causes of action are for: violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681(b); 1681(e); 1681(j); and violation of Cal. Bus. & Prof.Code § 17200, *et seq.*

57

13a

diction over the merits of Plaintiff's claims, Plaintiff must have established the requisite standing to sue. *See Whitmore v. Arkansas,* 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Thus, as an initial matter, this Court will address Defendant's argument that Plaintiff does not have standing.

A plaintiff has standing where (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In the instant matter, Defendant contends that Plaintiff does not have standing because he has not alleged that he has in fact suffered any injury due to Spokeo's alleged conduct. (Mot. at 18.) The Court agrees.

Plaintiff argues that he has met the requirements of standing simply by alleging that Defendant is in violation of a statute that grants individuals a private right of action. (Opp. at 14.) However, even when asserting a statutory violation, the plaintiff must allege "the Article III minima of injury-in-fact." *Gomez v. Alexian Bros. Hosp. of San Jose,* 698 F.2d 1019, 1020–21 (9th Cir.1983). An "injury in fact," for the purposes of standing, must be actual or imminent and not conjectural or hypothetical. *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). At this point, Plaintiff has not suffered an injury in fact because Plaintiff has failed to allege that Defendant has caused him any actual or imminent harm. Plaintiff only expresses that he has been un-

58

14a

successful in seeking employment, and that he is "concerned that the inaccuracies [in] his report *will affect* his ability to obtain credit, employment, insurance, and the like." (Compl. ¶¶ 23, 24) (emphasis added.) The Supreme Court has "said many times before" that [a]llegations of possible future injury do not satisfy the [standing] requirements of Art. III." *Whitmore,* 495 U.S. at 158. Thus, Plaintiff's concern that he *will be* adversely affected by Defendant's website in the future, is an insufficient injury to confer standing.

Because Plaintiff does not have standing to bring his claims before this Court, no subject matter jurisdiction exists and, at this time, the Court will not address the merits of Plaintiff's claims. *See id.* at 154. This case is hereby **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED.** Plaintiff shall have twenty (20) days from the date of this Order to amend his Complaint to meet the standing requirements. If Plaintiff fails to do so, all claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

15a

**APPENDIX C**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA.
**CIVIL MINUTES – GENERAL**

Case No.    CV10-05306 ODW (AGRx)

Date  May 11, 2011

Title    *Thomas Robins v. Spokeo, Inc.*

Present:    The Honorable Otis D. Wright, II, United States District Judge

| Raymond Neal | . | Not Present | . | n/a | . |
| Deputy Clerk | | Court Reporter | | Tape No. | |

Attorneys Present for Plaintiff(s):

Not Present

Attorneys Present for Defendant(s):

Not Present

**Proceedings (In Chambers):    Order GRANT-ING in part and DENYING in part Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [42]**

**I. INTRODUCTION**

Currently before this Court is Defendant, Spokeo, Inc.'s ("Defendant"), Motion to Dismiss Plaintiff, Thomas Robin's ("Plaintiff"), First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. # 45.) Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the

60

16a

matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; L.R. 7–15. For the following reasons, Defendant's Motion is **GRANTED in part** and **DENIED in part.**

## II. FACTUAL BACKGROUND

On January 27, 2011, this Court dismissed Plaintiff's Complaint for lack of standing and gave Plaintiff twenty days to amend his Complaint to meet the standing requirements.[6] (Dkt.# 35.) On February 16, 2011, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt.# 36.) In his FAC, Plaintiff alleges that Defendant operates its website, Spokeo.com, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.[7] (FAC ¶¶ 1, 2.) Specifically, Plaintiff claims that reports generated by Spokeo.com contain inaccurate consumer information that is marketed to entities performing background checks, including "HR professionals and potential employers[.]" (FAC ¶¶ 13–15, 22, 29 .) As a result of Defendant's FCRA violations, Plaintiff alleges that Defendant has caused him "actual and/or imminent harm by creating, displaying, and marketing inaccurate consumer reporting information about Plaintiff." (FAC ¶ 35.)

 In response, Defendant avers that it cannot be sued for alleged FCRA violations because it is not a consumer reporting agency. (Memorandum in Support of Motion ("Memo"), Dkt. # 46, at 2.) Defendant now brings the instant Motion to Dismiss Plaintiff's FAC

---

[6] Specifically, Plaintiff's Complaint was dismissed on the basis that he did not sufficiently allege an injury in fact to confer Article III standing.

[7] Plaintiff's causes of action are for: violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681(b); 1681(e); 1681(j); and violation of Cal. Bus. & Prof.Code § 17200, *et seq.*

17a

in its entirety for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(6), and lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b) (1).

