MARK S. EISEN (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Telephone:  (213) 533-4100
Facsimile:  (213) 947-4251

BENJAMIN S. THOMASSEN*
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Admitted *Pro Hac Vice*

Attorneys for Plaintiff Thomas Robins and the putative class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| THOMAS ROBINS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SPOKEO, INC.,<br><br>*Defendant*. | Case No. 2:10-cv-5306-ODW (AGRx)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO SPOKEO'S MOTION FOR STAY PENDING RESOLUTION OF ITS PETITION FOR CERTIORARI**<br><br>Date: June 9, 2014<br>Time: 1:30 pm<br>Judge: Honorable Otis D. Wright II |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........... 2

    A.   **Spokeo publishes false information about Robins—specifically details about his supposed financial status—in violation of the FCRA; Robins files suit** ............................................................ 2

    B.   **This Court finds Robins has standing then reconsiders its decision** ............................................................................ 3

    C.   **On June 28, 2012, the Supreme Court rules that *certiorari* in *Edwards* was improvidently granted, on February 4, 2014, The Ninth Circuit reverses dismissal in this case, and the Supreme Court thereafter denies *certiorari* in *Charvat*** ............ 3

    D.   **Plaintiff attempts to obtain discovery following remand** ........... 5

III.  ARGUMENT ................................................................................. 6

    A.   **Ignoring Ninth Circuit precedent, Spokeo makes no attempt to explain how it may suffer irreparable harm or that the public interest weighs in its favor at all** ................................... 6

    B.   **Spokeo exaggerates the magnitude of the legal questions and offers only conclusory assertions regarding the relative harm it faces** ...................................................................................... 9

        1.   **Spokeo greatly overstates the supposed seriousness of the legal issues—the law is well settled, no circuit split exists, and there's little reason to believe that certiorari will be granted** ....................................................... 9

            a.   *The law Spokeo seeks to upend is well settled.* ....... 9

            b.   *Spokeo's list of threatened statutes and cited Circuit split similarly offer nothing to suggest that the Supreme Court will grant certiorari.* ......................... 12

        2.   **Spokeo simply concludes, without any explanation, that the balance of harms cuts in its favor because it will have to incur expenses related to discovery if it were finally made to defend this lawsuit.** ....................................... 15

IV.   CONCLUSION ............................................................................. 16

# **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Charvat v. Mut. First Fed. Credit Union*, 134 S.Ct. 1515 (2014).................. n.1, 2, 4

*First Am. Fin. Corp. v. Edwards*, 132 S. Ct. 2536 (2012) ........................................ 3

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................................. 14

*O'Brien v. O'Laughlin,* 557 U.S. 1301 (2009) ....................................................... 14

*Sibron v. New York,* 392 U.S. 40 (1968).............................................................. 16

*Winter v. Natural Res. Def. Council, Inc.* 555 U.S. 7 (2008) ................................. 7

**United States Circuit Court of Appeals Cases:**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........... 7, 8

*Beaudry v. TeleCheck Servs. Inc.,* 579 F.3d 702 (6th Cir. 2009) ...................... n.12

*Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819 (8th Cir. 2013)............... n.1

*David v. Alphin*, 704 F.3d 327 (4th Cir. 2013) ...................................................... 13

*Dowell v. Wells Fargo Bank, N.A.* 517 F.3d 1024 (8th Cir. 2008) ...................... 14

*Glanton v. AdvancePCS, Inc.,* 465 F.3d 1123 (9th Cir. 2006)........................ 13-14

*Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 112 (9th Cir. 2008) ........... 6-7

*Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896 (9th Cir. 2009) ...................... n.6

*Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009) ............ 13

*Leiva-Perez v. Holder,* 640 F.3d 962 (9th Cir. 2011) ........................................ n.6

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2007) .................... n.12

*Pagtalunan v. Galaza*, 291 F.3d 639 (9th Cir. 2002) ..................................... 15-16

*Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014)................................. 3, 11, n.7

**United States District Court Cases:**

*Bradberry v. T–Mobile USA, Inc.,* C 06-6567 CW,
     2007 U.S. Dist. LEXIS 58801 (N.D. Cal. Aug. 2, 2007) .............................. 8

*Castaneda v. United States,* CV 07-07241 DDP,
     2008 U.S. Dist. LEXIS 40567 (C.D. Cal. May 20, 2008) ............................ 8

*Guifu Li v. A Perfect Franchise, Inc.*, 5:10-CV-01189-LHK,
   2011 WL 2293221 (N.D. Cal. June 8, 2011) ....................................8

*Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111 (C.D. Cal. 2012) ................ 10

**Statutory Provisions, Court Rules, and Regulations:**

15 U.S.C. § 1681.................................................................................. n.8

**Miscellaneous:**

William Prosser, *Privacy,* 48 Cal. L.Rev. 383 (1960)............................. n.9