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

In order for this Court to have subject matter jurisdiction over the merits of Plaintiff's claims, Plaintiff must establish the requisite standing to sue. *See Whitmore v. Arkansas,* 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). A plaintiff has Article III standing to sue where the plaintiff alleges facts showing that "(1) it has suffered an 'injury in fact' ... (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely ... that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). "The litigant must clearly and specifically set forth facts to satisfy these Art. III standing requirements." *Whitmore,* 495 U.S. at 155–56.

### B. Failure to State a Claim

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe "[a]ll factual allegations set forth in the complaint ... as true and ... in the light most favorable to [the plaintiff]." *See Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001) (citing *Epstein v. Washington Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996)). "To survive a [12(b)(6) ] motion to dismiss ... a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a) (2)." *Porter v. Jones,* 319 F.3d

18a

483, 494 (9th Cir.2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, to overcome a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

## IV. DISCUSSION

As an initial matter, Defendant moves to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) asserting that this Court does not have subject matter jurisdiction to consider Plaintiff's claims. (Memo at 1.) The Court disagrees. In light of Plaintiff's FAC, the Court finds that Plaintiff has alleged sufficient facts to confer Article III standing. Specifically, Plaintiff has alleged an injury in fact—the "marketing of inaccurate consumer reporting information about Plaintiff"—that is fairly traceable to Defendant's conduct—alleged FCRA violations-and that is likely to be redressed by a favorable decision from this Court. (FAC ¶¶ 1, 35, 65) *See Friends of the Earth,* 528 U.S. at 180–81. Accordingly, Plaintiff has established the requisite standing to sue and the Court has subject matter jurisdiction over Plaintiff's claims.

Alternatively, Defendant moves to dismiss Plaintiff's

63

19a

FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, asserting that: (1) Defendant is not a consumer reporting agency under the FCRA, (2) Defendant "is immune from the alleged liability under the Communications Decency Act ("CDA") [,]" and (3) "Plaintiff's claim under California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200 *et seq.* ("UCL") fails both because it depends entirely on the failed FCRA claims and because Plaintiff does not and cannot allege that he lost money or property because of [Defendant's] alleged conduct[.]" (Memo at 2.) The Court considers each argument below.

## A. Defendant's argument that it is not a consumer reporting agency

Under the FCRA, a consumer reporting agency is:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Defendant avers that Plaintiff fails to state a claim against it under the FCRA because Defendant is not a "consumer reporting agency." (Memo at 12.) Specifically, Defendant contends that it does not regularly engage in providing con-

64

20a

sumer credit information for the purpose of furnishing consumer reports. (*Id.*) Conversely, Plaintiff alleges that "Defendant falls within the scope of FCRA because [Defendant] ... collects and creates [consumer] information for the purpose of furnishing it to paid subscribers who regularly provide monetary fees in exchange for Spokeo's reports, which contain data and evaluations regarding consumers' economic wealth and creditworthiness." (Opp. at 14; FAC ¶¶ 18–19, 26, 29.)

To overcome a 12(b)(6) motion to dismiss, a complaint must only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949. Accordingly, Plaintiff need not at this stage prove that Defendant is in fact a "consumer reporting agency." Plaintiff's allegations that Defendant regularly accepts money in exchange for reports that "contain data and evaluations regarding consumers' economic wealth and creditworthiness" (FAC ¶¶ 18–19, 26, 29) are sufficient to support a plausible inference that Defendant's conduct falls within the scope of the FCRA.[8] Thus, Plaintiff has alleged sufficient facts to

---

[8] Defendant further contends that its reports cannot constitute "consumer reports" because the FCRA requires that such reports are "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for[any unauthorized FCRA purpose,]" 15 U.S.C. § 1681a(d)(1), and disclaimers on Defendant's website specifically provide that the information "cannot be used for FCRA purposes." (Memo at 13–15.) The Court, however, finds that this argument fails for the same reasons as the previous argument. Plaintiff's allegations that Defendant expects its reports to be used for unauthorized FCRA purposes because Defendant's reports contain information traditionally associated

65

21a

survive Defendant's Motion on this ground.

## B.  Defendant's argument that it is immune under the CDA

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). This provision "immunizes providers of interactive computer services against liability for content created by third parties[.]" *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1162 (9th Cir.2008). Defendant asserts that it is immune under the CDA because it is an "interactive computer service" that "passively displays content that is created entirely by third parties." (Memo at 19.) Plaintiff, however, alleges that CDA immunity does not apply to Defendant because unlike information content providers that simply reorganize information obtained from other content providers, "Defendant develops original content based on information obtained from a variety of sources and posts it online[.]" (Opp. at 21; FAC ¶¶ 12–13.) Accordingly, application of the immunity is not clear at this time and the Court declines to dismiss the Complaint on this basis.