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*,
   4 Harv. L. Rev. 193 (1890)................................................................ n.9

# I.    INTRODUCTION

By its own count, Defendant Spokeo, Inc.'s ("Defendant" or Spokeo") failed standing arguments have already consumed thirty-one months of this putative class action challenging its violations of the Fair Credit Reporting Act ("FCRA"). (Def. Mot. 9.) Having come up short before the Ninth Circuit, Spokeo now seeks review through a petition for certiorari—in what at this point can only be viewed as at least the third attempt by Spokeo's lawyers to get the Supreme Court to address their standing theories.[1] In the process, Spokeo accuses the Ninth Circuit in this case of going "even further than it had in its ruling in *Edwards v. First American Corp.,*" by completely "collapsing" the "traditional three-part standing inquiry test." (Def. Mot. 1.) "Based on the significance of this holding and its implications," Spokeo insists, "there is a strong chance that the Supreme Court will grant certiorari." (*Id.*).

Spokeo offers two reasons for granting a stay, neither of which has merit. First, Spokeo claims that the seriousness of its standing objections suggests the Supreme Court will grant certiorari. According to Spokeo, such standing questions implicate a list of consumer protection statutes and certiorari is needed to resolve a supposed Circuit split between the Ninth and Sixth Circuits on the one hand and the Second, Fourth, and Eighth Circuits on the other. Second, Spokeo says that the balance of harms cuts in its favor because it would incur expenses if it were made to participate in class certification discovery.

This Court should deny the requested stay. As an initial matter, Spokeo applies the incorrect test—the pre-*Winter* sliding scale analysis—and in doing so

---

[1]    Spokeo's petition for certiorari represents at least the third bite at the apple for its attorneys at Mayer Brown LLP. Spokeo's lawyers represented the Association of Global Automakers, Inc. and the Alliance of Automobile Manufacturers as *Amici Curiae* in *First American Financial Corp., v. Edwards* (No. 10-708). *See* Brief for Association of Global Automakers et al. as Amici Curiae Supporting Petitioners, First American Financial Corp. v. Edwards, No. 10-708, 2011 WL 3821403 (U.S. 2010). Thereafter, these same attorneys asserted the same arguments made here while representing First National Bank of Wahoo in a failed bid for certiorari from the Eighth Circuit's decision in *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 821 (8th Cir. 2013) *cert. denied*, 134 S.Ct. 1515 (2014).

1  impermissibly ignores *Winter's* irreparable harm and public interest requirements that

2  govern its request.

3       And even if the Court were to consider only the "seriousness of the questions"

4  raised and supposed "balance of harms," Spokeo's assertions fall flat on both fronts.

5  First, the issues aren't terribly significant: the law is well settled, as evidenced by the

6  Supreme Court's dismissal of *Edwards* and recent denial of certiorari in *Charvat*—

7  which presented the same arguments by these same attorneys. *Charvat,* 134 S.Ct.

8  1515. Further, Spokeo's so-called Circuit split doesn't exist. Spokeo misapplies

9  ERISA decisions from the Second and Fourth Circuits and an FCRA opinion from

10  the Eighth Circuit—none of which are at odds with any Ninth or Sixth Circuit

11  opinions. Further, Spokeo offers nothing to show that it would suffer any harm if it

12  were required to engage in discovery and completely ignores the harm Plaintiff

13  Thomas Robins ("Plaintiff" or "Robins") suffers by continued delay—hardly

14  sufficient to demonstrate that the balance of harms cuts sharply in its favor.

15       In sum, and as explained further below, Spokeo's Motion for a Stay fails.

16  Though it has managed through legal wrangling to avoid defending this case for

17  nearly four years, the time has come for it to be ordered to engage meaningfully in

18  discovery—even while its petition for certiorari remains pending.

19  **II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

20      **A.   Spokeo publishes false information about Robins—specifically**
21          **details about his supposed financial status—in violation of the**
        **FCRA; Robins files suit.**

22       Spokeo published incorrect information on its website about Plaintiff Robins,

23  including misstating his age, marital status, and family life (including number of

24  children), misreporting his "wealth level," and providing an incorrect picture of him.

25  On July 20, 2010, Plaintiff filed his original class action complaint in this Court

26  alleging that Spokeo's reports were consumer reports, that Spokeo was a consumer

27  reporting agency, and that Spokeo had violated several provisions of the FCRA by

28

Opposition to Defendant Spokeo's Motion    2    Case No. 2:10-cv-5306-ODW (AGRx)
to Stay Pending Resolution of Its
Petition for Certiorari

failing to provide required notices or adopt reasonable procedures to ensure accuracy with respect to the information it disclosed about consumers. (Dkt. 1.)