## C. Plaintiff's UCL Claim

California's UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or prac-

---

with "consumer reports" and Defendant markets such reports to "HR professionals and potential employers" (Opp. at 16–17; FAC ¶ ¶ 26–29) are sufficient to support a plausible inference that Defendant's reports are "consumer reports" within the scope of the FCRA

66

22a

tice[.]" Cal. Bus. & Prof.Code § 17200. The UCL grants a private right of action to any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof.Code § 17204. Defendant avers that Plaintiff does not have standing under the UCL because "he does not plead any factual basis for [the] conclusion" that he has "lost money" as a result of Defendant's conduct. (Memo at 22.) Plaintiff, however, alleges that Defendant's conduct has caused actual harm to [his] employment prospects." (FAC ¶ 35.) As a result, Plaintiff contends that he has "suffered economic injury in the form of lost income during his period of unemployment." (Opp. at 23; FAC ¶ 36.) The Court agrees with Defendant.

Plaintiff's conclusory allegations that Defendant's conduct has harmed his employment prospects are insufficient. While, at this stage the Court is required to accept allegations contained in the Complaint as true, mere labels and conclusions will not do. *See Lee v. City of L.A.,* 250 F.3d at 688; *Twombly,* 550 U.S. at 555. Accordingly, Plaintiff has not provided sufficient facts to "raise a right to relief above the speculative level," *See Twombly,* at 555, and Plaintiff's UCL claim is hereby **DISMISSED WITH PREJUDICE.**

**V. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part.** Defendant's Motion is GRANTED with respect to Plaintiff's UCL claim and DENIED as to Plaintiff's claims arising under the FCRA.

**IT IS SO ORDERED.**

67

23a

**APPENDIX D**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA.
**CIVIL MINUTES – GENERAL**

Case No.     CV10-05306 ODW (AGRx)

Date  September 19, 2011

Title      *Thomas Robins v. Spokeo, Inc.*

Present:      The Honorable Otis D. Wright, II,
            United   States   District   Judge

Sheila English     .   Not Present     .   n/a___.
Deputy Clerk       Court Reporter       Tape No.

Attorneys Present for Plaintiff(s):

Not Present

Attorneys Present for Defendant(s):

Not Present

**Proceedings (In Chambers):     Order Correcting Prior Ruling [52] and Finding Moot Motion for Certification. [57]**

Upon further review, the Court finds it necessary to strike the standing discussion from its May 11, 2011 Order. (Docket No. 52.) In its stead, the Court reinstates the January 27, 2011 Order, which found that Plaintiff fails to establish standing. (*See* Docket No. 35.) Among other things, the alleged harm to Plaintiff's employment prospects is speculative, attenuated and implausible. Mere violation of the Fair Credit Reporting Act does not confer Article III standing, moreover, where no injury in fact is properly pled.

24a

Otherwise, federal courts will be inundated by web surfers' endless complaints. Plaintiff also fails to allege facts sufficient to trace his alleged harm to Spokeo's alleged violations. In short, Plaintiff fails to establish his standing before this Court. This action is therefore **DISMISSED.** Spokeo's motion for certification of appeal is **MOOT.**

**SO ORDERED.**

25a

# APPENDIX E

## Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

### 15 U.S.C. § 1681a. Definitions; rules of construction

* * *

(d) CONSUMER REPORT.—

(1) IN GENERAL.—The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

* * *

(f) The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means

26a

or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

* * *

## 15 U.S.C. § 1681e. Compliance procedures

(b) Accuracy of report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

* * *

(d) Notice to users and furnishers of information

(1) Notice requirement

A consumer reporting agency shall provide to any person—

(A) who regularly and in the ordinary course of business furnishes information to the agency with respect to any consumer; or

(B) to whom a consumer report is provided by the agency; a notice of such person's responsibilities under this subchapter.

** *

## 15 U.S.C. § 1681n. Civil liability for willful non compliance

(a) In general

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

71

27a

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b) Civil liability for knowing noncompliance

Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

(c) Attorney's fees

Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

(d) Clarification of willful noncompliance

For the purposes of this section, any person who

28a

printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

### 15 U.S.C. § 1681o. Civil liability for negligent noncompliance

(a) In general

Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b) Attorney's fees

On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.