### B. This Court finds Robins has standing then reconsiders its decision.

On November 3, 2010, Spokeo filed its motion to dismiss Plaintiff's original complaint. (Dkt. 22.) On January 27, 2011, the Court granted Defendant's motion to dismiss without prejudice. (Dkt. 35.) On February 17, 2011, Robins filed his first amended complaint to include additional standing allegations (Dkt. 40), and on March 17, 2011, Spokeo again moved to dismiss (Dkt. 45). On May 11, 2011, the Court issued an order granting in part (with respect to the UCL claim) and denying in part (with respect to the FCRA claims) Defendant's motion to dismiss, finding that Robins had standing to allege willful violations of the FCRA. (Dkt. 52.) On June 17, 2011, Defendant filed a motion to certify the May 11, 2011 order for interlocutory appeal.[2] (Dkt. 57.) Thereafter, on September 19, 2011, the Court issued an order correcting its May 11, 2011 order and reinstating its January 27, 2011 order, resulting in dismissal of the action. (Dkt. 66.)

### C. On June 28, 2012, the Supreme Court rules that *certiorari* in *Edwards* was improvidently granted, on February 4, 2014, the Ninth Circuit reverses dismissal in this case, and the Supreme Court thereafter denies *certiorari* in *Charvat*.

On October 20, 2011, Plaintiff appealed to the Ninth Circuit. In the interim, the Supreme Court, after receiving full briefing and hearing oral argument, dismissed its review of *Edwards* on the ground that certiorari had been improvidently granted. *First Am. Fin. Corp. v. Edwards*, 132 S. Ct. 2536 (2012). On November 6, 2013, the Parties argued Plaintiff's appeal and, on February 4, 2014, the Ninth Circuit reversed dismissal and reinstated the case, finding that Robins had standing for Spokeo's alleged willful violations of the FCRA. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 410 (9th Cir. 2014).

---

[2]     In the intervening month and a half, on June 3, 2011, Spokeo also answered the complaint and alleged twenty affirmative defenses. (Dkt. 54.)

Additionally, on March 10, 2014, the Supreme Court denied the petition for certiorari filed in *Charvat*, where Spokeo's lawyers—representing the First National Bank of Wahoo—raised the very same standing objections they've asserted here. *Charvat,* 134 S.Ct. 1515. There, disagreeing with Spokeo's attorneys, the Eighth Circuit, like the Ninth Circuit, had found that the plaintiff had Article III standing (to bring claims under the Electronic Fund Transfer Act, 15 U.S.C. § 1693) despite the fact that the only harm was the statutory harm of using an ATM that didn't post required disclosures—as opposed to an actual economic injury.[3] In their unsuccessful petition for certiorari, Spokeo's attorneys claimed in *Charvat* that review: (1) was needed to resolve a supposed Circuit split between the Second and Fourth Circuits and the Ninth[4] and Sixth Circuits, (2) would apply to a range of statutes that includes the Truth-in-Lending Act, the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, the Lanham Act, the Americans with Disabilities Act, and others, (3) presented a chance to decide the issues passed up when certiorari in *Edwards* was dismissed, and (4) was needed to stop plaintiffs from alleging claims based on a "bare, technical violation of a federal statute." Petition for Writ of Certiorari, *First Nat. Bank of Wahoo v. Charvat*, No. 13-679, 2013 WL 6354864 (U.S. 2013). Curiously, these are the exact same arguments that Spokeo now raises in its petition—arguments that the Supreme Court dismissed in *Edwards* and declined to take up in *Charvat*—yet Spokeo omits any discussion of *Charvat* in its motion.

---

[3]     As Spokeo's lawyers framed the issue in *Charvat*: "Question Presented: Whether Congress has the authority to confer Article III standing to sue when the plaintiff suffers no concrete harm and alleges as an injury only a bare, technical violation of a federal statute." Petition for Writ of Certiorari at *i, First Nat. Bank of Wahoo v. Charvat, No. 13-769, 2013 WL 6354864 (U.S. 2013).

[4]     To be sure, Spokeo's lawyers expressly argued in their Reply brief when seeking certiorari in *Charvat* that review was needed in light of the Ninth Circuit's decision in this case. Reply Brief for Petitioners at *2, First Nat. Bank of Wahoo v. Charvat, No. 13-679, 2014 WL 645426 (U.S. 2013). ("In the few weeks since the petition was filed…the conflict among the lower courts on the question has deepened… the Ninth Circuit [in *Spokeo*] reaffirmed its determination in *First American,* broadly holding that…Article III's causation and redressability requirements are always satisfied, and therefore may be ignored, whenever a plaintiff asserts a bare violation of a statutory right.")

**D.      Plaintiff attempts to obtain discovery following remand.**

On June 23, 2011, and following their Rule 26(f) conference, the Parties filed a joint case management report laying out discovery deadlines, including a December 31, 2011 deadline for class-related discovery. (Dkt. 59.) On July 22, 2011, and pursuant to the schedule set forth in the Parties' case management report, Plaintiff propounded upon Defendant eighteen Interrogatories, fifty-four Requests for the Production of Documents, and fifty Requests to Admit Facts. On September 14, 2011, Defendant provided objections and responses. The case was dismissed five days later. (Dkt. 66.)

Following remand, on March 28, 2014, the Court issued an order setting a deadline for Plaintiff to file a motion for class certification no later than July 17, 2014. (Dkt. 87.) On April 11, 2014, Plaintiff sent Spokeo a 12-page letter addressing the various deficiencies in Defendant's objections and responses to Plaintiff's discovery requests, including Defendant's failure to produce any documents at all.

On April 18, 2014, the Parties met and conferred regarding Defendant's discovery objections and responses. During that conference, (i) Spokeo agreed to supplement certain of its responses so as to provide more substantive responses and information relevant to class certification, (ii) the Parties agreed to continue the meet and conferral process so as to tailor Defendant's document production to information relevant to class certification and proceed as efficiently as possible, and (iii) Spokeo agreed to begin collecting and producing documents as soon as possible, even though Plaintiff demanded that—in light of this Court's March 28th Order—all responsive documents should be produced by April 25, 2014. Since that time, Spokeo has produced ninety pages of information, *only* comprising several versions of its website's "Terms of Use" that were in effect at different times. Apart from that minor production, Plaintiff has received no documents—despite Spokeo's assurances that it

1  is "diligently" collecting documents and expects its "rolling" production to last "at

2  least one to two months."[5] (*See* Joint Stipulation to Extend Time, Dkt. 90 at p.3.)

3      On May 1, 2014, Defendant filed a petition for writ of certiorari, and on May

4  12, 2014, Defendant filed a Motion for Stay Pending Resolution of Its Petition for

5  Certiorari (the "Motion to Stay") (Dkt. 89). As explained below, it should be denied.

6  ## III.   ARGUMENT

7      Spokeo's request for a stay fails for multiple reasons. First, Spokeo applies the

8  incorrect test for determining whether a stay applies, improperly ignoring its burden

9  to show that it will likely suffer irreparable harm and that the public interest weighs

10  in its favor. Neither factor supports its position. Second, Spokeo's assertion that the

11  legal questions raised are sufficiently serious is incorrect: the legal issues are well-

12  settled, the Supreme Court has already twice passed on Spokeo's arguments, and

13  Spokeo's supposed Circuit split is a work of fiction. Lastly, Spokeo hasn't shown that

14  the balance of harm tips in its favor at all, let alone that it does so sharply. Spokeo's

15  Motion for a Stay should be denied.

16  ### A.   Ignoring Ninth Circuit precedent, Spokeo makes no attempt to
17  **explain how it may suffer irreparable harm or that the public interest weighs in its favor at all.**

18      The first problem with Spokeo's motion is that it fails to make any showing of

19  irreparable harm or that the public interest weighs in its favor. This is in part because

20  it relies on outdated precedent, namely *Golden Gate Rest. Ass'n v. San Francisco*,

21  512 F.3d 112 (9th Cir. 2008). Spokeo asserts that, under Ninth Circuit law, the court

22  "takes a sliding scale approach in determining whether to grant a stay" and that a

23  movant need only show "*either* (1) 'both a probability of success on the merits and

24  the possibility of irreparable injury' or (2) '[a]t the other end of the continuum,…that

25

26  ───────────────
[5]      Given this slow start to its document production, Spokeo agreed to join Plaintiff in a
27  stipulation to extend the class certification briefing deadlines by 60-days, which Plaintiff has filed
concurrently with this Opposition.

28

serious legal questions are raised and that the balance of hardships tips sharply in its

favor,' with consideration given to the public interest." (Def. Mot. 4.) (Emphasis

added.) In light of this supposed test, Spokeo discusses only its possibility of success

given what it describes are very serious issues and the purported harm it faces should

it have to engage in discovery.

In cutting this path, Spokeo misses the Supreme Court's decision in *Winter v.*

*Natural Res. Def. Council, Inc.* 555 U.S. 7 (2008) and skips over the Ninth Circuit's

decision in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)

("*Wild Rockies*"). In *Winter*, the Supreme Court held that "[a] plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that

he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest."

555 U.S. 7, 20 (citations omitted.)[6]. And in *Wild Rockies*, the Ninth Circuit examined

whether the "serious question," sliding scale test survived *Winter*. In finding the test

survived, the Court placed clear restrictions on its use:

> To the extent prior cases applying the "serious questions" test have held
> that a preliminary injunction may issue where the plaintiff shows only
> that serious questions going to the merits were raised and the balance of
> hardships tips sharply in the plaintiff's favor, without satisfying the
> other two prongs, they are superseded by *Winter,* which requires the
> plaintiff to make a showing on all four prongs. *See Miller v. Gammie,*
> 335 F.3d 889, 900 (9th Cir.2003) (En banc.) But the "serious questions"
> approach survives *Winter* when applied as part of the four-element
> *Winter* test. That is, "serious questions going to the merits" and a
> balance of hardships that tips sharply towards the plaintiff can support
> issuance of a preliminary injunction, **so long as the plaintiff also**
> **shows that there is a likelihood of irreparable injury and that the**
> **injunction is in the public interest.**

---

[6]     The Ninth Circuit has made clear that the *Winter* test governs motions to stay. *See Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20) ("A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest.")

632 F.3d at 1135. (Emphasis added.) Thus, the while a movant can still obtain a stay by showing "serious questions" and a "balance of hardships" in its favor, it may no longer do so without also making a showing as to the other two elements.[7]

Here, Spokeo argues the seriousness of the questions and balance of harms but ignores the irreparable injury and the public interest prongs entirely. The totality of Spokeo's showing of irreparable harm is found in two sentences buried on the final page of its brief that reads, "In contrast, Spokeo would be irreparably harmed without a stay. At the very least, it would be forced to endure expensive discovery, including extensive document production and depositions, and significant briefing on class certification issues." (Def. Mot. 10.)

The problem for Spokeo is that courts have resoundingly rejected the notion that litigation costs amount to irreparable injuries. *See Guifu Li v. A Perfect Franchise, Inc.*, 5:10-CV-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ("Many courts, however, have concluded that incurring litigation expenses does not amount to an irreparable harm.") (citing *Castaneda v. United States,* CV 07-07241 DDP, 2008 U.S. Dist. LEXIS 40567 at *13 (C.D. Cal. May 20, 2008)) ("[T]he Court acknowledges that discovery can be burdensome. However, such a burden, while regrettable, does not constitute an irreparable injury."); *see also Bradberry v. T–Mobile USA, Inc.,* C 06-6567 CW, 2007 U.S. Dist. LEXIS 58801 at *11-12 (N.D. Cal. Aug. 2, 2007) ("[t]he cost of some pretrial litigation does not constitute an irreparable harm to Defendant.") Thus, because the only harm that Spokeo points to simply doesn't count as "irreparable," Spokeo fails this part of the test.

---

[7] To be sure, the Ninth Circuit recognized in *Leiva-Perez v. Holder* that *Wild Rockies* retained a flexible, sliding-scale approach, applicable to stay requests, **so long as *all* four parts of the *Winter* test were met**. 640 F.3d 962, 966 (9th Cir. 2011) ("*Wild Rockies* held that although *Winter* had raised the bar on what must be shown on the irreparable harm prong to justify a preliminary injunction, it did not alter our authority to balance the elements of the preliminary injunction test, so long as a certain threshold showing is made on each factor.") Spokeo has made no threshold showing here with respect to likely irreparable injury or the public interest at all.

And Spokeo's analysis of the public interest is non-existent, though it would have certainly been a difficult exercise had it attempted one. The public has no interest in allowing Spokeo to continue delaying this litigation or in enabling its attorneys to keep re-packaging the same failed arguments before the Supreme Court in the hopes that one day enough Justices will relent. In any case, what matters is that Spokeo's decision to ignore the public interest altogether violates the plain holding in *Wild Rockies*. As such, the requested stay must be denied.

**B.     Spokeo exaggerates the magnitude of the legal questions and offers only conclusory assertions regarding the relative harm it faces.**

Even if this Court could look past Spokeo's failure to analyze—or even present—two of the four required elements for a stay, Spokeo also hasn't shown that the legal issues are of sufficient seriousness so as to signal a likelihood of success on the merits and, as explained above, provides nothing to show that the balance of harms tips in its favor.

**1.     Spokeo greatly overstates the supposed seriousness of the legal issues—the law is well settled, no circuit split exists, and there's little reason to believe that certiorari will be granted.**

Though Spokeo maintains that the issues it raises are very serious, (Def. Mot. 5-9), the simple truth is that its petition has practically no chance of being granted. As explained below, this is because the law is well settled—it is Spokeo that seeks to disrupt long-standing legal principles—and Spokeo overstates the gravity of its arguments. That is, neither its list of statutes that are supposedly threatened by its petition nor its claimed Circuit split evince a likelihood that certiorari will be granted.

a.     *The law Spokeo seeks to upend is well settled*.

First, the Supreme Court dismissed its review of *Edwards* as having been improvidently granted and recently denied certiorari in *Charvat*—which, again, presented the same standing objections raised by these very same attorneys. The most

1   likely explanation for this is that Spokeo's standing arguments are just plain wrong.

2   As Judge Carter put it best:

> In the past few years, some defendants in consumer cases have advanced increasingly strained Article III arguments, perhaps emboldened by the United States Supreme Court's grant of certiorari on Edwards. *See First Am. Fin. Corp. v. Edwards*, —— U.S. ——, 131 S.Ct. 3022, 180 L.Ed.2d 843 (2011). The Supreme Court has since dismissed the writ of certiorari as "improvidently granted." *First Am. Fin. Corp. v. Edwards*, —— U.S. ——, 132 S.Ct. 2536, 183 L.Ed.2d 611 (2012). Perhaps the Supreme Court realized that reversing *Edwards* would create an unworkable constitutional standard and that permitting a federal judge to decide whether injuries already codified by legislatures are sufficiently "injury-like" to satisfy Article III standing is tantamount to deciding which statutory rights are, in the judge's personal opinion, sufficiently important to bring suit. *See* Kevin Russell, First American Financial v. Edwards: Surprising end to a potentially important case, SCOTUSblog (Jun. 28, 2012, 5:09 PM), http://www.scotusblog.com/2012/06/first-american-financial-v-edwardssurprising-end-to-a-potentially-important-case/.   Regardless, Edwards remains binding precedent on this Court, despite frequent suggestions to the contrary.

13   *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1146 (C.D. Cal. 2012). Hence,

14   rather than continue to lend credence to these increasingly strained Article III

15   arguments, the Supreme Court has opted to allow sound decisions to stand.

16        Spokeo's misunderstanding of the law is laid bare when it describes the Ninth

17   Circuit's decision. Attempting to seize upon the Ninth Circuit's statement that

18   "[w]hen the injury in fact is the violation of a statutory right that we inferred from the

19   existence of a private cause of action, causation and redressability will usually be

20   satisfied," Spokeo argues the Ninth Circuit concluded that a violation of statutory

21   requirement [sic] constitutes Article III injury-in-fact and also *ipso facto* satisfies

22   Article III's causation and redressability requirements." (Def. Mot. 5.) Such a reading

23   stretches the Court's actual holding past its breaking point. The Ninth Circuit said

24   that causation and redressability will *usually* be satisfied *when the injury in fact is the*

25   *violation of a statutory right*—not *ipso facto* whenever the statute provides for

26   statutory damages.

27

28

1    Spokeo also plainly misunderstands Robins's injuries. To start, Spokeo

2    obsesses over the lack of any actual damages, claiming this case "provides a better

3    vehicle for review than *Edwards* because, unlike in Edwards, the plaintiff here never

4    paid Spokeo a dime." (Def. Mot 1.) That approach misses two key—and relatively

5    obvious—points. First, while it's true that "Plaintiff here never paid Spokeo any

6    money," (*id.*), Spokeo ignores that the pleadings *do* include allegations of actual

7    harm. (*See* Dkt. 40 ¶ 35) ("Defendant has caused Plaintiff actual . . . harm by

8    creating, displaying, and marketing inaccurate . . . information about [him] . . . [and]

9    has caused actual harm to his employment prospects"); (Dkt. 40 ¶ 36) ("Because

10   Plaintiff is unemployed, he has lost and continues to lose money). Those allegations

11   were recognized in the very first sentence of the Ninth Circuit's opinion. *Robins v.*

12   *Spokeo, Inc.*, 742 F.3d 409, 410 (9th Cir. 2014) ("We must decide whether an

13   individual has Article III standing to sue a website's operator under the Fair Credit

14   Reporting Act for publishing inaccurate personal information about himself.").[8]

15   These same allegations were likewise recognized by this Court, prior to its

16   reconsideration of the May 11, 2011 Order. (Dkt. 52 at 3.) Spokeo's implicit

17   distinction—i.e., as between money changing hands and allegations of money lost

18   (amongst other harm)—is one without significance, and hardly presents a "cleaner"

19   vehicle for review.

20       Second, Spokeo also misses that the FCRA is a privacy statute[9] and that, as

21   with other privacy violations like defamation, the cognizable injury is an invasion of

---

[8]   The Ninth Circuit also noted Robins' specific allegations of harm:  "Robins, who is
unemployed, described the [published] misinformation as 'causing actual harm to his employment
prospects.' Remaining unemployed has cost Robins money as well as caused 'anxiety, stress,
concern, and/or worry about his diminished employment prospects.'" *Robins v. Spokeo, Inc.*, 742
F.3d at 411 (original brackets omitted).

[9]   The purpose of the Act makes this explicit. 15 U.S.C. § 1681(a)(4) ("There is a need to
insure that consumer reporting agencies exercise their grave responsibilities with fairness,
impartiality, and a respect for the consumer's right to privacy.")

privacy.[10] This fact was not lost on the Ninth Circuit, as evidenced by the following exchange during oral argument on appeal:

> **Mr. Falk**: But what happened, what is here is, he is as much a bystander – yes his information is involved – but he is as much a bystander as someone who watches someone cut them off and make an illegal left turn. I mean yeah there's witness some harm but unless some, something has happened, something tangible distinct and palpable you don't have the type of injury-in-fact that would allow you to bring a lawsuit in federal court. You have the FTC to take care of these broad and differentiated harms.
>
> **Judge Graber**: So if your client lied about somebody to a third party there's no standing on the part of the person who's lied about? I mean isn't that a traditional defamation-type claim? I mean it, it seems very similar to – its not identical obviously – but it seems very similar to very traditional torts and tort standing.

(*See* Audio Transcript of Oral Argument at 10:55 - 11:41, *Robins v. Spokeo, Inc.*, No. 11-56843 (9th Cir. Nov. 6, 2013)).[11] As such, Spokeo's argument that no harm has been suffered only prevails if long-standing privacy injuries are outright ignored.

> b. *Spokeo's list of threatened statutes and cited Circuit split similarly offer nothing to suggest that the Supreme Court will grant certiorari.*

That Spokeo presents a list of statutes its appeal would ostensibly help upend (Def. Mot. 6-7) doesn't make certiorari any more likely. Spokeo's lawyers presented a substantially identical list of statutes in their petition for certiorari in *Charvat*[12] and the Supreme Court declined to act on it.

Likewise, and as was the case with its lawyers' failed certiorari petition in *Charvat*,[13] Spokeo's assertion that review is needed to resolve a Circuit split between

---

[10]    Privacy torts, including those for misappropriation of someone's likeness, public disclosure of private facts, and defamation have deep roots in American jurisprudence. *See* William Prosser, *Privacy,* 48 Cal. L.Rev. 383, 389 (1960); *see also* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890).

[11]    Available at: http://www.ca9.uscourts.gov/media/view.php?pk_id=0000011755.

[12]    *See* Petition for Writ of Certiorari at *9-12, First Nat. Bank of Wahoo v. Charvat, No. 13-769, 2013 WL 6354864 (U.S. 2013).

[13]    *See* Petition for Writ of Certiorari at *12-16, First Nat. Bank of Wahoo v. Charvat, No. 13-769, 2013 WL 6354864 (U.S. 2013) (arguing that a Circuit split existed between the Second and

the Ninth and Sixth Circuits on the one hand[14] and the Second, Fourth, and Eighth Circuits on the other, is simply not true. First, the Second and Fourth Circuit's ERISA decisions are plainly inapposite. In *Kendall v. Emps. Ret. Plan of Avon Prods.*, the plaintiff argued that ERISA, specifically § 1132(a)(3), did not require a showing of direct injury. 561 F.3d 112, 119 (2d Cir. 2009). In rejecting that argument, the Court explained that § 1132(a)(3) only applied to claims for injunctive relief but that Kendall's claims essentially sought damages—which were too attenuated and speculative to sustain. *Id*. at 119-21. Further, the Court was careful to remark that the required injury or deprivation of right could arise "even if that right is statutorily created." *Id*. at 119. As such, *Kendall* hardly signifies a circuit split.

The Fourth Circuit's decision in *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013), similarly fails to reveal a Circuit split. In *David*, the Fourth Circuit found that plan beneficiaries could not sue for technical ERISA violations where the plan was overfunded and the beneficiaries wouldn't suffer any loss even if the fund became underfunded. *Id*. at 333. Unlike the FCRA, ERISA has no statutory damages in cases of willful violations. Moreover, the Court affirmed the District Court's acceptance of the Magistrate's Report which "relied heavily upon *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123 (9th Cir. 2006), in which the Ninth Circuit held that pension plan participants lacked standing to pursue claims under ERISA § 502(a)(2) where the relief sought on behalf of the plan would not benefit the participants individually." *Id*. at 333. As such, *David* is actually consistent with Ninth Circuit law.

---

Fourth Circuits, prior decisions of the Third Circuit, and the Ninth and Sixth Circuits on the issue of Article III standing.)

[14]   It bears noting that the Seventh Circuit's reading of the FCRA is consistent with the Sixth Circuit's decision in *Beaudry v. TeleCheck Servs. Inc.*, 579 F.3d 702 (6th Cir. 2009) and the Ninth Circuit's decision in this case. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2007) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.")

1    Whereas Spokeo's citations to Second and Fourth Circuit ERISA decisions can

2 charitably be described as excusable (though unpersuasive) stretches, Spokeo's

3 citation to *Dowell v. Wells Fargo Bank, N.A.* 517 F.3d 1024, 1026 (8th Cir. 2008) is

4 less forgivable. First, the implication that the Eighth Circuit has sided with the

5 Second and Fourth Circuits is patently incorrect—as evidenced most clearly by the

6 fact that *Charvat was an Eighth Circuit decision.* Fortunately, Spokeo's refusal to

7 mention *Charvat* doesn't erase it from existence—Eighth Circuit precedent is directly

8 at odds with Spokeo's objections and consistent with the Ninth and Sixth Circuits.

9    Second, although the Eighth Circuit remarked in *Dowell* that the FCRA could

10 be read to still require actual damages even in cases of willful violations, that part of

11 the opinion was dicta and the Court specifically declined to address the issue given

12 the Plaintiff's failure to present sufficient evidence of willfulness. 517 F.3d at 1026.

13 As such, *Dowell* hardly gives rise to a Circuit split either.

14    In the end, the Supreme Court has twice passed on the standing theories for

15 which Spokeo and its lawyers seek review—and nothing here indicates that this latest

16 attempt will prove any more successful. In the context of a stay pending a petition for

17 writ of certiorari, the movant must show "that it is reasonably likely that four Justices

18 of th[e] [Supreme] Court will vote to grant the petition for writ of certiorari, and that,

19 if they do so vote, there is a fair prospect that a majority of the Court will conclude

20 that the decision below was erroneous." *O'Brien v. O'Laughlin,* 557 U.S. 1301 (2009)

21 (Breyer, in chambers) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

22 Spokeo's Motion falls woefully short of meeting that standard. As such, its request

23 for a stay should be denied.

24

25

26

27

28

**2.   Spokeo simply concludes, without any explanation, that the balance of harms cuts in its favor because it will have to incur expenses related to discovery if it were finally made to defend this lawsuit.**

As a final consideration, Spokeo must show that the balance of harms tips sharply in its favor. Spokeo again misses the mark. As explained above, Spokeo merely asserts that discovery would be expensive and, unless the Court's scheduling order is modified (which Spokeo has agreed to), it will be required to conduct discovery in a short period of time. (Def. Mot. 10.) Spokeo also posits that Plaintiff will not be prejudiced by a stay given that the case has already been at a standstill for thirty-one months and because Plaintiff previously agreed to a schedule that would have placed his class certification deadline in January 2015. (Def. Mot. 9-10.) These arguments are non-starters.

First, and as explained above, discovery costs are not irreparable harm, let alone harm that would tip the scales "sharply" in Spokeo's favor. *See* III.A, *supra*.

Second, that Spokeo has managed to delay this litigation for over two years — by pressing its now soundly-rejected standing arguments—does not somehow mean that *additional* delay should be tolerable. To that end, Spokeo tries to make much of the fact that Plaintiff previously stipulated to a schedule that placed his class certification deadline in January 2015—but forgets that, first, it was *Spokeo* that proposed the January certification deadline to Plaintiff's counsel and, second, even under that schedule, Plaintiff would still have proceeded with discovery *now*.[15] Thus, Spokeo's argument that, since the case has already been delayed for thirty-one months, allowing additional delay won't cause any prejudice ignores that, as more time passes, evidence becomes stale and witnesses' memories fade, thereby

---

[15]     To be sure, given that Spokeo asserts that it needs "at least one or two months" to gather, review, and produce documents in this matter, (Dkt. 90 at 3), much of the stipulated-to class discovery period would have been spent waiting for Spokeo to fulfill its discovery obligation. Indeed, this is the very reason why the Parties presently seek a 60-day extension to the class certification briefing schedule set by this Court. (*See id.*)

potentially jeopardizing Plaintiff's ability to gather the facts needed to support his claims. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.") (citing *Sibron v. New York*, 392 U.S. 40 (1968)). The delay sought by Spokeo only stands to harm Plaintiff's interests in this case, while giving Spokeo yet another reprieve from any obligation to move forward with discovery.

In short, Spokeo doesn't show any harm, let alone that the balance of harms tips *sharply* in its favor. Rather, Spokeo's motion only underscores its apparent preference to avoid litigating this case for as long as possible. That certainly doesn't justify a stay.

## IV.   CONCLUSION

Spokeo cites to the wrong standard and then fails to articulate any irreparable injury or public interest favoring a stay—which is fatal under Ninth Circuit precedent. Likewise, Spokeo's assertions about the supposed seriousness of the legal issues its petition for certiorari presents are overblown. There is no Circuit split, and the Supreme Court on March 10, 2014 just declined the opportunity, presented by the very same attorneys representing Spokeo here, to review the same standing arguments. Moreover, the balance of harm decidedly favors the Plaintiff, as allowing Spokeo to continue its delay of the case only increases the likelihood that the quality of the evidence deteriorates. As such, and because Spokeo hasn't satisfied the test for granting stays pending petitions for certiorari, the request for a stay should be denied.

Dated:  May 19, 2014

Respectfully submitted,

**THOMAS ROBINS**, individually and
on behalf of all others similarly situated,

By:  / Benjamin S. Thomassen
One of Plaintiff's Attorneys

Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

MARK S. EISEN (SBN 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 92688
Telephone:  (213) 533-4100
Facsimile:  (213) 947-4251

## CERTIFICATE OF SERVICE

I, Benjamin S. Thomassen, an attorney, hereby certify that on May 19, 2014, I served the above and foregoing ***Response in Opposition to Defendant Spokeo Inc.'s Motion For a Stay Pending Resolution of Its Petition for Certiorari*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 19th day of May 2014.

/s/Benjamin S. Thomassen